# EXHIBIT 13

| | |
|---|---|
| Company: | FBI ACS ONLY ACCOUNT |
| Conference Title: | Presidential Commission on Law Enforcement and the Administration of Justice |
| Conference ID: | 4278911 |
| Moderator: | Dennis Stoika |
| Date: | April 15, 2020 |

Operator:  The following teleconference is recorded for Dennis Stoika with the FBI for the Presidential Commission on Law Enforcement and the Administration of Justice Teleconference on Wednesday, April 15, 2020 beginning at 3 pm Central Time, 4 pm Eastern Time. Good day and welcome to the Presidential Commission on Law Enforcement and the Administration of Justice conference call. Today's conference is being recorded. At this time I'd like to turn the call over to Director Phil Keith. Please go ahead, sir.

Phil Keith:  Thank you Brandon. Good afternoon and thank you for joining us today. I'd like to call the President's Commission on Law Enforcement and the Administration of Justice to order. On behalf of Attorney General Barr, we thank you for joining us today for this important commission teleconference meeting.

As I mentioned yesterday this is our fourth week of teleconferences and we'll continue this process with three calls a week until the first week in June. We may have a break in May but we'll be sure to notify you of that. If the operating environment changes in a positive way, we could conduct a face to face commission meeting in Cleveland on the dates originally planned.

The Vice-Chair and I will do everything possible to keep you updated and informed of any changes that we see coming to the commission. At this time I'll request our Executive Director Dean Kueter to conduct a roll call of commissioners.

Dean Kueter:  Great. Thank you Mr. Chairman and before we get started with the roll call, I'd just like to remind everyone, once again, this event is open to the press and for any members of the media on

Second, this new criminal justice problem is the direct result of these private companies' decisions to re-engineer their products. I'm not a technologist but I'm confident the problem could be solved by a company redesign as well. As President Kennedy once said, our problems are man-made. Therefore they can be solved by man.

To that end, I would offer three recommendations to this commission. First, that federal legislation is necessary for law enforcement to break the encryption stalemate that prevents us from obtaining evidence subject to a court ordered search warrant from a smartphone and social media giants. If they made a business decision valuing privacy, above public safety, I believe it's imperative that Congress acts to protect our citizens.

Second, the commission should urge tech companies and law enforcement to meet on a regular basis to discuss lawful access and define paths forward. Third, while the entire lawful access ecosystem, including 'data in motion' must be addressed, restoring lawful access to 'data at rest'. That is 'data at rest' on the smartphone devices themselves. We believe it is an achievable solution, near term, that would help local law enforcement with the challenges we face.

Thank you again for inviting me to testify and for your efforts on this important issue.

Phil Keith:  Thank you District Attorney Vance for that important testimony and thank you for your service. Our next panelist is Mr. Chuck Cohen who's the Vice President of the National White Collar Crime Center, also known as NW3C. Mr. Cohen brings a wealth of experience to NW3C as a retired Indiana State police captain. Mr. Cohen, we thank you for joining us today. You're recognized.

Chuck Cohen:  Mr. Chairman and Commissioners, thank you for allowing me to testify this afternoon on the very important topic of dark web child exploitation and human trafficking. For background, I recently retired from the Indiana State police. Among my responsibilities was serving for 14 years as the Indiana Crimes Against Children Task Force Commander.

I'm currently the Vice President at NW3C, the National Crime Center, which provides training and technical assistance for state and local police, prosecutors and other criminal justice professionals. And I'm a professor of practice at Indiana University Bloomington, Department of Criminal Justice. I need to preface my testimony by saying that technology is neutral. It's not good or bad. It doesn't cause people to commit crimes or not commit crimes. It's just technology.

But what is true is criminals tend to be early adopters of emerging technology and to subvert emerging technology to facilitate and obfuscate the criminal activities. And this is especially true for online child sexual exploitation and online sex trafficking. I also must tell you that I hate the term dark web. I used it in written testimony and I'll use it in this testimony simply because it is commonly used by others. I dislike it for several reasons.

Among those, it is commonly misused. I also dislike the term dark web because it makes the technology sound scary and spooky. It's not scary and spooky. Much technology was originally created by the U.S government for very important purposes. But the unintended consequence is what people call the dark web, as it has evolved and continues to evolve into what amounts to lawless spaces where criminals can victimize children, communicate with each other to normalize their offenses against children, and work together to hone the trade craft of the victimization.

And for a variety of reasons that I tried to outline in my written testimony, we see a rapid evolution towards what was once the surface web becoming just one more area of the dark web. State, local, territorial and tribal law enforcement routinely encounters offenders using these networks and technologies to conceal and obfuscate their identities and locations during the exploitation and abusing of children.

What I've seen over the preceding decade is a systemic and seismic closure of avenues that are available to police for the identification and location of victims and offenders and the collection of

evidence in forensically sound manners when investigating these types of child victimization. In my written testimony I made four very specific recommendations that can help police protect children and interdict these type of offenders.

First, there needs to be increased funding for and availability of consistent and high quality training and technical assistance on a large scale for state, local, territorial and tribal law enforcement related to all issues outlined in this testimony. With increasing frequency during the normal course of business, state, local, territorial and tribal law enforcement inadvertently encounters the sexual exploitation and trafficking of children in which various aspects of dark web technologies are being used.

Also state and local law enforcement now routinely encounters dark web technologies in the course of conducting investigations specifically focused on the sexual exploitation and trafficking of children. My second recommendation is the implementation of regulations and laws that require internet service providers and companies providing commercial VPN or virtual private networking services to retain certain records and certain record retention or record retention periods.

A model for this is the Bank Secrecy Act or BSA and subsequent anti-money laundering legislation which set record retention and retention period requirements for financial institutions. BSA and subsequent legislation was enacted in recognition that through no fault of financial institutions. They were routinely used by offenders to conceal proceeds of unlawful activity and launder money.

In much the same way VPN and service providers are used to conceal and obfuscate the sexual abuse and trafficking of children. My third recommendation is an update to the Communications for Assistance to Law Enforcement Act also known as CALEA to require the internet service providers to provide assistance to law enforcement similar to that which CALEA currently requires for landline and cellular carriers, because they increasingly provide similar services to landline and cellular carriers.

Page | 14

This includes such assistance for law enforcement when the communication is encrypted. I've heard two major objections to such an update. First that this would simply push offenders to encrypted communication platforms and those located outside the United States. We have several years of evidence that this would not occur.

WhatsApp implemented default ubiquitous end-to-end encryption in April 2016. And there are numerous companies located outside the United States that offer end-to-end encrypted communication. Nonetheless, the National Center for Mission and Exploited Children estimates that in 2018 Facebook submitted nearly 12 million cyber tips related to child exploitation and child sex trafficking specifically associated with Facebook Messenger.

Offenders gravitate to, and will seek out platforms, where their intended victims spend time. The second argument I hear is that there is a binary choice between security that encryption provides, and lawful access to evidence such that we must make a hard choice between one or the other. It is noteworthy that both CDMA and GSM cellular protocols are encrypted and widely understood to be secure for users.

Nonetheless cellular carriers are compliant with CALEA in providing investigative assistance to law enforcement. The fourth and last recommendation is to make a resource that provides current and correct contact information for apps offered in the Apple App Store and Google Play Store readily available to law enforcement.

This can be accomplished through a requirement that Apple and Google maintain and make available to law enforcement such information for all apps available in the United States version of the App Store and Play Store. Offenders routinely use communication, image hosting, video sharing, file hosting, gaming, dating and social media apps to exploit and traffic children.

With one million iOS apps available in the Apple App Store and 2.8 million Android operating system apps available in the Google Play Store, it is often not possible for law enforcement to identify or locate the person, people or business that created the app or might retain information associated with the use of the app.

This leaves law enforcement with no one to whom an emergency disclosure request can be made or on whom legal process can be served. The two entities with the ability to collect the contact information and make it available to law enforcement if needed in the course of a criminal investigation involving child exploitation or human trafficking are Apple and Google.

Again, thank you for inviting me to testify and for undertaking this critically important work being done by the commission.

Phil Keith:  Thank you Mr. Cohen for your informative testimony and for your service. Our next two panelists will focus on contraband cellphones and other security technology issues in jails and prisons. The first panelist will be Director Bryan Stirling. He is the Director of the South Carolina Department of Corrections. Director Stirling, thank you for joining us today and you are recognized.

Bryan Sterling:  Yes sir. Thank you very much. This is Bryan Stirling, Director of the South Carolina Department of Corrections. I want to thank the President, Chairman Keith, Vice Chairman Sullivan, our working group on cellphones, AG Barr. I especially want to thank Beth Williams and her team at DOJ. They've been particularly helpful on this matter.

When I first took over at the Department of Corrections on October 1, 2013, I learned of a case where a correctional officer, Captain Robert Johnson, who was a contraband confiscator at Lee Correctional, was targeted and shot in his house five or six times point blank because he was doing his job at Lee Correctional to find contraband cell phones.