# EXHIBIT C

New York Office
40 Rector Street, 5th Floor
New York, NY  10006-1738

T 212.965.2200
F 212.226.7592

www.naacpldf.org

Washington, D.C. Office
700 14th Street, NW, Suite 600
Washington, D.C.  20005

T 202.682.1300
F 202.682.1312



March 31, 2020

**Via Electronic Mail** (LE.Commission@usdoj.gov)
**Corrected Version submitted May 20, 2020**

William Barr, Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Phil Keith, Director
Office of Community Oriented Policing Services
United States Department of Justice
145 N. Street, NE
Washington, DC 20530

Katherine Sullivan, Principal Deputy Assistant Attorney General
Office of Justice Programs
United States Department of Justice
810 Seventh Street NW
Washington, DC 20531

RE:   The Presidential Commission on Law Enforcement and the Administration of Justice

Dear Attorney General Barr, Principal Deputy Assistant Attorney General Sullivan, and Director Keith:

This statement is submitted on behalf of the NAACP Legal Defense and Educational Fund ("LDF")[1] to address the work of the Presidential Commission on Law Enforcement and the Administration of Justice ("the Commission") whose formation was announced on January 22, 2020. We write this statement to meet the March 31, 2020 deadline for public comment we recently learned has now been adopted by the Commission. Just weeks ago, the website devoted to the Commission listed May 31, 2020 as the deadline for comments.[2] It was our intention to submit comprehensive comments in accordance with that deadline. However, we discovered the changed deadline just a few days ago. We expect that many advocates, organizations, and individuals who planned to submit comments are unaware of this significant change. We have been unable to find any public notice of the decision to significantly truncate the time period for comment.

Since late February, many institutions of government have extended deadlines for the submission of official comments and filings, in light of the COVID-19 pandemic that has affected work and public life in this country. We were alarmed to learn that rather than extend the deadline for comments, the Commission chose to significantly shorten the deadline without notice reasonably calculated to reach the public that might wish to submit comments. It is significant and, we suspect, prohibitive for many groups who are concerned about the work of the Commission to meet today's deadline.

Therefore, we respectfully urge you to extend the deadline for public statements and hearings relating to the work of the Commission to June 15, 2020 or until the COVID-19 pandemic has ended and the President's national emergency declaration has been lifted.

Nevertheless, we submit our statement below to address two principal areas of concern which we believe undermines the integrity of the Commission's stated purpose and the legitimacy of its work. Any recommendations made by this Commission will be undermined by the failure of the Commission to adhere to principles of procedural fairness and substantive integrity.

### I. Commission Composition and General Purpose

When the formation of this Commission was announced, Attorney General Barr described it as the first to "study law enforcement and the administration of justice"[3] since President Johnson's establishment of the President's Commission on Law Enforcement and the Administration of Justice (the "Katzenbach Commission") in 1965.[4] Yet this Commission is in vast contrast to the Katzenbach Commission. The Katzenbach Commission was established by President Johnson to study and repair the American criminal justice system. In order to ensure the integrity of its work, the Katzenbach Commission comprised a diverse group of national and local leaders including representatives of civil rights, law enforcement, media, government, and academia who worked over the course of almost two years, hosting three national conferences, conducting five national surveys, holding hundreds of meetings, and interviewing thousands of people.[5] The Final Report made wide-ranging recommendations and became the basis for reform. To name just a few, federal officials created what is now known as the Office of Justice Programs that provides grant programs and other support to state and local police departments.[6]

By contrast, this Commission makes no commitment to the open-minded gathering of facts and information. Indeed, President Trump made clear his sense that the Commission's conclusions are preordained stating when he announced its establishment: "[a]fter the commission issues its recommendations next year — they'll have them soon, because most of them know many of the answers before they begin; you understand that — we will begin implementing its best ideas immediately."[7] Further, this Commission is neither bipartisan nor balanced. Its members are overwhelmingly law enforcement officials, and the witnesses invited to testify are themselves law enforcement officers or are professionals employed by law enforcement agencies.

Therefore, we urge you to promptly appoint additional commissioners that would create the balance of viewpoints required by the Federal Advisory Committee Act.[8] To do so, the Commission should appoint academics, civil rights leaders, persons directly impacted by the policing practices, and public health experts that have worked through litigation, advocacy, and community organizing to promote police accountability and remedying police violence. LDF, and numerous other civil rights organizations, as well as community groups and public safety academics have been publicly and robustly engaged in addressing issues of public safety and law enforcement, and participated as members of, and witnesses before, the President's Task Force on 21st Century Policing (the "Task Force") in 2014.[9] This new Commission's failure to draw on the robust roster of experts and advocates who have been most prominently engaged in the critical issues the Commission identifies as part of its focus, reveals the fundamental imbalance of the Commission's work and deliberations.

### II. Commission Hearings

The Commission has provided little to no notice of its public hearings demonstrating no interest in public comment or engagement. As described above, the Commission abruptly and without notice shortened the public comment period, despite the challenges of the stay-at-home orders and social distancing recommendations from the Center for Disease Control that have limited the productivity and work of millions of Americans.

The Commission's hearings demonstrate a similar disinterest in public engagement. To date, we know that this Commission held two hearings, one on February 27, 2020[10] and the other from March 24-26, 2020,[11] with no public notification of the hearings until after they were held. This is contrary to Attorney General Barr's assurances that:

> . . . it is important that we hear from voices and consult perspectives outside of law enforcement. Civil rights organizations, civic leaders, defense bar associations, victims' rights organizations, and community organizations, should and will help this important mission. They

2

will have opportunities to provide advice, counsel and input to the Commission in its study of the relevant issues and solutions.

The witnesses at these hearings have been overwhelmingly law enforcement officers and employees, excluding the public health experts, youth advocates, criminologists, social psychologists and others, whose participation might have provided balanced and important contributions to the hearings. We need not go back in time more than fifty years to the Katzenbach Commission to find evidence of an advisory commission designed to elicit the input of a diverse array of voices and perspectives. The Task Force created by President Obama in 2014, was bipartisan in its membership and included representatives of law enforcement, public safety scholars, community activists, and academics. The witnesses who appeared before the Task Force testified at open hearings, which were noticed in the Federal Register.[12] The diversity of the Task Force's members and the wide array of input from across the political and ideological spectrum greatly contributed to the legitimacy of the Task Force's Report and recommendations contained within, which have been adopted by police departments across the country.[13]

### III. Working Group Focuses

The focus of the Commission's working group on Grant Programs is to review the efficacy of federal grant programs and optimizing its use. Missing from the mandate of the working group is attention to the prohibition against federal grant program funding to state and local programs that engage in discrimination. Essential to the efficacy of federal grant programs to aid local law enforcement is their full compliance with federal civil rights laws. Therefore, the Grant Programs working group[14] must consider law enforcement agencies' compliance with civil rights laws that prohibit discrimination by recipients of federal funds, such as Title VI of the Civil Rights Act of 1964. This omission is an alarming indication of the Commission's refusal to explore the full scope of the issues it has identified for its work.

Additionally, the Respect for Law Enforcement working group, is charged with "focus[ing] on the trend of diminished respect for law enforcement and the laws they enforce[,] . . . how under-enforcement of the criminal law in certain jurisdictions affects: Public safety; Public perception of law enforcement and the laws they enforce . . . ."[15] This framing rests on the unsupported premise that there is widespread lack of respect of law enforcement and presumes that criminal law is being "under-enforced" in "certain jurisdictions."[16] Rather than identify a neutral fact-based issue for study, this working group advances a frankly alarming rhetorical line embraced both by the President and Attorney General Barr, who in a speech in December 2019, decried "disrespect" for law enforcement.[17]

A glaring omission from the work of the Commission are witnesses who would be prepared to share with the Commission how unaddressed unconstitutional policing practices – including excessive or lethal use of force – contribute to the tense relationship between law enforcement and communities around the country.[18] Proponents of community policing – including experts who have studied law enforcement practices - recognize the critical role of respect for community input, strong accountability measures for misconduct, and integrity within police departments are important ingredients in fostering respect for law enforcement officers in communities. Moreover, the working group would benefit from the input of scholars and criminologists who have studied the effect of zero tolerance prosecutor practices on increasing mass incarceration, and on decreasing public safety by diverting police resources from addressing serious, violent crime.[19]

Thank you for considering our comments and recommendations. Please do not hesitate to contact Monique Dixon, Deputy Director of Policy at mdixon@naacpldf.org, or me with any questions.

Sincerely yours,

3

*Sherrilyn A. Ifill*

Sherrilyn Ifill
President and Director Counsel
NAACP Legal Defense and Educational Fund

---

[1] Since its founding in 1940, LDF has used litigation, policy advocacy, public education, and community organizing strategies to achieve racial justice and equity in the areas of education, economic justice, political participation, and criminal justice. It has been a separate organization from the NAACP since 1957. For 80 years, LDF has consistently worked to promote unbiased and accountable policing policies and practices at the national, state, and local levels.

[2] Dep't of Just., *Presidential Comm'n on Law Enforcement and the Administration of Justice* (March 15, 2020), http://web.archive.org/web/20200315142003/https://www.justice.gov/ag/presidential-commission-law-enforcement-and-administration-justice.

[3] *Implementation Memorandum for Heads of Department Components*, Op. Att'y Gen. No. 20530 (Jan. 21, 2020), https://www.justice.gov/ag/page/file/1236906/download.

[4] Exec. Order No. 11236, 30 Fed. Reg. 9349 (July 23, 1965).

[5] Nat'l Criminal Just. Reference Ctr., The Challenge of Crime in a Free Society, Report of the President's Commission on Law Enforcement and Administration of Justice, v (1967), https://www.ncjrs.gov/pdffiles1/nij/42.pdf.

[6] Thomas E. Feucht & Edwin Zedlewski, The 40th Anniversary of the Crime Report, National Institute of Justice (Jan. 1, 2019), https://nij.ojp.gov/topics/articles/40th-anniversary-crime-report.

[7] President Donald Trump, Remarks by President Trump at the Int'l Ass'n of Chiefs of Police Annual Conference and Exposition (Oct. 28, 2019), *in* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-international-association-chiefs-police-annual-conference-exposition-chicago-il/.

[8] Fed. Advisory Comm. Act, 5 U.S.C.S. § 10 (1997) ("Each advisory committee meeting shall be open to the public. Except when the President determines otherwise for reasons of national security, timely notice of each such meeting shall be published in the Federal Register, and the Administrator shall prescribe regulations to provide for other types of public notice to insure that all interested persons are notified of such meeting prior thereto. Interested persons shall be permitted to attend, appear before, or file statements with any advisory committee, subject to such reasonable rules or regulations as the Administrator may prescribe.")

[9] Sherrilyn Ifill, NAACP LDF, *Statement by NAACP Legal Defense and Educational Fund, Inc. Before the President's Task Force on 21st Century Policing*, (Jan. 13, 2015), https://www.naacpldf.org/wp-content/uploads/Sherrilyn-Ifill-Testimony-Task-Force-on-21st-Century-Policing.pdf.

[10] *Hearing One Officer Safety and Wellness Before President's Comm'n on Law Enf't and the Admin. of Justice*, U.S. Dep't of Just. (2020) (https://www.justice.gov/ag/page/file/1259216/download).

[11] Press Release, Dep't of Just., Office of Pub. Affairs, Readout of the President's Comm'n on Law Enf't and the Admin. of Justice Teleconferences Related to Soc. Problems Impacting Pub. Safety (March 27, 2020) (https://www.justice.gov/opa/pr/readout-presidents-commission-law-enforcement-and-administration-justice-teleconferences).

[12] Notice, Cmty Oriented Policing Serv.s, Dep't of Just., 79 Fed. Reg. 78481 (2014).

[13] Cite to Ron Davis' website https://www.21cpsolutions.com/current-work

[14] President's Comm'n on Law Enf't and the Admin. of Justice, Working Groups, https://www.justice.gov/ag/presidential-commission-law-enforcement-and-administration-justice/working-groups (last updated March 17, 2020).

[15] *Id.*

[16] *Id.*

[17] Owen Daugherty, *Barr Warns That Communities That Don't Show Respect to Law Enforcement May Not Get Police Protection: Report*, The Hill (Dec. 4, 2019), https://thehill.com/homenews/news/472946-barr-warns-that-communities-that-dont-show-respect-to-law-enforcement-may-not ("[I]f communities don't give that support and respect, they might find themselves without the police protection they need."); Zack Bubdryk, *Barr Predicts Progressive Prosecutors Will Lead to "More Crime, More Victims"*, The Hill (Aug. 12, 2019), https://thehill.com/homenews/administration/457120-barr-predicts-progressive-prosecutors-will-lead-to-more-crime-more (reporting that Attorney General Barr has also made troubling, derisive statements about progressive prosecutors, calling them "dangerous" and "anti-law-enforcement.")

[18] *See, e.g.,* Erik Ortiz, *Fort Worth police officer who fatally shot Atatiana Jefferson indicted on murder charge*, NBC News (Dec. 20, 2019), https://www.nbcnews.com/news/us-news/fort-worth-police-officer-who-fatally-shot-atatiana-jefferson-indicted-n1105916; NBC Washington Staff, *Prince George's Officer Indicted in Shooting Death of Handcuffed Subject*, NBC Washington (March 5, 2020),

4

https://www.nbcwashington.com/news/local/prince-georges-prosecutors-give-update-on-officer-charged-with-killing-suspect/2232247/.

[19] Mark Osler & Judge Mark W. Bennet, *A "Holocaust in Slow Motion?": America's Mass Incarceration and the Role of Discretion*, 7 DePaul J. for Soc. Just. 117 (2014).