**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.,

                      Plaintiff,

    v.

WILLIAM P. BARR, in his official capacity
as Attorney General of the United States,

UNITED STATES DEPARTMENT OF
JUSTICE, an agency of the United States,

PRESIDENTIAL COMMISSION ON LAW
ENFORCEMENT AND THE
ADMINISTRATION OF JUSTICE, an
advisory committee established and utilized
by Attorney General William Barr,

PHIL KEITH, in his official capacity as
Chair of the Presidential Commission on Law
Enforcement and the Administration of
Justice, and

KATHARINE SULLIVAN, in her official
capacity as Vice Chair of the Presidential
Commission on Law Enforcement and the
Administration of Justice,

                      Defendants.

Civil Action No. 20-1132 (JDB)

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S PROPOSED REMEDIAL ORDER**

## <u>TABLE OF CONTENTS</u>

Table of Contents.................................................................................................................ii

Table of Authorities...........................................................................................................iii

Introduction.........................................................................................................................1

Argument.............................................................................................................................3

   I.   The Commission Must Be Reconstituted To Comply WIth FACA. ...................................4

   II.  Plaintiff Is Entitled To A Use Injunction Restricting Release And Use Of the Commission's Report.......................................................................................................6

      A.   Defendants' Open Violation of Numerous FACA Provisions, Even After Being Put on Notice, Warrants Broad Equitable Relief...........................................................................7

      B.   A Use Injunction Would Not Result in a Waste of Government Resources.................10

      C.   A Use Injunction Would Ensure Public Accountability Going Forward.......................11

Conclusion........................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akzo-Nobel, Inc. v. United States,*
  No. 00-30834, 2001 WL 34772206 (5th Cir. May 25, 2001)................................................11

*California Forestry Ass'n v. United States Forest Serv.,*
  102 F.3d 609 (D.C. Cir. 1996) .........................................................................................10

*Cargill, Inc. v. United States,*
  173 F.3d 323 (5th Cir. 1999) ............................................................................................8

*Cummock v. Gore,*
  180 F.3d 282 (D.C. Cir. 1999) ...................................................................................3, 5, 6

*Dunlap v. Presidential Advisory Comm'n on Election Integrity,*
  286 F. Supp. 3d 96 (D.D.C. 2017) ....................................................................................5

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control,*
  711 F.2d 1071 (D.C. Cir. 1983) ........................................................................................5

*Natural Res. Def. Council v. Curtis,*
  189 F.R.D. 4 (D.D.C. 1999).........................................................................................3, 7

*Natural Res. Def. Council v. Pena,*
  147 F.3d 1012 (D.C. Cir. 1998) ...............................................................................7, 9, 10

*Nw. Ecosystem Alliance v. Office of the United States Trade Rep.,*
  No. 99-cv-1165, 1999 WL 33526001 (W.D. Wash. Nov. 9, 1999)..........................................9

*Nw. Forest Res. Council v. Espy,*
  846 F. Supp. 1009 (D.D.C. 1994) ......................................................................................9

*Seattle Audubon Soc'y v. Lyons,*
  871 F. Supp. 1291 (W.D. Wash. 1994)..............................................................................10

*W. Org. of Res. Councils v. Bernhardt,*
  412 F. Supp. 3d 1227 (D. Mont. 2019)....................................................................7, 10, 11

**Statutes**

5 U.S.C. app. § 10(a)(1).....................................................................................................6

5 U.S.C. app. § 10(a)(2)......................................................................................................6

5 U.S.C. app. § 10(a)(3) ............................................................................................6

5 U.S.C. app. § 10(b) .................................................................................................6

5 U.S.C. app. § 10(c) .................................................................................................6

Federal Advisory Committee Act, 5 U.S.C. app §1 *et seq.* ................................. *passim*

Freedom of Information Act, 5 U.S.C. § 552(b) ..........................................................3

**Other Authorities**

41 C.F.R. §102-3.60(b)(3) ......................................................................................4, 5

Christina Carrega, *Prosecutor resigns from Trump law enforcement commission,
     calls it 'intent on providing cover for a predetermined agenda,'* CNN (Sept.
     11, 2020), https://www.cnn.com /2020/09/11/politics/john-choi-resigns-
     trump-law-enforcement-commission/index.html ..................................................2, 9

Jay S. Bybee, Advising the President: Separation of Powers and the Federal
     Advisory Committee Act, 104 Yale L.J. 51 (1994) ................................................6

Letter from John Choi, Ramsey County Attorney, and Mark Dupree, Wyandotte
     County District Attorney, to President's Commission on Law Enforcement &
     the Administration of Justice (May 29, 2020),
     https://www.ramseycounty.us/sites/default/files/County%20Attorney/5.29.20
     %
     20Dupree%20and%20Choi%20letter%20to%20President%27s%20Commissi
     on.pdf (last accessed Oct. 9, 2020) ......................................................................1

**<u>INTRODUCTION</u>**

The Presidential Commission on Law Enforcement and the Administration of Justice (Commission) has repeatedly and consistently violated myriad provisions of the Federal Advisory Committee Act (FACA). Not one of the Commission's 43 hearings has been open to the public or noticed in the Federal Register. Nor has the Commission filed an advisory committee charter with required entities or employed a designated federal official. And the Commission's membership is not fairly balanced in the viewpoints necessary to perform its function of conducting a broad study of law enforcement in America. Thus, this Court ordered that "Commission proceedings be halted—and no work product released—until the requirements of FACA are satisfied." Liability Op.[1] at 3. The question now is the appropriate remedy for these clear FACA violations.

For months, Defendants have known about—and ignored—their FACA obligations. Plaintiff diligently sought balance and transparency in the Commission—both from the Commission itself, and then from this Court. Plaintiff twice wrote Defendants Phil Keith and Katharine Sullivan to raise concerns over the Commission's exclusively law enforcement membership and the lack of public access. Liability Op. at 8–9. At least one Commission member acknowledged that Plaintiff's letters "raised valid points" and expressed concern over the Commission's operations in May 2020. *See* Dkt. No. 40-3 (email from Gina V. Hawkins). That same month, two working group members requested that all future Commission meetings be fully open and accessible to the press and public as required by law.[2]

---

[1] Citations to "Liability Op." refer to the Memorandum Opinion issued by the Court on October 1, 2020, and listed on the public docket as Dkt. No. 45.

[2] Letter from John Choi, Ramsey County Attorney, and Mark Dupree, Wyandotte County District Attorney, to President's Commission on Law Enforcement & the Administration of Justice (May 29, 2020), https://www.ramseycounty.us/sites/default/files/County%20Attorney/5.29.20%20Dupree%20and%20Choi%20letter%20to%20President%27s%20Commission.pdf (last accessed Oct. 9, 2020).

1

Yet, the Commission never responded to Plaintiff's concerns, and instead held at least 38 hearings after Plaintiff's first letter dated March 31, 2020. After receiving no substantive response to its letters, Plaintiff brought suit on April 30, 2020. The Commission continued holding closed door hearings and in fact accelerated its pace of work. Although Defendant Attorney General William P. Barr instructed the Commission to complete its report by October 28, 2020, the Commission appears to have submitted the report to the Attorney General two month ahead of schedule. *See* Dkt. No. 40-12. One working group member noted that the secrecy and speed with which the Commission was creating the report seemed to indicate the Commission was designed to justify a predetermined set of conclusions, not engage in a truly rigorous study of law enforcement and justice.[3]

Given the Commission's wholesale disregard of FACA's requirements, Defendants must not be able to publish or rely on the Commission's recommendations without full remedy of the FACA violations. Indeed, this Court has already ordered as much. *See* Dkt. No. 44 at 2–3. And, given the breadth of the FACA violations and the fact that the existing Commission has already completed its work, a use injunction is the only viable remedy. Such an injunction would still allow the Commission to use work product that has already been completed (such as hearing transcripts), but only if the Commission takes specific and concrete steps to—as much as reasonably practicable—restart its inquiry afresh with a newly constituted membership that complies with FACA. Specifically, the Commission should not be permitted to draft new recommendations or reports unless and until it is reconstituted with additional members from different backgrounds; a

---

[3] Christina Carrega, *Prosecutor resigns from Trump law enforcement commission, calls it 'intent on providing cover for a predetermined agenda,'* CNN (Sept. 11, 2020), https://www.cnn.com/2020/09/11/politics/john-choi-resigns-trump-law-enforcement-commission/index.html. Plaintiff can provide Mr. Choi's September 3, 2020, resignation letter should the Court find it helpful.

charter is filed with the appropriate entities; the public is given full access to all documents provided to or produced by the Commission to date, and an opportunity to participate in new hearings; and the new Commission members are provided with all documents that are available to the public as well as all internal Commission documents that would be exempt from public disclosure under Section 552(b) of the Freedom of Information Act and have a full and meaningful opportunity to participate in drafting recommendations. Only then will the Commission be able to create genuine recommendations with the benefit of public discourse and the necessary differing viewpoints.

## **ARGUMENT**

This Court has broad discretion in fashioning injunctive relief. *See Cummock v. Gore*, 180 F.3d 282, 294 (D.C. Cir. 1999) (Rogers, J., concurring) ("Broad remedies may be available [under FACA]."). The scope of an appropriate injunction "will have to be informed by the nature and prevalence of [the] violations of FACA [established]." *Natural Res. Def. Council v. Curtis*, 189 F.R.D. 4, 10 (D.D.C. 1999).

The nature and prevalence of the FACA violations in the Commission's operations warrant broad injunctive relief, as they cannot be undone. This is not a case of a single violation, or even a handful of violations, that may justify a lesser remedy. Instead, this Commission has already created recommendations based on months of closed-door hearings and privately submitted evidence. Thus, the Commission's current report does not have the legitimacy or usefulness afforded by a lawful advisory committee and should be enjoined from release or use in any way. The Commission must be reconstituted to be "fairly balanced," and it must provide full opportunity for public access and transparency, prior to preparing new recommendations.

*First*, the Commission must be reconstituted to contain a "cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions" of the Commission.

3

41 C.F.R. §102-3.60(b)(3). Specifically, the Commission must include, among others, members from the civil rights community, including those who work towards police accountability and with communities impacted by police violence. As Defendant Barr himself has recognized, these voices are "important for gaining an effective understanding of the[] problems and formulating sound solutions." Implementation Memo[4] at 2. But simply adding members to the Commission is not sufficient; these new members must be given complete access to all recordings, testimonies, and other submissions considered by the current Commission members in drafting the report. Only then will the new members be able to effectively contribute to developing robust recommendations.

*Second*, this Court should enter a use injunction barring Defendants from releasing the report sent to Defendant Barr by the current Commission, and barring Defendants Barr and the United States Department of Justice (DOJ) from relying on that report for any purpose. Given the scope and duration of the FACA violations in this case, the Commission's decision to continue violating the law even after being put on notice, and the ineffectiveness of other forms of injunctive relief at ensuring public accountability in agency and advisory committee decision-making, a use injunction is appropriate here.

## I.   THE COMMISSION MUST BE RECONSTITUTED TO COMPLY WITH FACA.

The Commission's failure to have a fairly balanced membership is central to this litigation and Plaintiff's injury. The Commission has thus far reflected a single viewpoint—that of former and current law enforcement. To create a legitimate commission in compliance with FACA, differing voices must be added.

---

[4] Citations to "Implementation Memo" refer to the Implementation Memorandum for Heads of Departments Components sent by Attorney General William P. Barr on January 21, 2020, located on the public docket as Dkt. No. 25-5.

FACA requires that "persons or groups directly affected by the work of [the Commission] have some representation on the committee." *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983). As such, the Commission must include "a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions of the advisory committee." 41 C.F.R. § 102-3.60(b)(3). Defendant Barr has recognized that such a "cross-section" includes "community organizations, civic leadership, civil rights and victim's rights organizations, criminal defense attorneys, academia, social service organizations, and other entities that regularly interact with American law enforcement and study the issues impacting the administration of justice in the United States." Implementation Memo at 2.

Plaintiff's proposed remedial order would require that, prior to performing any further work, the Commission be reconstituted to include members from these backgrounds and experiences. The Court has already required as much. Liability Op. at 43. The new members must also be allowed to fully participate in the Commission's operations; otherwise, the newly constituted Commission would still be "effectively unbalanced, because [the new member] was precluded from meaningful participation." *Cummock*, 180 F.3d at 291; *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 105–06 (D.D.C. 2017) (finding commission member had "a clear and indisputable right" to certain documents to ensure that he could "fully participate in the proceedings"). Indeed, FACA is designed to prevent commissions from convening a group of like-minded individuals but excluding duly appointed members with opposing viewpoints. *See Cummock*, 180 F.3d at 291–92 (citing Jay S. Bybee, Advising the President: Separation of Powers and the Federal Advisory Committee Act, 104 Yale

L.J. 51, 58–59 (1994) (discussing the "outside, 'neutral' support" necessary to make "salable" the conclusion of an agency decisionmaker)).

Thus, Plaintiff's proposed injunction requires that new Commission members be given full access to all Commission documents, including internal communications, and be given a meaningful opportunity to review the Commission's work product, solicit additional evidence, and provide real feedback to the report. In addition, all current Commissioner members should be instructed, in writing, that the prior recommendations were created in violation of Federal law and must not be considered, so that the new Commissioner members have a full opportunity to influence the recommendation process. Only such an injunction would "confer on a [new Commission] member the right to fully participate in the work of the committee to which he or she is appointed." *Id.* at 291.

The newly constituted Commission must also comply with FACA's procedural provisions to ensure transparency. Thus, the Commission must provide timely notice of its meetings in the Federal Register. 5 U.S.C. app. § 10(a)(2). Those meetings must also be held open to the public, with interested persons being given the opportunity to provide substantive input. 5 U.S.C. app. § 10(a)(1), (3). Detailed meeting minutes must be maintained so that those unable to attend any meeting may nonetheless remain apprised of the Commission's conduct. 5 U.S.C. app. § 10(c). Further, all documents, including any drafts, used or prepared by the newly constituted Commission must be made available for public inspection. 5 U.S.C. app. § 10(b).

## II.   PLAINTIFF IS ENTITLED TO A USE INJUNCTION RESTRICTING RELEASE AND USE OF THE COMMISSION'S REPORT.

As this Court has recognized, the propriety of a use injunction depends on "if FACA's principal purposes—(1) avoidance of wasteful expenditures and (2) public accountability—will be served by granting a use injunction." Liability Op. at 44 (internal quotation marks omitted).

6

Both of these factors weigh in favor of a use injunction here. Further, Defendants' conduct, including their decision to continue pushing forward with producing the report, even after being put on notice of their FACA violations, counsel in favor of broad relief—regardless of the expenses they have incurred. Even if a use injunction would result in wasteful expenditures, it may be appropriate where "the defendant . . . has acted to deprive the plaintiff of effective relief[.]" *Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998).

Because the Commission has submitted its report to Defendants Barr and the DOJ for consideration, but the Commission continues to exist and the report has not yet been used as the basis for executive action, *see* Liability Op. at 18–19, a use injunction is an effective remedy for Defendants' open flouting of FACA. Only such an injunction will prevent the Commission's unlawful report and recommendations from forming the basis for governmental actions. Defendants cannot credibly claim that they have incurred such significant expenses that a use injunction would be wasteful. And they certainly cannot claim that the expended resources outweigh their complete failure to comply with FACA despite receiving notice of their violations seven months ago. Further, given Defendants accelerated their timeline for completing the report after litigation was filed, Defendants cannot now complain that an injunction would be inequitable.

### A.   Defendants' Open Violation of Numerous FACA Provisions, Even After Being Put on Notice, Warrants Broad Equitable Relief.

Courts have consistently held that the more severe an advisory committee's violations of FACA, the more appropriate broad injunctive relief is. *See, e.g.*, *Curtis*, 189 F.R.D. at 10; *W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227, 1242–43 (D. Mont. 2019) (granting use injunction where FACA violation—failure to file advisory committee charter—"goes to the very creation and existence of the advisory committee").

Here, there is no question that the Commission has openly violated multiple provisions of FACA since its formation. This Court has already determined that "the Commission includes no members from civil rights groups like LDF. Nor does it include any criminal defense attorney, academic, civic leader, or representative of a community organization or social service organization. Instead, all eighteen Commissioners are current or former law enforcement." Liability Op. at 41. In light of this one-sided membership, "the Court [wa]s hard pressed to think of a starker example of non-compliance with FACA's fair balance requirement." *Id.* at 42.

Compounding the problems of the biased membership, the Commission failed entirely to allow the public—or Congress—the opportunity to oversee Commission operations ignoring FACA's transparency and public access requirements. As the Court found, the Commission has held thirty days of hearings between February and May of 2020—none of which were properly noticed in the Federal Register. *Id.* at 8. Further, the Commission has operated since its inception without an advisory committee charter or a Designated Federal Official. *Id.* at 40. Thus, not a single word of the Commission's report was formulated in compliance with the law.

Taken together, the Commission's numerous violations of FACA significantly "increase[] the likelihood that the results of the study will be inaccurate." *Cargill, Inc. v. United States*, 173 F.3d 323, 330 (5th Cir. 1999). Indeed, at least one member of a working group tasked with drafting the report recognized as much; in a highly publicized resignation letter, District Attorney John Choi wrote:

> [I]t is now patently obvious . . . that this process had no intention of engaging in a thoughtful and open analysis, but was intent on providing cover for a predetermined agenda that ignores the lessons of the past, furthering failed tough-on-crime policies that led to our current mass incarceration crisis and fueling divisions between our communities and our police officers.[5]

---

[5] Carrega, *supra* n.3.

Despite claiming to evaluate "the salient issues affecting American law enforcement *and the communities they protect*," Implementation Memo at 1 (emphasis added), only the interests of the former are considered in the current report. Particularly given the national reckoning currently taking place regarding the ways in which law enforcement can mistreat the communities they work in, the failure to include any representation from civil rights organizations that represent those communities is significant.

Underscoring the propriety of broad relief here is Defendants' control of the timing of their report and decision to accelerate its release. As early as March 2020, prior to the majority of the Commission's hearings, Plaintiff diligently sought balance and transparency in the Commission. *See* Liability Op. at 8–9. Yet the Commission continued to hold secret hearings and decided to submit the report to the Attorney General at least two months ahead of schedule. *See* Dkt. No. 40-12. Because the Commission "has acted to deprive the plaintiff of effective relief," *Pena*, 147 F.3d at 1026, Plaintiff is entitled to broad relief.

The extent of the Commission's FACA violations make it easily distinguishable from the cases in which courts have denied a use injunction. *See Nw. Forest Res. Council v. Espy*, 846 F. Supp. 1009, 1015 (D.D.C. 1994) (denying injunction where committee had not held open meetings, but had made all documents, minutes, and other committee materials available to public, and plaintiff could not identify how FACA compliance would have resulted in different recommendations); *see also Nw. Ecosystem Alliance v. Office of the United States Trade Rep.*, No. 99-cv-1165, 1999 WL 33526001, at *8 (W.D. Wash. Nov. 9, 1999) (enjoining committee to reconstitute with balanced membership but denying use injunction because committee had been in operation for 19 years, and plaintiff would not have had access to the challenged documents even if committee had complied with FACA).

The extent of the Commission's noncompliance despite notice of violations, and the impact of those multiple violations on the Commission's ultimate recommendations, are harms that cannot be undone and thus counsel strongly in favor of a broad injunctive relief. *Cf. Seattle Audubon Soc'y v. Lyons*, 871 F. Supp. 1291, 1310 (W.D. Wash. 1994) (declining to enter use injunction where advisory committee's report was subject to public comment, and "recommendations would have been the same had there been full compliance with FACA").

### B.      A Use Injunction Would Not Result in a Waste of Government Resources.

In determining whether an injunction would create wasteful expenditures, courts consider both the extent of government resources already expended and whether the plaintiff delayed in bringing legal action. *See California Forestry Ass'n v. United States Forest Serv.*, 102 F.3d 609, 614 (D.C. Cir. 1996) (remanding to district court to determine whether injunction would promote FACA's purposes given committee had  spent "millions of dollars" and some meetings were open to public); *Pena*, 147 F.3d at 1026 (noting that use injunction would likely produce waste where plaintiff commenced litigation "after [the] committee ha[d] completed its meetings and [wa]s in the process of wrapping up its affairs"). Further, ambiguities as to the committee's expenditures do not weigh in Defendant's favor; a use injunction is still appropriate where "[i]t is . . . unclear how much money and resources went into the Committee's analysis and recommendations." *Bernhardt*, 412 F. Supp. 3d at 1243.

Here, Defendants have put forward no evidence about the expenses incurred by the government in operating the Commission as they have chosen to.[6] But the public information about the Commission's work suggests that any such expenses are minimal; the vast majority of the

---

[6] To the extent Defendants offer any such evidence in connection with their remedial briefing, Plaintiff respectfully requests the opportunity to examine the documents produced and engage in limited discovery as needed to verify Defendants' claims.

Commission's hearings have taken place telephonically, and publicly available documents indicate that the Commission has not independently commissioned any studies, surveys, or other work beyond simply hearing testimony. Nor do any available documents suggest that Defendants compensated Commission members, working group members, or other Commission staff for their work on the report. Under settled law, this ambiguity counsels in Plaintiff's favor.

Moreover, and consistent with the order entered by this Court, the use injunction proposed by Plaintiffs would not render the Commission's prior work worthless or unusable. Once the Commission remedies the FACA violations at issue, the newly constituted Commission could still review and consider the entire documentary record already assembled—including hearing transcripts, written submissions, and draft recommendations—in forming its ultimate recommendations.

**C.     A Use Injunction Would Ensure Public Accountability Going Forward.**

Courts have recognized that, as a general matter, "[a] use injunction is the only way to achieve FACA's purposes of enhancing public accountability . . . ." *Bernhardt*, 412 F. Supp. 3d at 1243. That general principle may be less compelling if the advisory committee has been open to the public or subject to some degree of oversight despite technical noncompliance with FACA. *See, e.g.*, *Akzo-Nobel, Inc. v. United States*, No. 00-30834, 2001 WL 34772206, at *2 (5th Cir. May 25, 2001) (finding use injunction inappropriate because committee simply filed charter with wrong entities, it "did not hide from Congressional oversight" and interested parties, including plaintiffs, were invited to every meeting).

This is not the situation here. As the Court has recognized, not a single hearing held by the Commission has been properly noticed and made open to the public. The Commission has not been subject to any Congressional oversight. And because the Commission has already completed and submitted its report to the Attorney General, there is no opportunity for the public to correct

inaccuracies or challenge assumptions in the report itself. Further, the Commission's studies and recommendations include a variety of recommendations for agency conduct, not all of which will be subject to administrative procedures that offer an opportunity for public review and comment in the future. *See* Liability Op. at 31 (noting subject matter of various Commission hearings). Because *no* part of the Commission's operations or deliberations have been held open to any form of public oversight or participation, a use injunction is appropriate.

## <u>CONCLUSION</u>

For these reasons, Plaintiff respectfully requests that the Commission be reconstituted to comply with FACA and that a use injunction be entered barring release or use of the Commission's report as detailed in Plaintiff's Proposed Remedial Order filed herewith.


Dated: October 9, 2020                                 Respectfully submitted,

/s/ *Ashok Chandran*
Samuel Spital
Natasha C. Merle*
Ashok Chandran*
Steven Lance*
NAACP Legal Defense
& Educational Fund, Inc.
40 Rector Street, 5th Fl.
New York, NY 10006
(212) 965-2200
(212) 226-7592 Fax
achandran@naacpldf.org

*Admitted Pro Hac Vice                                 *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this document with this Court using the CM/ECF

system, which provides notice of this filing to all registered CM/ECF users, on the 9th day of

October 2020.

/s/ Ashok Chandran
Ashok Chandran
NAACP Legal Defense
& Educational Fund, Inc.
40 Rector Street, 5th Fl.
New York, NY 10006
(212) 965-2200
(212) 226-7592 Fax
achandran@naacpldf.org
