**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.,

*Plaintiff,*

*v.*

WILLIAM F. BARR, in his official capacity as Attorney General of the United States, *et al.*,

*Defendants.*

Case No. 1:20-cv-1132-JDB

# DEFENDANTS' MEMORANDUM ON REMEDIES

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................ 3

I. ENTRY OF A USE INJUNCTION WOULD BE INAPPROPRIATE. ............................ 3

A. LDF Lacks Standing to Obtain a Use Injuction. ................................................... 3

B. Entry of a Use Injunction Would Be Unprecedented in This Circuit, and the Denial of One Would Not Render FACA a "Nullity." .................................... 5

C. A Use Injunction Would Result in An Unjustifiable Waste of Public Expenditure and Would Not Serve the Purpose of Public Accountability. ............ 6

D. LDF's Lack of Urgency in Pursuing This Action Undercuts Any Alleged Need for a Use Injunction.. ............................................................................ 9

II. AT MOST, A LIMITED USE INJUNCTION WOULD BE SUFFICIENT TO ADVANCE FACA'S PURPOSES. ................................................................... 10

III. THE COURT SHOULD AMEND ITS ORDER AND NOT REQUIRE THE COMMISSION TO COMPLY WITH FACA'S PROCEDURAL REQUIREMENTS.............................................................................................. 11

CONCLUSION........................................................................................................ 12

## INTRODUCTION

Defendants submit this memorandum pursuant to the Court's October 1, 2020 Order directing the parties to propose remedial orders and to address whether a use injunction would be appropriate in this case—and, specifically, whether "denial of a use injunction would 'render FACA' a nullity." Memorandum Opinion at 44, ECF No. 45 ("Mem. Op.") (quoting *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1025 (D.C. Cir. 1998) ("NRDC")). For the reasons discussed below, Defendants respectfully submit that the Court should not issue a use injunction because Plaintiff, the NAACP Legal Defense & Education Fund, Inc. ("LDF"), lacks standing for that remedy and because the denial of such an injunction would still leave FACA with significant force.

LFD lacks standing to obtain a use injunction under the D.C. Circuit's reasoning in *NRDC*. Although this Court has concluded that LDF has standing to bring its claims, standing must be evaluated separately for each form of relief sought. Here, LDF cannot show that a use injunction would remedy its asserted injuries, and therefore entry of a use injunction would be inappropriate.

Even if LDF had standing to obtain a use injunction, it would be unprecedented in this Circuit and contrary to *NRDC* to provide that relief. Use injunctions are "draconian" and a remedy of "last resort" given the serious First Amendment and separation-of-powers concerns raised by stifling advisory committee reports, and LDF has already received effective relief in the form of a declaratory judgment, which is sufficient to remedy LDF's asserted injuries. *See NRDC*, 147 F.3d at 1017, 1025. LDF can use that declaratory judgment as "ammunition" in the public forum if or when the Department were to eventually act on the recommendations in the Commission's report. *Id.* at 1026 n.6. In addition, a use injunction would result in a significant waste of public resources, given that the Commission has been working for the better part of a year and that its work is nearly

complete. That is especially true given that LDF never moved for emergency injunctive relief despite knowing that the Commission's report is due to the Attorney General on October 28, 2020.

A use injunction also would fail to serve FACA's purpose of public accountability. The Commission has heard from a diverse range of views, including LDF's, through its hearings and consideration of written submissions from interested parties. There is no legitimate public interest in preventing the Attorney General or the President from hearing the results of the Commission's efforts. Thus, if the Court is inclined to enter a use injunction—which Defendants assert it should not—the Court should issue only a limited one requiring a disclaimer that the Commission did not comply with FACA.

Finally, Defendants respectfully ask that the Court amend its Order to remove the requirements to file a charter, provide notices of future meetings, and to designate a federal officer for the Commission. The Commission is only one week's worth of work away from finalizing its report. *See* Third Declaration of Dean Kueter ¶ 11 ("Third Kueter Decl.") (attached as Exhibit A). As a consequence, there will be no further meetings of the Commission, *id.*, and no purpose would be served by requiring Defendants to comply with those procedural requirements.

## BACKGROUND

LDF filed this FACA action challenging the establishment and operation of the Commission on Law Enforcement and the Administration of Justice on May 1, 2020. *See* Compl., ECF No. 1. On October 1, the Court granted LDF's motion for summary judgment and denied Defendant's cross-motion for summary judgment. *See* Order, ECF No. 44. In doing so, the Court issued a declaratory judgment in LDF's favor, declaring that the Commission is an advisory committee subject to the requirements of FACA and that Defendants have violated the statute by failing to meet its requirements. Order at 3, ECF No. 44. The Court also issued writs of mandamus

directing the Commission and its officers to file a charter and directing the Commission and its officers to provide notice of any future meeting in the Federal Register, and it ordered the Attorney General to designate a federal officer for the Commission. *Id.* at 1–2. The Court also preliminarily enjoined the Commission from holding "further meetings, sessions, or hearings, or [from] conducting any official business," and preliminarily enjoined Defendants from submitting, accepting, publishing, or relying upon any report or recommendations produced by the Commission. *Id.* at 2–3.

The Court declined, however, to permanently enjoin the Commission from conducting any business or to permanently enjoin Defendants from "'submitting, accepting, publishing, employing, or relying upon any report or recommendations,'" which would amount to a "use injunction." Mem. Op. at 43 (quoting Am. Compl., Prayer for Relief ¶¶ d–e). The Court directed the parties to brief remedial issues, including whether "'denial of a use injunction would render FACA a nullity.'" *Id.* at 44 (quoting *NRDC*, 147 F.3d at 1026).

## ARGUMENT

## I. ENTRY OF A USE INJUNCTION WOULD BE INAPPROPRIATE.

### A. LDF Lacks Standing to Obtain a Use Injunction.

Even though the Court has determined that LDF's claims are not barred, as a general matter, from the lack of a cognizable injury, *see* Mem. Op. at 13–20, LDF must still "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

In *NRDC*, the D.C. Circuit made clear that a plaintiff cannot establish the concrete and redressable injury necessary to confer standing to obtain a use injunction merely by alleging that it was denied an opportunity to participate at past meetings of a committee convened in violation

of FACA. 147 F.3d at 1020–21; *see id.* ("[W]e agree with the Department that *Public Citizen* [*v. United States*, 491 U.S. 440 (1989),] does not compel the conclusion that the appellees have standing to seek any and all kinds of equitable relief for the admitted FACA violations."). Nor can a plaintiff predicate standing on the theory that a use injunction would punish the government for past FACA violations or deter it from future violations. Such an argument

> erroneously presumes that the punitive consequences of the injunctive order suffice to establish that that order redresses the Department's past FACA transgressions. On the contrary, injunctive relief principally serves a remedial purpose, not a punitive one, and thus the injunction's collateral punitive effects do not by themselves satisfy Article III's redressability requirement.

*Id.*at 1022 (citing *Hartford-Empire Co. v. United States*, 323 U.S. 386, 409 (1945) ("[W]e may not impose penalties in the guise of preventing future violations.")).

Absent some theory of punishment for a past FACA violation, which is inadequate to establish standing to obtain a use injunction, LDF does not suffer a concrete injury that can be addressed by a permanent injunction banning the use of the Commission's work product. *NRDC*, 147 F.3d at 1022. As this Court explained, LDF asserts that "defendants have injured [it] by denying [it] access to information, and thus limiting oversight" and that "defendants have limited LDF's ability and right to have a representative voice on the Commission on an issue with which LDF is engaged." Mem. Op. at 17 (citing Am. Compl. ¶ 214) (alterations omitted). Yet, none of those asserted injuries would be redressed by a use injunction. The Commission has concluded all of its hearings and fact-finding and has settled on its recommendations. *See* Kueter Decl. ¶ 10. Moreover, LDF has no right to be named to the Commission. *See Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983) ("Section 5, to be sure, confers no cognizable personal right to an advisory committee appointment"). Prohibiting the Commission from completing the remaining ministerial tasks necessary to finalize its report and to transmit that report to the Attorney General, therefore, would

serve only as punishment for the failure to comply with FACA that the Court found, which is not sufficient to confer standing for a use injunction.

**B. Entry of A Use Injunction Would Be Unprecedented in This Circuit, and the Denial of One Would Not Render FACA a "Nullity."**

As this Court recognized, "'[b]ecause of its First Amendment implications, punitive effect, and likely standing complications, a use injunction should be the remedy of last resort.'" Mem. Op. at 43–44 (quoting *NRDC*, 147 F.3d at 1025). Indeed, such a remedy—which would prevent the public and the Attorney General or the President from ever seeing the result of months of the Commission's work—would be unprecedented in this Circuit and would raise significant First Amendment and separation-of-powers concerns. Defendants are not aware of any extant decision, other than the two out-of-circuit cases this Court cited, that have prevented a committee subject to FACA from releasing its report. *See* Mem. Op. at 44 (citing *W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227, 1244 (D. Mont. 2019); *Idaho Wool Growers Ass'n v. Schafer*, 637 F. Supp. 2d 868, 880 (D. Idaho 2009)).[1] Even the district court in *NRDC*, which the D.C. Circuit explained had understated the requirements for a use injunction, declined to enjoin the National Academy of Sciences from publishing the relevant committee's final report in light of the committee members' First Amendment rights. *See* 147 F.2d at 1016, 1025. Other courts have similarly declined to take the draconian step of prohibiting use or reliance upon advisory committee reports, despite finding a violation of FACA. *See, e.g.*, *N.W. Forest Resource Council v. Espy*, 846 F. Supp. 1009, 1015 (D.D.C. 1994) (declining to issue a use injunction because doing so would "exceed the injury presently to be redressed" and because a use injunction would "represent [an affront] to the

[1] In *Lorillard, Inc. v. FDA*, 56 F. Supp. 3d 37 (D.D.C. 2014), the court enjoined the Food and Drug Administration from using the report generated by the committee at issue in that case, based on the court's conclusion that the members of the committee had personal conflicts of interest. *See id.* at 56. However, the D.C. Circuit vacated the decision and vacated the court's injunction based on its conclusion that the plaintiffs lacked standing. *See R.J. Reynolds Tobacco Corp. v. FDA*, 810 F.3d 827, 832 (D.C. Cir. 2016).

separation-of-powers principle"); *id.* ("The Court is aware of no authority upon which it could confidently rely in concluding that it may forbid the President and his Cabinet to act upon advice that comes to them from any source, however irregular."); *Nw. Ecosystem All. v. Office of U.S. Trade Reps.*, No. C99-1165R, 1999 WL 33526001 (W.D. Wash. Nov. 9, 1999) ("The balance of hardships clearly tips against granting the utilization and disclosure injunctions").

That other courts in this Circuit have declined to enter use injunctions is unsurprising in light of *NRDC*'s reasoning. In *NRDC*, under similar circumstances as those presented here, the D.C. Circuit expressly rejected the argument that "denying a use injunction would render FACA a nullity." *NRDC*, 147 F.3d at 1026 n.6 (internal quotation marks omitted). The court explained that "declaratory relief provided the [plaintiffs] and others ammunition for their attack on the Committee's findings." *Id.* Although the relief did not redress the plaintiffs' "contemporaneous participation" injury, the D.C. Circuit emphasized that it had "never intimated that partial relief would 'render FACA a nullity.'" *Id*. Under *NRDC*, a use injunction is not warranted, and the lack of one would still leave FACA with significant force in light of the Court's declaratory judgment.

**C. A Use Injunction Would Result in An Unjustifiable Waste of Public Expenditure and Would Not Serve the Purpose of Public Accountability.**

The draconian remedy of a use injunction preventing the Commission from finalizing its report and conveying it to the Attorney General would result in a significant waste of public resources and would in no way advance the purpose of public accountability—both of which are factors the Court must consider before entering a use injunction. *See NRDC*, 147 F.3d at 1026.

Substantial public resources have been expended on the Commission. Pursuant to the terms of the Executive Order, the Attorney General established the Commission on January 21, 2020. *See* AG Memo. The Commission consists of 18 federal, state, or local officials, all of whom have other government responsibilities. *See* Kueter Decl. ¶ 2. And while each Commissioner

currently works in the criminal justice system, the Commission's membership reflects broad diversity in terms of background, expertise, and the populations that the members serve. *Id*. The Commission's work is also supported by 15 working groups, which have a combined membership of 121 additional officials, as well as by 20 full-time and 6 part-time staff members as well as by outside contractors. *Id.* ¶ 7. Over the better part of the last year, the Commission itself has held 14 different hearings and 51 panel discussions, all of which were open to attendance by members of the press and involved testimony from third-party witnesses (181 in total) who took the time to share their views on the Commission's work. *Id.* ¶ 3. The Commission's efforts have required the expenditure of approximately $ 4 million in federal taxpayer funds—which is a conservative estimate—and has consumed thousands of work hours. *Id.* ¶ 8. A use injunction preventing Defendants from relying on the Commission's work would make this substantial expenditure of public resources and time all for naught, resulting in tremendous waste. *See NRDC*, 147 F.3d at 1026 (directing courts to consider "the magnitude of the waste"); *Cal. Forestry Ass'n v. U.S. Forest Serv.*, 102 F.3d 609, 614 (D.C. Cir. 1996) (noting that the "preparation of the report has already consumed millions of dollars" and that an injunction prohibiting its use "would not meet FACA's aim to 'reduce wasteful expenditures'" (quoting *Public Citizen*, 491 U.S. at 459)).

A use injunction is also not appropriate because it would not serve FACA's purpose of public accountability. As the D.C. Circuit explained in *NRDC*, this Court's focus should be on the "actual deprivation resulting from non-compliance." 147 F.3d at 1027. Here, there has been no loss in public accountability. From the beginning, the Commission's membership has been public, the Commission's hearings were attended by the press, and hearing summaries and transcripts have been made available on the Department's public-facing website. *See* Memorandum from the

Attorney General, The Commission on Law Enforcement and the Administration of Justice (Jan. 21, 2020) at 3–4, ECF No. 33-2 ("AG Memo."); Kueter Decl. ¶ 4.

Furthermore, in creating the Commission, the Attorney General emphasized that "a diversity of backgrounds and perspectives is important for gaining an effective understanding" of the challenges facing law enforcement. AG Memo. at 2. As noted above, the Attorney General appointed Commission members with a diverse range of views and directed the Commission to "solicit input and information from various sectors of society, including community organizations, civic leadership, civil rights and victim's rights organizations, criminal defense attorneys, academic, [and] social service organizations." *Id.* The Commission did exactly that.

For example, in preparation for its hearings on Community Engagement, the Commission invited over thirty different organizations involved in community engagement and civil rights to participate, including the ACLU, the Brennan Center, and the Anti-Defamation League. *See* Kueter Decl. ¶ 5. In addition, the Commission invited outside organizations that did not appear before the Commission to submit written comments. *See* Kueter Decl. ¶ 6; Transcript of June 2, 2020 Commission Hearing at 2–3 ("Of those organizations that are not able to or choose not to participate in our teleconferences, we'd still like for them to submit written testimony. We will continue our outreach to these organizations to ensure their voices are heard and ensure all Commissioners have these documents."), https://www.justice.gov/file/1285261/download. Indeed, such organizations, including LDF, submitted written comments on the Commission's work. *See* Kueter Decl. ¶ 6. These "[s]ubstantial efforts to include members of the interested public," and the public's (including LDF's) actual opportunity to provide input into the Commission's work, weigh strongly against entry of a use injunction. *NRDC*, 147 F.3d at 1026;

*see also Cal. Forestry Ass'n*, 102 F.3d at 614 (noting that "[t]he need for injunctive relief may be reduced where, as here, there has been at least some attempt to ensure public accountability").

**D. LDF's Lack of Urgency in Pursing This Action Undercuts Any Alleged Need for a Use Injunction.**

Plaintiff's timing in this litigation further erodes any argument that a use injunction is warranted. *See NRDC*, 147 F.3d at 1026 (noting an unexplained delay in prosecuting a claim for injunctive relief should make courts "reluctant" to award a use injunction). The President signed the Executive Order directing the Attorney General to establish the Commission on October 28, 2019, *see* Executive Order 13896, 84 Fed. Reg. 58,595 (Nov. 1, 2019), and the Attorney General established the Commission and publicly announced its members on January 21, 2020, *see generally* AG Memo. The Commission went to work quickly, holding its first of 15 public hearings on February 27, 2020. *See* Kueter Decl. ¶ 3.

Plaintiff, however, did not file its initial complaint in this case until May 1, 2020, *see* Compl., ECF No. 2, and Plaintiff amended its complaint several weeks later on May 28, ECF No. 24. By that time, the Commission was fully staffed and had already heard from third parties in over 30 different panel discussions. *See* Kueter Decl. ¶ 9. Moreover, the Commission has been forthright in its litigation papers that its meetings were continuing, and Defendants provided LDF with an estimated end date for Commission activities. Yet, throughout this case, Plaintiff has asked the Court to issue relief only before October 28, when the Commission's report is due to the Attorney General. *See*, *e.g.*, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 28, ECF No. 25-2. By waiting months after the Commission was established to file, and by asking for a decision only by the time the Commission's work would be complete, LDF has failed to prosecute its claim for injunctive relief in such a way as to minimize the waste of public resources that a use injunction

would impose, undercutting further any argument that a use injunction would be appropriate in this case. *See NRDC*, 147 F.3d at 1026.

## II. AT MOST, A LIMITED USE INJUNCTION WOULD BE SUFFICIENT TO ADVANCE FACA'S PURPOSES.

For the reasons discussed above, a use injunction is not appropriate in this case under the law of the D.C. Circuit, and the Court's award of declaratory judgment is an adequate remedy for LDF's asserted injuries. However, if the Court is inclined to restrict the use of the Commission's report, it should not do so wholesale, given the serious First Amendment, separation-of-powers, and other concerns articulated in *NRDC*. Instead, if the Court determines that a use injunction is warranted, the Court should issue only the type of "limited use injunction" described in footnote 13 of the Court's Memorandum Opinion. *See* Mem. Op. at 44 n.13.

In *National Resources Defense Council v. Abraham*, 223 F. Supp. 2d 162 (D.D.C. 2002), which involved the same plaintiffs as in *NRDC*, the court concluded that the challenged committees were subject to FACA but did not comply with the statute's requirements. Rather than prohibiting the defendants from using or distributing the committees' reports, the court required the defendants to include a disclaimer indicating that the committees were subject to FACA and that the agency did not comply with FACA's requirements. *Abraham*, 223 F. Supp. 2d at 162.

Again, Defendants do not believe that any use injunction is warranted, or that such a disclaimer is required. This Court's declaratory judgment that the Commission does not comply with FACA redresses LDF's claimed injuries and gives LDF ample "ammunition" to question the Commission's findings in the public forum or in any subsequent agency proceedings that might seek to rely on the Commission's report. *See id.* at 181 ("A declaratory judgment from this Court would enable plaintiffs to publicly challenge the underpinnings and conclusions of the [ ] committees established and utilized by DOE.") (citing *Byrd v. EPA*, 174 F.3d 239, 244 (D.C. Cir.

1999)). However, if the Court feels a use injunction is necessary, a limited use injunction stating that the Commission failed to comply with FACA would still allow the Commission to finalize and transmit its report and would at least have some basis in precedent from this Circuit.[2]

## III. THE COURT SHOULD AMEND ITS ORDER AND NOT REQUIRE THE COMMISSION TO COMPLY WITH FACA'S PROCEDURAL REQUIREMENTS.

Defendants also respectfully submit that the Court should modify its Order to remove the portions requiring the filing of a charter, notices of future Commission meetings, and designation of a federal officer for the Commission. The basic purpose of those requirements, like FACA on the whole, is to ensure that "new advisory committees be established only when essential and that their number be minimized," that they be created under uniform standards, that they remain advisory in nature, and that "Congress and the public remain apprised of their existence, activities, and cost." *Cummock v. Gore*, 180 F.3d 282, 285 (D.C. Cir. 1999) (quotation omitted).

The Commission has been in place since January 2020, and the Commission's report is now only a week's work away from completion. The Commission's meetings have all concluded, and all that remains to finalize the report and transmit it report to the Attorney General. *See* Kueter Decl. ¶¶ 10–11. Thus, given the passage of time, and the late stage of the Commission's existence, no practical purpose is served by requiring Defendants to comply with FACA's procedural requirements to file a charter, provide notices of public meetings, or to appoint a designated federal official. *Cf. Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 223 (D.D.C. 2017) ("[C]ourts in the D.C. Circuit have routinely held that claims based on FACA's [non-section 10(b)] procedural requirements are mooted when the relevant advisory committee ceases to exist.").

[2] If the Court does decide to enter a limited use injunction, Defendants propose the following language: "A federal district court concluded that the Presidential Commission on Law Enforcement and the Administration of Justice was subject to the Federal Advisory Committee Act, 5 U.S.C. App. 2, and did not comply with that statute's requirements. That ruling has not been subjected to appellate review."

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask that the Court deny LDF's request for a permanent use injunction in this case, and to amend its Order to remove the portions requiring the filing of a charter, to provide notices of public meetings, or to appoint a designated federal official.

Dated: October 9, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

JOHN V. COGHLAN
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0878
E-mail: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*