# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) |
| WILLIAM F. BARR, in his official capacity as Attorney General of the United States, *et al.*, | ) ) ) ) ) |
| *Defendants*. | ) ) |

Case No. 1:20-cv-1132-JDB

## DEFENDANTS' RESPONSE MEMORANDUM ON REMEDIES

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.  ENTRY OF A USE INJUNCTION WOULD BE INAPPROPRIATE. ............................. 2

  A. Nothing About Defendants' Conduct or LDF's Lawsuit Justifies the "Draconian" Remedy of a Use Injunction. .............................................................. 2

  B. The Use Injunction That LDF Requests Would Result in Substantial Waste in Light of the Commission's Work To-Date ............................................. 5

II. THE COMMISSION'S WORK IS ESSENTIALLY COMPLETE, AND NO PURPOSE WOULD BE SERVED BY REQUIRING DEFENDANTS TO COMPLY WITH FACA'S PROCEDURAL REQUIREMENTS ...................................... 7

CONCLUSION ...................................................................................................................... 8

**INTRODUCTION**

The Court should reject Plaintiff LDF's request for a use injunction, which would be unprecedented in this Circuit and contrary to the reasoning in *Natural Resources Defense Council v. Pena*, 147 F.3d 1012 (D.C. Cir. 1998) ("*NRDC*"). LDF acknowledges *NRDC* only in passing and never addresses its instruction that use injunctions are "draconian" and should be remedies of "last resort." 147 F.3d at 1017, 1025; *see also* Mem. of Law in Supp. of Pl.'s Proposed Remedial Order at 7, 9, 10, ECF No. 46 ("Pl.'s Remedies Mem."). Rather, LDF attempts to convince the Court that this case in particular warrants a use injunction, because the Commission has held a large number of meetings, despite being put "on notice" of LDF's of potential FACA violations. *See* Pl.'s Remedies Mem. at 4, 7.

Contrary to LDF's premise, Defendants were not required to halt the Commission's operations and change its membership simply based on LDF's claim that it put Defendants "on notice" of its position. Pl.'s Remedies Mem. at 7. If LDF believed that the Commission's composition—which was dictated by the Executive Order issued in October 2019—was not fairly balanced, LDF should have sought equitable relief expeditiously. Instead, LDF waited six months to bring suit, and, even then, did not move for equitable relief. Moreover, although the scope of the UMRA exemption presented an issue of first impression in this Circuit, LDF's summary judgment motion simply sought a declaratory judgment that, predictably, would not be issued until the Commission's work was nearly complete. Certainly, the Court should not penalize Defendants now through the extraordinary remedy of a use injunction based retrospective determinations regarding FACA's applicability.

Moreover, under *NRCD*, that the Commission has held extensive meetings, requiring significant public and third-party resources, cuts against LDF's argument for a use injunction. As

1

Defendants explained in their opening remedies brief, the Commission's work to-date has been extensive, and the Commission has drawn on the time and effort of hundreds of witnesses and commenters, including civil rights organizations, when formulating its recommendations.  Given the tremendous waste of resources that would result from a use injunction, the transparency that already accompanied the Commission's work, and LDF's overall delay in pressing its claim, the Court should allow the Commission to take the minimal remaining steps to finalize its report and transmit it to the Attorney General.

## ARGUMENT

### I. ENTRY OF A USE INJUNCTION WOULD BE INAPPROPRIATE.

#### A. Nothing About Defendants' Conduct or LDF's Lawsuit Justifies the "Draconian" Remedy of a Use Injunction.

LDF asks this Court to issue a use injunction prohibiting the Commission's work product from ever being used for any purpose.  As Defendants explained in their opening brief, no court bound by *NRDC* has ever issued an injunction prohibiting the use of a FACA committee's report, and this Court should not be the first to do so.

LDF's only attempt to tether its request to *NRDC* is to allege that the Commission "'has acted to deprive the plaintiff of effective relief'" by continuing to hold meetings despite LDF's lawsuit.  *See* Pl.'s Remedies Mem. at 9 (quoting *NRDC*, 147 F.3d at 1026).  Yet, nothing in *NRDC* suggests that a committee must capitulate and stop meeting when a FACA violation is merely alleged, or that continuing to convene "deprive[s]" a plaintiff of a meaningful remedy.  147 F.3d at 1026.  To the contrary, the D.C. Circuit strongly suggested in *NRDC* that a use injunction was not appropriate in that case because the declaratory judgment issued gave the plaintiffs "and others ammunition for their attack on the Committee's findings."  *Id*. at 1026 n.6.  In this case, as in

*NRDC*, the declaratory judgment the Court has already issued gives LDF an effective remedy to debate the Commission's recommendations in the public forum.  No other remedy is warranted.

Other equitable considerations also prelude a use injunction.  The Executive Order issued in October 2019 specified that the Commission's membership would consist solely of government officials.  *See* Executive Order 13896, 84 Fed. Reg. 58,595, 58,595 (Nov. 1, 2019).  It also required the Commission's report to be completed within one year of the Executive Order's effective date— that is, by October 28, 2020.  LDF contends that FACA did not allow the Attorney General to constitute the Commission in accordance with the Executive Order's specifications.  Nonetheless, LDF did not move for any type of emergency relief that would have compelled the Attorney General to constitute the Commission differently.  Such an order, as an injunction, would have been subject to immediate appeal, which could have allowed Defendants to consider seeking further review before the Commission's work was essentially complete.  Yet, instead of promptly moving for the equitable relief that LDF contends was compelled by FACA, LDF waited six months after the Executive Order was issued to file suit—and over three months after the Attorney General announced the Commission's membership—and, even then, did not move for equitable relief.  *See* Compl., ECF No. 2; Pl.'s Mot. or Summ. J. Indeed, LDF's summary judgment motion did not request any particular remedy whatsoever.  All the while, however, the Commission conducted its work as required by the Executive Order, as plaintiffs were well aware.  *See generally* Third Decl. of Dean M. Kueter, ECF No. 47-1 ("Third Kueter Decl.").

LDF should not be permitted to now demand equitable relief that would waste many months of investment by the federal, state, and local officials who served on the Commission and its working groups, and by the hundreds of witnesses and organizations who testified at hearings or panel groups or whose representatives submitted comments for the Commission's

consideration. *See* Third Kueter Decl. ¶¶ 2–8. As the D.C. Circuit emphasized in *NRDC*, "[i]f the plaintiff has failed to prosecute its claim for injunctive relief promptly, and if it has no reasonable explanation for its delay, the district court should be reluctant to award relief." 147 F.3d at 1026.

Moreover, LDF's claim that it put the government "on notice" of its position—either through written comments or by filing suit—is irrelevant, because the applicability of FACA's requirements was contested. Indeed, while this Court ultimately agreed with LDF on the merits, it did "not fully endorse either party's reading" of the scope of the UMRA exemption. *See* Memorandum Opinion at 39, ECF No. 45. LDF's suggestion that Defendants should have adopted its interpretation of FACA and the UMRA exemption and changed the Commission's membership before this Court even evaluated the parties' arguments is untenable. On that logic, the government should have removed the then–First Lady Hillary Clinton from the President's Task Force on Health Care Reform upon being put "on notice" of the plaintiffs' position, even though the D.C. Circuit eventually rejected their argument. *See Association of American Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898 (D.C. Cir. 1993).

LDF's demand that the Court bar the Commission from *publishing* its report is even more extraordinary than the "use injunction" that the D.C. Circuit described as a "remedy of last resort." *NRDC*, 147 F.3d at 1025; *see also* Pl.'s Proposed Order, ECF No. 46-1. Even the district court in *NRDC*—whose use injunction was reversed by the D.C. Circuit—recognized that suppressing a committee report would present serious First Amendment issues and refused to grant such relief. *See* 147 F.3d at 1016, 1025. Nothing in FACA suggests that a court may prohibit the publication of committee reports, nor does the APA allow a court to do so.[1] On the contrary, the D.C. Circuit

---

[1] On its face, LDF's proposed remedial order could be read to prohibit the Attorney General from communicating with even the President regarding the Commission's recommendations. *See* Pl.'s Proposed Remedial Order at 5 (proposing that the Court permanently enjoin Defendants from

has long held that agency reports are not "final agency action" because they do not determine legal rights.  *See, e.g.*, *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115 (D.C. Cir. 1998); *Hearst Radio, Inc. v. FCC*, 167 F.2d 225 (D.C. Cir. 1948).

> **B.**     **The Use Injunction That LDF Requests Would Result in Substantial Waste in Light of the Commission's Work To-Date.**

As Defendants explained in their opening remedies brief, an injunction preventing the Commission from finalizing its report and conveying it to the Attorney General would result in a significant waste of public resources.  The Commission's work has required millions of dollars in the expenditure of public funds, as well as thousands of hours of work by the Commissioners, the Commission's working group members, witnesses at the Commission's many hearings, and staff and contractors.  *See* Defs.' Memorandum on Remedies at 6–7, ECF No. 47 ("Defs.' Remedies Mem.").  Those expenditures are far from "minimal," as LDF speculates, Pl.'s Remedies Mem. at 10–11, and they weigh heavily against a use injunction in this case, *see, e.g.*, *Cal. Forestry Ass'n v. U.S. Forest Serv.*, 102 F.3d 609, 614 (D.C. Cir. 1996) (instructing the district court to consider "whether under the circumstances an injunction would promote FACA's purposes," and noting that "preparation of the report has already consumed millions of dollars").[2]

---

"transmitting" the Commission's report).  The Court should decline to issue such an injunction for the additional reason that doing so would raise serious separation-of-powers concerns.  *See, e.g.*, *N.W. Forest Resource Council v. Espy*, 846 F. Supp. 1009, 1015 (D.D.C. 1994); *see also* U.S. Const. art. II, § 2.

[2] The Court should reject LDF's request for discovery to verify Defendants' evidence with respect to the Commission's costs.  Defendants have submitted a sworn declaration from Mr. Kueter, the Commission's Executive Director, to substantiate those costs, and it would be mere speculation to suggest that Mr. Kueter's testimony is inaccurate.  *See Onafeko v. U.S. Dep't of Homeland Security*, Case No. 19-cv-0007 (CRC), 2020 WL 2770016, at *3 (D.D.C. May 28, 2020) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991))).  Moreover, any such discovery would be unnecessary, as LDF cannot seriously question Mr. Kueter's testimony, much of which is already corroborated by the information—such as hearing dates and transcripts—

5

LDF's only response is to say that the Commission could rely on the work product that it has already generated if it is reconstituted to comply with FACA's fair balance requirement.  Pl.'s Remedies Mem. at 11.  But the Attorney General created the Commission under the terms specified by the President's October 28, 2019 Executive Order, which contemplates that only "officers or employees of the Federal Government" and "elected officers of State, local, and tribal governments (or their designated employees with authority to act on their behalf)" will serve on the Commission in their official capacities.  84 Fed. Reg. at 58,595.  It also contemplates completion of the Commission's work by the end of October.  Defendants could not, therefore, consistent with the terms of the Executive Order, reconstitute the Commission to include non-government officials, as LDF suggests.

Further, even if the Executive Order allowed Defendants to reconstitute the Commission with a different composition to include, for example, members of community organizations, a use injunction prohibiting Defendants from publishing the Commission's report would still result in tremendous waste and duplication of effort.  That report is nearly complete and would require a mere week's worth of effort to finalize.  *See* Third Kueter Decl. ¶ 11.  LDF would have the Commission essentially start from scratch with new or different members and "conduct new hearings," Pl.'s Proposed Remedial Order at 4, even though the Commission has already held 14 different hearings and 51 panel discussions and heard from 181 witnesses, resulting in the expenditure of over $4 million in federal funds.  Clearly, it would not serve "'FACA's aim to reduce wasteful expenditures'" to stifle the use or publication of the Commission's nearly finished work.  *NRDC*, 147 F.3d at 1025 (quoting *Cal. Forestry*, 102 F.3d at 614).  That is particularly true

---

available on the Department's website.  *See* U.S. Dep't of Justice, Presidential Commission on Law Enforcement and the Administration of Justice, https://www.justicegov/ag/presidential-commission-law-enforcement-and-administration-justice.

6

given that the Commission's membership has been publicly known from the beginning, its hearings have all been open to the press, many civil rights groups and other organizations and individuals have shared their views, and the Commission's hearing summaries and transcripts have been made available on the Department's public-facing website, which undercuts any plausible claim that public accountability requires a use injunction.  *See* Defs.' Remedies Mem. at 7; *see also, e.g.*, Transcript of May 28, 2020 Commission Hearing (illustrating community participation on the subject of civil rights), https://www. justice. gov/ag/page/file/1284141/download.

## II. THE COMMISSION'S WORK IS ESSENTIALLY COMPLETE, AND NO PURPOSE WOULD BE SERVED BY REQUIRING DEFENDANTS TO COMPLY WITH FACA'S PROCEDURAL REQUIREMENTS.

As Defendants explained in their opening brief, given the passage of time and the late stage of the Commission's existence, there would be no practical purpose served by requiring Defendants to comply with FACA's requirement to file a charter, to provide notices of public meetings, or to appoint a designated federal official.  *See* Def.'s Remedies Mem. at 11.  The Commission is a mere week away from completing its report, and the Commission's meetings have all concluded.  *See id.*  Defendants respectfully ask the Court to allow the Commission to take the necessary ministerial steps to finalize its report and transmit it to the Attorney General, after which the Commission will have no further purpose and will terminate.  *See* 84 Fed. Reg. at 58,597.

LDF also now requests the additional remedy of requiring the Commission to take other steps regarding "Public Transparency and Production of Commission Documents."  Pl.'s Proposed Remedial Order at 3, ECF No. 46.  As noted, many of the Commission's documents, including hearing summaries and transcripts, have already been made public.  Moreover, under Section 10(b) of FACA, materials prepared or relied on by an advisory committee need not be disclosed to the public to the extent they are covered by an exemption from the Freedom of Information Act.  *See*

7

5 U.S.C. app. 2 § 10(b); *Physicians Comm. for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000). If the Court were to order such relief, Defendants respectfully ask that the Court give Defendants 45 days to determine what information is appropriate for release. Because the Court has only recently determined that the Commission is subject to FACA, Defendants have not yet evaluated which Commission documents are exempt from disclosure.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask that the Court deny LDF's request for a permanent use injunction in this case and to amend its Order to remove the portions requiring the filing of a charter, to provide notices of public meetings, or to appoint a designated federal official.

Dated: October 14, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

JOHN V. COGHLAN
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0878
E-mail: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*