UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., <br><br> Plaintiff, <br> v. <br><br> WILLIAM P. BARR, in his official capacity as Attorney General of the United States, <br><br> UNITED STATES DEPARTMENT OF JUSTICE, an agency of the United States, <br><br> PRESIDENTIAL COMMISSION ON LAW ENFORCEMENT AND THE ADMINISTRATION OF JUSTICE, an advisory committee established and utilized by Attorney General William Barr, <br><br> PHIL KEITH, in his official capacity as Chair of the Presidential Commission on Law Enforcement and the Administration of Justice, and <br><br> KATHARINE SULLIVAN, in her official capacity as Vice Chair of the Presidential Commission on Law Enforcement and the Administration of Justice, <br><br> Defendants. | Civil Action No. 20-1132 (JDB) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' PROPOSED REMEDIAL ORDER**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ............................................................................................................. 1

I.   PLAINTIFF HAS STANDING TO SEEK A USE INJUNCTION................................... 1

II.  PLAINTIFF IS ENTITLED TO A USE INJUNCTION. ..................................................... 3

    A.   Defendants' Alleged Expenses Do Not Counsel Against a Use Injunction.. ......... 4

    B.   Only A Use Injunction Until the Commission Complies with FACA Would
        Remedy Plaintiff's Harms and Ensure Public Accountability.................................5

III. COURT SHOULD NOT MODIFY ITS ORDER. ............................................................8

CONCLUSION....................................................................................................................8

## INTRODUCTION

As this Court has recognized, the Presidential Commission on Law Enforcement and the Administration of Justice ("Commission") is an advisory committee that has violated numerous provisions of the Federal Advisory Committee Act ("FACA"), resulting in a Commission that is completely one-sided and has been shielded from the public oversight required by FACA. Plaintiff brought these FACA violations to Defendants' attention on March 31, 2020, when the Commission was just beginning its work. Defendants did nothing to address them. Yet, Defendants contend that this Court should not provide any injunctive relief to remedy these multiple FACA violations that have fundamentally undermined the Commission's reliability and accountability. Defendants do not even address the Court's direct query as to the appropriate remedy given Plaintiff is entitled to injunctive relief ensuring the Commission has a fairly balanced membership. Dkt. No. 44 at 2.

Defendants' extreme position cannot stand. The time to litigate whether Defendants must comply with FACA has passed, and the Court has determined that "until the requirements of FACA have been satisfied, defendants shall not submit, accept, publish, employ, or rely upon any report or recommendations produced by the Commission." Dkt. No. 44 at 2. Instead of proposing concrete steps that would allow the Commission to satisfy FACA, Defendants seek to continue operating in contravention. The injuries these violations have caused, and continue to cause, Plaintiff can be remedied through an injunction prohibiting use of Commission recommendations unless and until the Commission fully complies with FACA. *See* Dkt. No. 46. By contrast, Defendants' proposed remedial order would render FACA's protections symbolic.

**I.    PLAINTIFF HAS STANDING TO SEEK A USE INJUNCTION.**

The Commission's operation and imbalance have rendered its work product inaccurate and skewed; one of the Commission's own working group members has already raised flags that the Commission's report seeks only to "provid[e] cover for a predetermined agenda that ignores the

1

lessons of the past, furthering failed tough-on-crime policies."[1] Plaintiff, as an organization with a direct interest in the subject matter of the Commission's work, has been injured by the "likelihood that the results of the study will be inaccurate." *Cargill, Inc. v. United States*, 173 F.3d 323, 330 (5th Cir. 1999). This injury can be remedied by reconstituting the Commission to be fairly balanced and permitting new members to be involved in developing the Commission's report and recommendations, through a process that allows for public oversight and accountability, and by drafting dissents if necessary. Allowing dissemination and use of the report any sooner would violate the new members' "right to fully participate in the work of the committee to which [they] [are] appointed." *Cummock v. Gore*, 180 F.3d 282, 291 (D.C. Cir. 1999).

Defendants rely solely on *Natural Resources Defense Council v. Pena* ("*NRDC*") to argue Plaintiff lacks standing to seek a use injunction. But that case is readily distinguishable. There, the D.C. Circuit expressed doubts that plaintiffs had standing for a use injunction based on injuries related to the exclusion from past meetings, and the Commission's failure to disclose documents, when the use injunction did "not require the disclosure of any Committee documents or records," and when the advisory committee "ha[d] been dissolved and w[ould] no longer meet, deliberate or generate documents or records." 147 F.3d 1012, 1021 (D.C. Cir. 1998). Here, Plaintiff does seek the disclosure of documents and records as part of its request. *See* Dkt. No. 46-1. And, "the Commission has not yet been terminated, and the report based on [the Commission's] work has not yet been submitted to the President." Dkt. No. 45 at 18. In fact, the report has yet to be submitted to the Attorney General. Dkt. No. 47 at 2.

---

[1] Christine Carrega, *Prosecutor resigns from Trump law enforcement commission, calls it 'intent on providing cover for a predetermined agenda'*, CNN (Sept. 11, 2020), https://edition.cnn.com/2020/09/11/politics/john-choi-resigns-trump-law-enforcement-commission/index.html.

Thus, this case presents a situation much more like *Public Citizen v. Department of Justice*, where the Supreme Court held that plaintiffs had standing to seek injunctive relief. 491 U.S. 440, 450 (1989). As the *NRDC* court noted, the *Public Citizen* plaintiffs had standing because "plaintiffs did not seek to enjoin the Justice Department from using the ABA Committee's work product; rather, they sought to enjoin it from 'utilizing the ABA Committee as an advisory committee *until it complied* with FACA.'" *NRDC*, 147 F.3d at 1020 (quoting *Pub. Citizen*, 491 U.S. at 447)) (emphasis in original). That is precisely what Plaintiff is seeking here.

Finally, in *NRDC*, plaintiffs did not assert an injury from the "likelihood that the results of the study will be inaccurate." *Cargill*, 173 F.3d at 330. Here, Plaintiff has suffered this precise harm. Because civil rights organizations, like LDF, are not represented on the Commission, Dkt. No. 45 at 41, there is an increased likelihood that its recommendations will be inaccurate. Defendants argue that declaratory judgment provides Plaintiff "ammunition" to undermine the Commission's inaccurate findings, thus redressing LDF's injury. *See* Dkt. No. 47 at 10. However, as described below, declaratory judgment is inadequate to address the Commission's unreliable recommendations that result from its FACA violations and injunctive relief is warranted.

## II.     PLAINTIFF IS ENTITLED TO A USE INJUNCTION.

The scale and duration of Defendants' FACA violations warrant entry of a use injunction unless and until they comply with FACA. Defendants' contrary arguments are unavailing. *First*, Plaintiff promptly notified the Commission of its violations and sought relief from the Court. *Second*, the vast majority of Defendants' expenses were incurred after they were notified of their illegal conduct. *Last*, the government's purported alternative methods for public access do not remedy the lack of meaningful opportunity for public participation throughout this process.

### A.       Defendants' Alleged Expenses Do Not Counsel Against a Use Injunction.

Plaintiff's proposed injunction takes into consideration that the Commission has met and received testimony; it seeks an injunction on the use of the Commission's work product *until* it complies with FACA. After the Commission is fairly balanced, the new members could use much, if not all, of the work product created and evidence gathered by the current, illegitimate Commission. *See* Dkt. No. 46 at 11. Thus, any waste would be minimal.

Defendants emphasize that the Commission has held "14 different hearings," "51 panel discussions," and heard testimony from 181 "third-party witnesses," at a total cost of approximately $4 million.[2] Dkt. No. 47 at 7. But all of this testimony can be considered by the new Commissioners. Moreover, this only underscores the extent of the FACA violations—by holding dozens of closed hearings, Defendants wholly disregarded FACA. There is no plausible interpretation of UMRA that would cover a committee which allowed the participation of 181 third parties. Further, it is unclear whether these expenses were actually necessary for the report. Annotated outlines of the Commission's report were complete in April—before the majority of the Commission's hearings were even conducted, creating uncertainty as to how much of the Commission's expenditures were necessary for its report and recommendations. Dkt. No. 40-9 (noting April 17 deadline for annotated outline), Dkt. No. 40-10 (circulating annotated outline, with recommendations, on April 15, 2020). Allowing the Commission to rely on these expenses to avoid complying with FACA would run afoul of FACA's main purpose—to avoid "wasteful expenditure of public funds for *worthless committee meetings and biased proposals*." *Pub. Citizen*, 491 U.S. at 453 (emphasis added).

---

[2] The Commission's costs do not weigh against injunctive relief. Should the Court find the costs relevant, however, Plaintiff respectfully requests discovery on this issue. Mr. Kueter has not provided any supporting documentation for his estimations. In light of inaccuracies in his previous declaration, *see* Dkt. No. 40, such discovery is warranted.

4

Additionally, the government incurred the majority of its expenses *after* Plaintiff notified the Commission of its FACA violations. Defendants do not assert that the Commission was fully staffed before Plaintiff sent its letter in March identifying the Commission's FACA violations or prior to Plaintiff filing this lawsuit in April. Dkt. No. 47-1 ¶ 9 (noting that Commission was staffed "[b]y May 28, 2020"). Defendants should not be permitted to argue against injunctive relief by pointing to their decision to continue expending resources after they had clear notice of their FACA violations, from both Plaintiff and its own working group members.

Contrary to Defendants' remarkable argument, Plaintiff did not delay in seeking relief. Unlike the *NRDC* plaintiffs, who did not file their complaint until two months after the completion of committee meetings, 147 F.3d at 1015, Plaintiff informed Defendants of their FACA violations on March 31, when the Commission was beginning its work. This was just one month after the Commission's first closed door meeting, when the scope of the violations became apparent. When the Commission responded on April 14 without addressing Plaintiff's concerns, Plaintiff promptly filed this lawsuit two weeks later. And Plaintiff sought expedited resolution of this case by seeking pre-answer summary judgment (foregoing discovery on Plaintiff's inappropriate influence claim), prior to the Commission completing its hearings or submitting recommendations.

## B. Only A Use Injunction Until the Commission Complies with FACA Would Remedy Plaintiff's Harms and Ensure Public Accountability.

This Commission "has violated FACA's transparency and public access requirements by holding closed hearings without timely notice in the Federal Register." Dkt. No. 45 at 40. Defendants claim, nevertheless, that injunctive relief is not warranted because they took alternative steps to engage the public, relying on *California Forest Association v. United States Forest Service*, 102 F.3d 609 (D.C. Cir. 1996) ("*CFA*"). But they misread *CFA*. There, the D.C. Circuit questioned the need for a use injunction where the advisory committee had held several meetings

5

open to the public, and the plaintiff had been allowed to participate in a "key contacts group" that reviewed the committee's work. *Id.* at 614. The Commission has taken no comparable steps; the alternatives Defendants discuss, such as press coverage and third party testimony, reflect a fundamental misapprehension of the kind of transparency and public access required by FACA.

First, Defendants' "alternative" mechanisms for public oversight only serve to underscore the scope of the FACA violations here. Despite stating that the Commission has held 51 panels, Dkt. No. 47-1 ¶ 3, the Commission's website lists only 42 days of hearings.[3] The website contains no reference to the *nine* other panels the Commission has held. Nor is any information concerning the working groups' 275 meetings made available to the public. Dkt. No. 47-1 ¶ 7. Second, the written comment process was riddled with procedural irregularities—including an unexplained and unannounced two-month shortening of the deadline for submission of comments, which necessarily limited interested parties' abilities to submit materials. Dkt. No. 45 at 8. And, the public comment window ended well before the vast majority of Commission hearings were announced or held, preventing those who submitted letters—including Plaintiff—from suitably responding.

Nor is the presence of media and the skewed Commission's hand-picked participants at hearings an appropriate substitute for meaningful stakeholder participation. FACA is concerned with keeping *all* members of the public notified of and able to participate in committee meetings, not simply those personally selected and invited by the committee itself.

The cases in which courts have found that meaningful opportunities for public input weighed against a use injunction involved more minor FACA violations, and much more rigorous opportunities for public input. In *NRDC*, for example, the D.C. Circuit cautioned against a use

---

[3] *Hearings*, U.S. Dep't of Justice, https://www.justice.gov/ag/presidential-commission-law-enforcement-and-administration-justice/hearings (last visited Oct. 14, 2020).

injunction where an advisory committee held certain meetings in private, but "[w]hen appropriate, . . . allotted meeting time to members of the public [including plaintiffs themselves] to present their views." 147 F.3d at 1015. Here, by contrast, Plaintiff has had *no* opportunity to engage with the substance of the Commission's work, including the testimony and other evidence adduced at hearings, or respond to the proposals the Commission considered.

Defendants' proposal of either a limited use injunction or declaratory relief alone would not be adequate remedies given the sheer breadth of Defendants' FACA violations and Plaintiff's representational and informational injuries. This is not a case of a one-off violation. The Commission has been operating with no diverse viewpoints deciding the appropriate recommendations, no transparency and no oversight. Far less egregious violations have supported use injunctions. *See, e.g.*, *W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227, 1243–44 (D. Mont. 2019) (entering use injunction for failure to file charter, even absent a finding that public had been shut out from participation in committee's work); *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 566 F. Supp. 1515, 1517 (D.D.C. 1983) (enjoining government from relying on recommendations of an imbalanced committee, even absent evidence of violation of transparency and access provisions of FACA). A use injunction is also a proper remedy here given that the Commission's report has not yet been finalized, and the Commission therefore still has an opportunity to cure its FACA violations and consider prior testimony. Further, at least some of the Commission's recommendations may be implemented without any further opportunities for public comment, limiting the value of a declaratory judgment.

Defendants' separation-of-powers and First Amendment concerns are misplaced. Nothing about the injunction Plaintiff seeks prevents anyone from speaking, nor does it prevent the President or the Attorney General from seeking input in making policy decisions related to law

7

enforcement. However, if the President and the Attorney General want to cloak those policy decisions in the "political legitimacy" conferred by recommendations from an advisory committee, Congress has determined, they must comply with FACA. *Assoc. of Amer. Physicians and Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir.1993).

### III.   COURT SHOULD NOT MODIFY ITS ORDER.

Defendants ask this Court to "modify" its grant of mandamus relief to allow the Commission to complete its work without complying with FACA.[4] But the only authority they point to for such relief addresses the unavailability of certain forms of injunctive relief "when the relevant advisory committee ceases to exist," Dkt. No. 47 at 11 (quoting *Ctr. For Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 223 (D.D.C. 2017)). Here, there is no dispute that the Commission remains operational. Dkt. No. 45 at 18–19; *see also* Dkt. No. 47-1 ¶¶ 10–11. While the Commission's hearings may have concluded, *id.* ¶ 11, it may continue to meet apart from its hearings—as it has done previously. *See, e.g.*, Dkt. No. 40-10 (scheduling call to discuss draft recommendations). Even at that time, the Commission can exist up to an additional 90-day and longer if extended by the president. Dkt. No. 45 at 18–19. All of its remaining work must be conducted in accordance with the law—including by providing timely notice of meetings, holding any such meetings open to the public, and making Commission documents available for public inspection. This is especially true in light of Plaintiff's proposed remedy requiring new Commission members be given the opportunity to conduct hearings and engage in fact finding.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court reject Defendants proposed order.

---

[4] In essence, Defendants seek reconsideration of the Court's order. However, this remedial briefing is the improper vehicle and Defendants' request does not satisfy Fed. R. Civ. P. Rules 59 or 60.

Dated: October 14, 2020

Respectfully submitted,

/s/ Natasha C. Merle
Samuel Spital, Bar No. SS4839
Natasha C. Merle*
Ashok Chandran*
Steven Lance*
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
40 Rector St., 5th Floor
New York, NY 10006
Tel.: (212) 965-2200
Fax.: (212) 226-7592
sspital@naacpldf.org
nmerle@naacpldf.org
achandran@naacpldf.org
slance@naacpldf.org

*admitted *pro hac vice*