## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., | |
| Plaintiff, | |
| v. | Civil Action No.  20-1132 (JDB) |
| WILLIAM P. BARR, in his official capacity as Attorney General of the United States, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

This Court recently granted plaintiff NAACP Legal Defense and Educational Fund's ("LDF") motion for summary judgment on several of its claims that defendants violated the Federal Advisory Committee Act ("FACA") in forming and operating the Presidential Commission on Law Enforcement and the Administration of Justice ("Commission"). The Court must now determine the appropriate remedy. Upon consideration of the parties' proposals, and for the reasons set forth below, the Court will prohibit defendants from releasing the Commission's report unless they first comply with FACA; or alternatively, if they do not, they must include a clear statement in the report that the Commission violated FACA and attach the Court's remedial order.

### Background

The Court will assume familiarity with the basic facts and procedural history of this case, which were summarized at length in the Court's prior opinion and order granting LDF's motion for summary judgment. See Oct. 1, 2020 Mem. Op. ("Oct. 1 Op.") [ECF No. 45] at 3–10; Oct. 1, 2020 Order ("Oct. 1 Order") [ECF No. 44]. The Court held that the Commission is subject to

1

FACA and that defendants violated FACA by failing to (1) ensure fairly balanced membership of the Commission, (2) file a charter with the required entities, (3) appoint a designated federal officer, and (4) provide timely notice of meetings in the Federal Register.  See Oct. 1 Op. at 30, 40–42.

Consequently, the Court issued a declaratory judgment, ordered the Commission to file a charter and provide timely notice of future meetings in the Federal Register, and ordered the Attorney General to select a designated federal officer for the Commission.  See Oct. 1 Order.  The Court also concluded that LDF is entitled to injunctive relief to ensure that the Commission has a fairly balanced membership, and thus ordered the parties to submit proposed remedial orders for the precise content of that injunction and any other appropriate relief.  Id.  And the Court ordered that, until the requirements of FACA are satisfied, the Commission shall halt proceedings and defendants shall not submit, publish, or rely on any Commission work product.  Id.  The parties have now submitted competing proposed remedial orders, which are fully briefed and ripe for consideration.

## Analysis

The parties propose drastically divergent remedies.  LDF proposes that the Court permanently enjoin defendants from releasing or using the Commission's recommendations until the Commission complies with FACA—in other words, a complete "use injunction."  See Pl.'s Proposed Remedial Order ("Pl.'s Order") [ECF No. 46-1].  This injunction, LDF explains, would require the Commission to "restart its inquiry afresh with a newly constituted membership," release all records, and allow new Commission members to review all previous materials and communications, solicit new materials, and fully participate in drafting recommendations.  See Mem. of Law in Supp. of Pl.'s Proposed Remedial Order ("Pl.'s Br.") [ECF No. 46] at 2–3, 6; Pl.'s Order.  In contrast, the government asks the Court to deny LDF's request for a use injunction and amend the previous order

to excuse defendants from complying with FACA, leaving in place only a declaratory judgment.  See Defs.' Proposed Remedial Order ("Defs.' Order") [ECF No. 47-2]; Defs.' Mem. on Remedies ("Defs.' Br.") [ECF No. 47] at 1–2.

## I.      Standing

As an initial matter, the government contends that LDF lacks standing to obtain a use injunction because such an injunction would not redress LDF's injuries.  See Defs.' Br. at 3–5. The Court concludes that LDF at least has standing to obtain a limited use injunction requiring that, if defendants release the Commission's recommendations without complying with FACA, the report must include a statement that the Commission violated FACA.[1]

Constitutional standing requires that "the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits."  Humane Soc'y of the U.S. v. Vilsack, 797 F.3d 4, 8 (D.C. Cir. 2015); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  The Court has already determined that LDF's injuries are redressable by mandamus and injunctive relief requiring defendants to comply with FACA and by declaratory relief.  See Oct. 1 Op. at 13–20.  But LDF must have "standing separately for each form of relief sought."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

The D.C. Circuit addressed standing for use injunctions to remedy FACA violations in Natural Resources Defense Council v. Pena, 147 F.3d 1012 (D.C. Cir. 1998), where the district court had issued a use injunction wholly prohibiting the agency from using a committee's report,

---

[1] Indeed, the government does not really challenge LDF's standing to obtain a limited use injunction, instead contending that LDF lacks standing to obtain "a permanent injunction banning the use of the Commission's work product."  See Defs.' Br. at 4.  Because the Court finds that only a limited use injunction is appropriate in this case, the Court need not decide whether LDF has standing to obtain a complete use injunction prohibiting any release or use of the current Commission's work product.

id. at 1014.  The D.C. Circuit remanded because the committee had been dissolved and plaintiff had not shown that the injunction would redress its injuries—exclusion from past meetings and denial of access to committee records.  Id. at 1020–24.  And the court rejected plaintiff's argument that "the punitive consequences of the injunctive order suffice to establish that the order redresses the [agency's] past FACA transgressions."  Id. at 1022.

Here, unlike in Pena, the Commission has not been dissolved.  Thus, LDF's injuries— denial of access to information and a representative voice on the Commission—can be redressed if defendants take the steps necessary to comply with FACA.  See Oct. 1 Op. at 17–19.  But if defendants do not take those steps, enjoining defendants from releasing the report without a disclaimer that the Commission violated FACA will bring LDF some relief.  "The effect of this relief is, in many ways, similar to that of the declaratory relief" the Court has granted because "the disclaimer would give [LDF] 'ammunition' in the arena of public opinion."  Nat. Res. Def. Council v. Abraham, 223 F. Supp. 2d 162, 182–83 (D.D.C. 2002), order set aside in part on other grounds sub nom. Nat. Res. Def. Council v. Dep't of Energy, 353 F.3d 40 (D.C. Cir. 2004); see also Oct. 1 Op. at 19–20.

Defendants' FACA violations caused LDF's injuries, which stem from its inability to influence the Commission's work by scrutinizing the Commission's activities and having access to a representative voice on the Commission.  See Oct. 1 Op. at 17.  Requiring a disclaimer gives LDF some input into the Commission's work by removing the appearance of legitimacy that attaches to advisory committee recommendations.  And this requirement will redress LDF's injuries more effectively than a declaratory judgment alone by ensuring that everyone who views the report is aware that it was produced in violation of FACA, even outside of formal agency proceedings where LDF or others cite the declaratory judgment.  Of course, this limited use

injunction cannot retroactively give LDF access to a representative voice during past Commission meetings.  But LDF will still gain significant relief, and such "gains are undoubtedly sufficient to give [LDF] standing."  See Pub. Citizen v. Dep't of Justice, 491 U.S. 440, 451 (1989).

## II.    Remedies

The Court rejects both LDF's request for a broad use injunction wholly prohibiting any release or use of the current Commission's report and the government's request to order declaratory relief alone.  Instead, the Court will prohibit defendants from releasing the Commission's report unless they either comply with FACA, or instead include a disclaimer in the report stating that the Commission violated FACA in producing the report and attach the Court's remedial order to it.

### A.  **Compliance With FACA**

If defendants want to release the Commission's report without a disclaimer detailing their FACA violations, they must comply with FACA.  As previously ordered, compliance with FACA means the Commission must file a charter and provide timely notice of future meetings in the Federal Register, and the Attorney General must select a designated federal officer for the Commission.  See Oct. 1 Order.  The Attorney General must also take steps necessary to ensure the membership of the Commission is fairly balanced, and that new members can meaningfully participate in the Commission's work.  See Cummock v. Gore, 180 F.3d 282, 291 (D.C. Cir. 1999) (noting that an advisory committee may be "effectively unbalanced" if some members are "precluded from meaningful participation").  The Court is wary, however, of overstepping its role by instructing the Commission on exactly who to appoint as members or precisely how the Commission should facilitate their participation.  Those decisions will be left to the Attorney General and Commission leaders.  LDF also requests that the Court order the Commission to

produce various documents.  See Pl.'s Order at 3.  Because LDF did not seek—and the Court did

not enter—summary judgment on LDF's public records claim, see Oct. 1 Op. at 10, the Court will

deny this request for now.

The Court rejects defendants' request to amend its previous order by removing the portions

requiring the Commission to comply with FACA's requirements to file a charter, provide notice

of meetings, and appoint a designated federal officer.  See Defs.' Br. at 11.  Defendants argue that

because the Commission is only a week away from completing its report and its meetings have

concluded, "no practical purpose" would be served by requiring compliance with FACA.  Id.  The

only authority defendants invoke addresses whether certain FACA claims are mooted "when the

relevant advisory committee ceases to exist."  See Defs.' Br. at 11 (quoting Ctr. for Biological

Diversity v. Tidwell, 239 F. Supp. 3d 213, 223 (D.D.C. 2017)).  But here, the Commission still

exists.  And if defendants want to release the Commission's report without a disclaimer, the

Commission must continue to exist for as long as necessary for the Attorney General to ensure a

fairly balanced membership, for new members to meaningfully participate, and for the

Commission to otherwise comply with FACA.  As the Court previously explained, "[t]his relief

will allow LDF to scrutinize the Commission's activities and will provide access to a

representative voice on the Commission"—and thus clearly serves a practical purpose.  See Oct.

1 Op. at 17–18.

The government's only remaining argument is that the Executive Order "would not allow

Defendants to reconstitute the Commission with non-government officials" or complete work after

October and so the "Commission's meetings and fact-finding are complete and will not resume

with additional or different members."  See Defs.' Reply Mem. on Remedies ("Defs.' Reply")

[ECF No. 50] at 5; Defs.' Resp. Mem. on Remedies ("Defs.' Opp'n") [ECF No. 48] at 6.  But the

Executive Order does not prohibit non-government officials from being Commission members. Rather, it states that "[t]he Attorney General shall determine the composition of . . . the Commission," that Federal Government officers or employees "designated to the Commission shall be full-time, or permanent part-time, officers or employees," and that "[t]he Attorney General may, at his discretion, invite elected officers of State, local, and tribal governments" or their designated employees to serve in their official capacities.  Exec. Order No. 13,896, 84 Fed. Reg. 58,595, § 2(b)–(d) (Oct. 28, 2019).  The Executive Order never says that the Commission must consist exclusively of government officers or employees.  See id.  Even if it did, the Executive Order itself recognizes that it "shall be implemented consistent with applicable law," id. § 6(b), which includes FACA.  See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump, 318 F. Supp. 3d 370, 393 (D.D.C. 2018) ("[T]he President . . . acts in excess of his statutory authority if the orders that he issues conflict with a federal statute."), rev'd on other grounds, 929 F.3d 748 (D.C. Cir. 2019).

Therefore, the Court will not amend its previous order to remove the requirement for the Commission to comply with FACA's procedural requirements.  Defendants may choose not to resume Commission meetings with new members, file a charter, or appoint a designated federal officer, and instead decide to finalize and release the report very soon.  But in that case, as explained below, the report must acknowledge the Commission's FACA violations.

### B.  Limited Use Injunction

In the event that defendants do not bring the Commission into compliance with FACA, any version of the Commission's report or recommendations that is published or otherwise disseminated must include a clear statement that the Commission violated FACA, and must attach the Court's remedial order.  As LDF itself acknowledges, the President and Attorney General may make policy decisions related to law enforcement without reliance on an advisory committee.  See Pl.'s Mem. of Law in Opp'n to Defs.' Proposed Remedial Order ("Pl.'s Opp'n") [ECF No. 49] at

7–8.  But invoking advisory committee recommendations lends "political legitimacy" to those decisions.  See id.; see also Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton, 997 F.2d 898, 914 (D.C. Cir. 1993) ("Advisory committees are not just mechanisms for transmitting policy advice on a particular subject matter to the government.  These committees also possess a kind of political legitimacy as representative bodies.").  When the executive branch "seeks to promote the policy course suggested by the committee, the executive branch draws upon the committee's political legitimacy."  Clinton, 997 F.2d at 914.  A conspicuous disclaimer on the Commission's report will qualify that legitimacy by ensuring that everyone who views the report learns it was produced unlawfully by a non-representative body.  And such a limited use injunction is not new to this District.  See Abraham, 223 F. Supp. 2d at 182–83.

The Court rejects LDF's argument that a limited use injunction is not "sufficient for LDF to challenge the Commission's recommendations in the public forum."  Pl.'s Reply in Supp. of Pl.'s Proposed Remedial Order ("Pl.'s Reply") [ECF No. 51] at 4.  First, LDF argues that "the Commission has additional work to complete, during which a declaratory judgment or limited use injunction will not allow [LDF] to challenge its ongoing illegal operations."  Id.  But the Commission is only one week's worth of ministerial work away from finalizing its report.  See Defs.' Br. at 2.  Moreover, LDF can still pursue the claims for which it has not yet sought summary judgment and can use defendants' decision to complete the report—despite being fully aware it was produced in violation of FACA—as further ammunition to challenge the Commission's work or any reliance on it.  Second, LDF contends that a complete use injunction is required here because, without one, some of the Commission's recommendations "can be implemented without public input"—and so LDF will have no opportunity to challenge them.  Pl.'s Reply at 4.  But even if there is no formal opportunity for public comment, LDF can still attack those recommendations

8

in the "arena of public opinion," Abraham, 223 F. Supp. 2d at 183, and the disclaimer will still diminish their legitimacy.  Finally, even if LDF were correct that a disclaimer requirement is insufficient, that would not justify a complete use injunction.  As the D.C. Circuit has stated, "[w]hile denying a use injunction may leave a plaintiff without an effective remedy, that circumstance cannot determine the plaintiff's ultimate entitlement to the relief."  Pena, 147 F.3d at 1026.

### C.  Complete Use Injunction

The Court will deny LDF's request for a use injunction that completely prohibits defendants from releasing or using any report produced by the unlawfully constituted Commission. "Because of its First Amendment implications, punitive effect and likely standing complications, a use injunction should be the remedy of last resort."  Id. at 1025.  In the FACA context, courts should be especially wary of use injunctions when, as here, a committee's report is prepared for the President, because "forbid[ding] the President and his Cabinet to act upon advice that comes to them from any source, however irregular" may represent an "affront" to the "separation-of-powers principle."  Nw. Forest Res. Council v. Espy, 846 F. Supp. 1009, 1015 (D.D.C. 1994).  Yet although a use injunction "should be awarded only rarely," it might be appropriate if "denial of a use injunction would 'render FACA a nullity.'"  See Pena, 147 F.3d at 1025 (quoting Cal. Forestry Ass'n v. U.S. Forest Serv., 102 F.3d 609, 614 (D.C. Cir. 1996)).  Courts "should also consider whether FACA's principal purposes—(1) avoidance of wasteful expenditures and (2) public accountability—will be served by granting a use injunction."  Id. at 1026.

Here, a complete use injunction is unwarranted.  First, as explained above, the Court's declaratory judgment and disclaimer requirement will provide significant relief.  Thus, denying LDF's proposed injunction will not "render FACA a nullity."  See id. at 1025.

Second, a use injunction would be wasteful.  The Commission's work "has already consumed millions of dollars"—over $4 million—which weighs heavily against a use injunction. See Cal. Forestry, 102 F.3d at 614; Defs.' Reply at 4.  And use injunctions granted where "a committee has completed its meetings and is in the process of wrapping up its affairs will likely produce waste."  See Pena, 147 F.3d at 1026.  Here, the Commission needs only a week's worth of ministerial work to finalize its report.  See Defs.' Br. at 2.  Although LDF did not unduly delay bringing suit in the first place, it never sought emergency injunctive relief and only asked for a decision by the end of October, at which time it knew the Commission's work would be nearly complete.  Moreover, LDF proposed that remedies briefing occur only after a ruling on the merits. As the government persuasively argues, "[h]ad LDF wanted to halt the Commission's work and diligently pursued its claims, it could have moved for emergency equitable relief—which, if granted, would have been immediately appealable.  But LDF simply chose not to do so."  See Defs.' Reply at 4.

LDF argues that "any waste would be minimal," Pl.'s Opp'n at 4, because a newly constituted Commission could use the old work product and evidence.  True enough.  But still, LDF wants the Commission to "restart its inquiry afresh with a newly constituted membership."  See Pl.'s Br. at 2.  Surely, a fresh inquiry would be costly, even if the old materials are not completely wasted.  Moreover, LDF never explains how a use injunction would avoid wasteful expenditures if the Commission is disbanded instead of reconstituted.

Third, a use injunction is not necessary to serve FACA's purpose of public accountability. The "public accountability inquiry should focus on the actual deprivation resulting from non-compliance."  Pena, 147 F.3d at 1026.  In other words, "[t]he need for injunctive relief may be reduced where . . . there has been at least some attempt to ensure public accountability."  Cal. Forestry, 102 F.3d at 614.  For instance, "[s]ubstantial efforts to include members of the interested

public in at least some committee meetings . . . counsel against a use injunction." Pena, 147 F.3d at 1026.   The Commission certainly has not met FACA's transparency and fair balance requirements, as this Court has firmly concluded.   But its membership has been public from the beginning, nearly all of its hearings were attended by the press, and hearing summaries and transcripts have been made available on the Commission's public website.   See Defs.' Br. at 7. Further, the Commission solicited public comments (though its process was imperfect, see Oct. 1 Op. at 8) and invited a wide array of organization to participate in its hearings, including the American Civil Liberties Union, the Brennan Center, and the Anti-Defamation League.   See Defs.' Br. at 8.

Finally, LDF seeks to enjoin defendants not only from using the Commission's report to make policy decisions, but from publishing it in the first place.   Such a remedy raises heightened First Amendment concerns.   Even the district court in Pena, which the D.C. Circuit held had understated the requirements for a use injunction, declined to enjoin the publication of the committee's final report out of concern for "the Committee members' First Amendment rights." See Pena, 147 F.3d at 1016 (citing Nat. Res. Def. Council v. Curtis, No. 97-0308 (D.D.C. Mar. 5, 1997) (order granting preliminary use injunction)).   To be sure, the Court does not conclude that prohibiting publication of a report is never an appropriate remedy for FACA violations.   But here, serious First Amendment concerns combined with other factors counsel against enjoining publication.

Therefore, the Court declines to wholly enjoin release or use of the Commission's report. Instead, requiring compliance with FACA or, alternatively, a limited use injunction based on inclusion of a disclaimer in the Commission's report will adequately redress the injuries here.

## **<u>Conclusion</u>**

For these reasons, the Court will prohibit defendants from releasing the Commission's report unless they comply with FACA or, alternatively, include a disclaimer in the report that the Commission violated FACA and attach the Court's remedial order.  A separate remedial order has been issued on this date.

/s/
_____
JOHN D. BATES
Senior United States District Judge

Dated: <u>November 2, 2020</u>