**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COLUMBIA**

| | |
|---|---|
| NATIONAL LEGAL DEFENSE & EDUCATIONAL FUND, INC., )<br><br>*Plaintiff*, )<br><br>v. )<br><br>WILLIAM F. BARR, in his official capacity as Attorney General of the United States, *et al.*, )<br><br>*Defendants.* ) | Case No. 1:20-cv-1132-JDB |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' RENEWED PARTIAL MOTION TO DISMISS**

## INTRODUCTION

Defendants respectfully ask that the Court dismiss, for lack of standing, LDF's remaining claim under Section 5(b)(3) of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 § 5(b)(3), in Count I of the Amended Complaint.  If the Court were to find standing, which it should not, it should enter judgment on that claim based on Defendants' acknowledgment that the Presidential and agency documents establishing the Commission did not "contain appropriate provisions to assure" that the advice and recommendations of the Commission would not be inappropriately influenced by the appointing authority or by any special interest.  5 U.S.C. app. 2 § 5(b)(3), (c).  Alternatively, proceedings on that claim should be stayed pending Defendants' compliance with this Court's order to produce the documents that are subject to disclosure under Section 10(b) of the FACA.  In no event should the Court allow discovery of documents that are not subject to disclosure under Section 10(b) itself.

As to standing, LDF has not alleged facts sufficient to establish a non-hypothetical, concrete injury based on a violation of Section 5(b)(3).  The Court has already granted LDF relief sufficient to remedy its alleged "representational injury" in the form of a declaratory judgment and a limited "use" injunction requiring the Commission to include a disclaimer when transmitting or citing its report.  That relief, as this Court has determined, is "sufficient for LDF to challenge the Commission's recommendations in the public forum."  Mem. Op. at 8, ECF No. 54. ("Nov. 2. Mem. Op.").  Section 5(b)(3), moreover, does not implicate the question of what interests are represented on the Commission at all; rather, it requires that an advisory committee be set up with "appropriate provisions" to guard against inappropriate influence.  Any harm that LDF may suffer from the lack of such provisions or any resulting "inappropriate" influence over the Commission is speculative rather than concrete.

If the Court nevertheless determines that LDF has standing to pursue its Section 5(b)(3) claim, the Court should simply enter judgment for LDF on that claim. Defendants—which did not believe the Commission was subject to FACA in the first instance—acknowledge that the Presidential and agency documents establishing the Commission did not "contain appropriate provisions to assure" that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest as provided by Sections 5(b)(3) and (c) of the FACA. Indeed, the absence of such provisions is clear on the face of the formative documents.

If the Court does not dismiss LDF's claim under Section 5(b)(3) for lack of standing or resolve that claim based on the existing record, proceedings should be stayed pending Defendants' compliance with this Court's order to disclose documents as required by Section 10(b). Here, discovery would be especially unwarranted because this Court has already ruled that the Commission was subject to the FACA and ordered Defendants to disclose documents pursuant to Section 10(b).

## BACKGROUND

On October 28, 2019, the President signed an Executive Order directing the Attorney General to establish the Commission. *See* Executive Order 13896, 84 Fed. Reg. 58,595 (Nov. 1, 2019). The Executive Order instructed the Attorney General to determine the composition of and procedures for the functioning of the Commission; however, it set explicit requirements for whom the Attorney General may appoint, which tracked the types of officials covered in the first prong of the Unfunded Mandates Reform Act ("UMRA") exemption to FACA. *Id.* at 58,595; 2 U.S.C. § 1534(c)(1). Specifically, the Executive Order instructed that "[o]fficers or employees of the Federal Government designated to the Commission shall be full-time, or permanent part-time,

officers or employees of the Federal Government." *Id.*  In addition, the Executive Order permitted the Attorney General, "at his discretion" to "invite elected officers of State, local, and tribal governments (or their designated employees with statutory authority to act on their behalf) to serve on the Commission in their official capacities." *Id.*

Consistent with the terms of the Executive Order, the Attorney General established the Commission on January 21, 2020.  *See* Memorandum from the Attorney General, The Commission on Law Enforcement and the Administration of Justice (Jan. 21, 2020), ECF No. 33-2.  The Attorney General instructed the Commission's Chair to submit the Commission's report, "which shall consist of a summary of the Commission's actions to investigate the issues identified, an analysis of the information received by the Commission, and the recommendations of the Commissioners," "[n]o later than October 28, 2020."  *Id.* at 6.  The Executive Order directed that, within sixty days of receiving the Chair's report, the Attorney General would submit a report and recommendations to the President, following consultation with the Director of the Office of Management and Budget.  84 Fed. Reg. at 58,597.

LDF filed this action on April 30, 2020.  *See* Compl., ECF No. 1.  Count I of LDF's Amended Complaint alleged that the Commission violated FACA Section 5(b)(2), which requires that the membership of an advisory committee "be fairly balanced in terms of the points of view represented and the functions to be performed," 5 U.S.C. app. 2 § 5(b)(2), and Section 5(b)(3), which requires that legislation or executive branch documents establishing advisory committees "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but instead will be the result of the advisory committee's independent judgment," *id.* § 5(b)(3); *see also id.* § 5(c).  Count II alleged that the Commission failed to file a charter in

violation of Section 9(c).  Count III alleged that the Commission had not made its hearings open to the public as required by Section10(a)(1), published timely notice of each meeting in the Federal Register as required by Section 10(a)(2), or made its records available for public inspection as required by Section 10(b).  Count IV incorporated LDF's fair balance and public records claims against the Attorney General and DOJ, respectively, and also alleged that the Attorney General failed to appoint a designated federal officer for the Commission in violation of Section 10(e).  And Count V alleged that LDF was entitled to a declaration of all the foregoing.  *See* Am. Compl. ¶¶ 172–216, ECF No. 26.

As for remedies, LDF sought a declaration that (1) the Commission is an advisory committee subject to the requirements of FACA, (2) Defendants have violated FACA, and (3) the Commission "is not properly constituted and that any report or recommendation does not reflect the views of a lawfully constituted advisory committee."  *Id.*, Prayer for Relief.  LDF also asked the Court to enjoin Commissioners Keith and Sullivan and the Commission, and all of its working groups, "from holding further meetings, sessions, or hearings, or conducting any official business whatsoever on behalf of the Commission."  *Id.*  LDF further sought an injunction against Attorney General Barr, the Department of Justice, and the Commission "from submitting, accepting, publishing employing, or relying upon any report or recommendations produced by the [Commission] for any official purpose whatsoever, directly or indirectly."  *Id.*

LDF moved for summary judgment on May 28, 2020 on its claims that Defendants violated FACA by failing to (1) ensure fairly balanced membership of the Commission, (2) file a charter with the required entities, (3) appoint a designated federal officer, and (4) provide timely notice of meetings in the Federal Register.  *See* Mem. of Law in Supp. of Pl.'s Mot. for Summ. J., ECF No. 25.  LDF did not move for summary judgment on its claims under FACA Section 5(b)(3) or Section

4

10(b). Defendants opposed LDF's motion and cross moved to dismiss and/or for summary judgment. *See* Mem. of Law in Supp. of Defs.' MTD and/or MSJ, ECF No. 33-1.

On October 1, 2020, the Court granted LDF's motion and denied Defendants' motion. The Court concluded that LDF had standing to pursue its claims under Section 5(b)(2), Section 9(c), and Section 10(e), and that LDF's claims under Section 5(b)(2) and Section 5(b)(3) are justiciable. Mem. Op. at 13–29, ECF No. 45 ("Oct. 1 Mem. Op."). The Court also determined that the Commission did not fall within UMRA's exemption to FACA. *Id.* at 29–39. Accordingly, the Court declared that the Commission violated FACA by failing to file a charter with the necessary entities, and by failing to provide timely notice of each meeting in the Federal Register, and that the Attorney General violated FACA by failing to select a designated federal officer for the Commission, and by failing to ensure the Commission's membership is fairly balanced in terms of the points of view represented and the functions to be performed. Order at 3, ECF No. 44 ("Oct. 1. Order"). The Court also issued writs of mandamus directing the Commission and its officers to file a charter and directing the Commission and its officers to provide notice of any future meeting in the Federal Register, and ordered the Attorney General to designate a federal officer for the Commission. *Id.* at 1–2. The Court also preliminarily enjoined the Commission from holding "further meetings, sessions, or hearings, or [from] conducting any official business," and from submitting, accepting, publishing, or relying upon any report or recommendations produced by the Commission. *Id.* at 2–3.

The Court declined, however, to permanently enjoin the Commission from conducting any business or to permanently enjoin Defendants from "'submitting, accepting, publishing, employing, or relying upon any report or recommendations,'" which would amount to a "use injunction." Oct. 1 Mem. Op. at 43 (quoting Am. Compl., Prayer for Relief ¶¶ d–e). The Court

directed the parties to brief the appropriate remedies, including whether "'denial of a use injunction would render FACA a nullity.'" *Id.* at 44 (quoting *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998)).

After consideration of the parties' remedies briefing, the Court issued a superseding remedial order on November 2, 2020. The Court denied LDF's request for "complete 'use injunction'" that would prohibit Defendants from releasing or using the Commission's recommendations until the Commission complies with FACA. Nov. 2 Mem. Op. at 2, 9–11. However, the Court again declared that the Commission was subject to FACA, and that the Commission and the Attorney General had violated the statute. Order at 2, ECF No. 53 ("Nov. 2 Order"). The Court enjoined Defendants from "publishing, releasing, or transmitting any *unrestricted* copy of all, or a portion, of any report produced by the Commission, unless Defendants comply with specified FACA provisions. *Id.* at 2–3. The Court further ordered that, "if defendants publish, release, or transmit any copy of all, or a portion, of the report produced by the Commission (or refer to the Commission's recommendations) . . . without first satisfying the requirements of FACA as detailed" in the order, then defendants must include the following statement (in at least the same size print as the rest of the text) near the beginning of the report or reference:

> Although the Commission which prepared this Report was subject to the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2, a United States District Court judge has found that the Department of Justice ("DOJ") and the Commission's officers violated FACA in forming and operating the Commission. In particular, DOJ and the Commission did not comply with FACA's requirements to ensure the Commission's membership is fairly balanced in terms of the points of view represented, file a charter, select a designated federal officer, or provide timely notice of meetings in the Federal Register. For additional detail, the remedial order of the United States District Court that issued this decision is attached to the Commission's Report.

*Id.* at 3–4.

6

As directed by the Court, the parties submitted a joint status report on November 16, 2020 addressing compliance with the Court's remedial order and proposals for further proceedings concerning LDF's claims that were not resolved on summary judgment—*i.e.*, LDF's claims under Section 5(b)(3) and Section 10(b).  *See* Joint Status Report, ECF No. 55 ("JSR").  On November 25, 2020.  On November 23, 2020, the Court ordered that, "prior to releasing the Commission's report and by not later than November 25, 2020," Defendants release "(1) any records (including transcripts of the June 16, 2020 meeting between Attorney General William P. Barr and the Commission that are covered by 5 U.S.C. app. 2 § 10(b); and (2) the most recent draft of the Commission's report covered by § 10(b)."  Order at 1–2, ECF No. 56.  The Court further ordered that, by December 4, 2020, Defendants shall "(1) make an initial public release of other materials covered by § 10(b); (2) provide plaintiff an estimate of the volume of remaining materials that are subject to disclosure under FACA and a proposed schedule for releasing those materials; and (3) provide plaintiff a description of any categories of documents, including working group documents, that defendants possess but contend are not subject to disclosure under § 10(b)."  Order at 2, ECF No. 56 ("Nov. 23 Order").  The Court also directed the parties to submit a joint status report that details progress toward completing the release of documents, identifies any areas of disagreement regarding what documents are covered by Section 10(b), and includes proposal for resolving any areas of dispute.  *Id.* at 2.

As required by the Court's November 23, 2020 order, Defendants publicly released a draft version of the Commission's report and records of the Commission's June 16, 2020 meeting by posting them on the Department's public-facing website.[1]

---

[1] The Commission's draft report is posted here:  https://www.justice.gov/file/1340216/download.  Materials related to the Commission's June 16, 2020 meeting are posted here:  https://www.justice.gov/ag/presidential-commission-law-enforcement-and-administration-justice.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) requires dismissal where the court lacks subject matter jurisdiction.  The plaintiff bears the burden of establishing that the court has subject matter jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and the plaintiff must establish that jurisdiction exists with respect to each of its claims independently, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351–53 (2006).  Courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotations omitted).  A plaintiff's factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs., Inc.*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citation and internal quotation marks omitted).  In deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction in the case."  *Bank of Am., N.A. v. FDIC*, 908 F. Supp. 2d 60, 76 (D.D.C. 2012) (citation and internal quotation marks omitted).

**ARGUMENT**

**I.     LDF LACKS STANDING TO PURSUE ITS SECTION 5(b)(3) CLAIM.**

The Court should dismiss LDF's claim under FACA Section 5(b)(3) in Count I of the Amended Complaint.  Because LDF has not alleged any injury that is fairly traceable Defendants' non-compliance with Section 5(b)(3)—particularly in light of the remedies already ordered by this Court—LDF's claim pursuant to Section 5(b)(3) is not constitutionally viable.

Under the familiar requirements for constitutional standing, a plaintiff must "state a plausible claim that [it] has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits."  *Humane Soc'y of the U.S. v.*

*Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015).  And in order to have suffered an injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotation marks omitted).  A concrete injury is "direct, real, and palpable— not abstract."  *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007).  A particularized injury is "personal, individual, distinct, and differentiated—not generalized or undifferentiated."  *Id.*  An actual or imminent injury is "certainly impending and immediate—not remote, speculative, conjectural, or hypothetical."  *Id.* at 1293.  And the Supreme Court has recognized that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Defendants recognize, of course, that the Court previously determined that LDF had standing to assert its "imbalanced membership" claim under Section 5(b)(2), even though it was the "closest call" among the claims that the Court evaluated.  *See* Oct. 1. Mem. Op. at 14.  LDF faces a steeper hurdle on its Section 5(b)(3) claim, however, which it cannot clear.  By granting LDF a declaratory judgment on its 5(b)(2) claim and entering a limited "use" injunction requiring a disclaimer on the Commission's published report, the Court has already remedied LDF's "representational injury."  *Id.* at 17; *see also* Nov. 2 Mem. Op. at 4 ("Defendants' FACA violations caused LDF's injuries, which stem from its inability to influence the Commission's work by scrutinizing the Commission's activities and having access to a representative voice on the Commission.  Requiring a disclaimer gives LDF some input into the Commission's work by removing the appearance of legitimacy that attaches to advisory committee recommendations.").

Indeed, Section 5(b)(3) does not address representation at all—rather, it requires that the documents establishing advisory committees have "appropriate provisions" to guard against inappropriate influence over the relevant committee's findings and recommendations.  5 U.S.C. app. 2 § 5(b)(3), (c); *see also* Part II, *infra*.  For that reason, LDF lacks standing under *R.J. Reynolds Tobacco Co. v. FDA*, 810 F.3d 827 (D.C. Cir. 2016), in which the D.C. Circuit held that the plaintiff could not maintain a challenge to the composition of an advisory committee based on the agency's alleged failure to properly screen the committee members for conflicts of interest. *See id.* at 829–32.  The Court previously distinguished *R.J. Reynolds* on the basis that LDF "alleges a representational injury that has already accrued (and continues to accrue)." Oct. 1 Mem. Op. at 16.  But, in light of this Court's prior orders, that representational injury has already been remedied. At this point in the litigation, the only plausible harm LDF could allege to maintain its Section 5(b)(3) claim is that the Commission's non-compliance with Section 5(b)(3) could result in Commission recommendations with which LDF disagrees, or potential future agency action based on the Commission's report—precisely the types of injuries that the D.C. Circuit held were insufficient in *R.J. Reynolds*.  *See* 810 F.3d at 830.

LDF may argue, nonetheless, that it has standing because a declaration from the Court that Defendants violated Section 5(b)(3) would give LDF a further opportunity "to challenge the Commission's findings in the public arena."  *See* JSR at 11.  But LDF does not have an unlimited right to continue to litigate its case in the absence of a concrete and non-hypothetical injury, which LDF now lacks.  And even if LDF were, hypothetically, still injured, Defendants have already acknowledged—and do so again here—that the Commission does not comply with Section 5(b)(3), because it was not set up with "provisions" required by the statute, which LDF can use as it sees fit to question the Commission's report.  Given Defendants' public acknowledgement that the

documents establishing the Commission did not include the "provisions" required by Section 5(b)(3), LDF's potential gains from further litigation on its claim under that section are insufficient to confer Article III standing.

## II.   IF THE COURT DETERMINES IT HAS STANDING, IT SHOULD ENTER JUDGMENT ON LDF'S SECTION 5(b)(3) CLAIM.

If the Court were to conclude that LDF has standing to continue to pursue its claim under Section 5(b)(3), the appropriate course would be to enter judgment on that claim based on Defendants' acknowledgment that the Presidential and agency documents establishing the Commission did not "contain appropriate provisions to assure" that the advice and recommendations of the Commission would not be inappropriately influenced by the appointing authority or by any special interest.  5 U.S.C. app. 2 § 5(b)(3), (c).  Now that the Court has found that FACA applies to the Commission, there is no live controversy as to the merits of LDF's claim, and the Court can simply enter judgment for LDF.  No additional remedies are necessary or warranted.

Defendants established the Commission under the good-faith belief that FACA did not apply because the Commission fell within the scope of the exemption to FACA in the Unfunded Mandates Reform Act of 1995.  The government has not determined whether to appeal the Court's determination that the UMRA exemption does not apply.[2]  Nevertheless, Defendants acknowledge that the Commission was not structured to comply with FACA, including Section 5(b)(3)'s requirement that the documents establishing advisory committees contain "appropriate provisions to assure" that they are not inappropriately influenced that and their advice and recommendations "will instead be the result of the advisory committee's independent judgment."  5 U.S.C. app. 2

---

[2] In the event an appeal is filed, Defendants reserve the right to seek relief from any Court-ordered production schedule as appropriate.

§ 5(b)(3).  Because it is undisputed that the Presidential and agency documents establishing the Commission do not include "appropriate provisions" required for FACA committees under Section 5(b)(3), no further proceedings are required.  If the Court determines it has standing, there is nothing left for the Court to do with respect to LDF's claim under Section 5(b)(3) other than to enter judgment.

LDF intends to ask the Court to go further and allow discovery into whether any influence over the Commission was, in fact, "inappropriate."  *See* JSR at 10–13.  But granting LDF's request would simply allow discovery for discovery's sake alone, because there is nothing legally relevant left to discover.  Section 5(b)(3), by its plain language, requires advisory committees only to be established with "appropriate provisions" to avoid inappropriate influence, and Defendants acknowledge that no such provisions are in place for the Commission.  5 U.S.C. app. 2 § 5(b)(3); *see also Pub. Citizen v. Nat. Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 430 (D.C. Cir. 1989) (Friedman, J.) ("Section 5(b)(3) requires *that provision be made* to assure that the advisory committee's 'advice and recommendations . . . not be inappropriately influenced . . . by any special interest . . . .'" (emphasis added, ellipses in original)); *id.* at 430 (Silberman, J.) ("[Section 5(b)(3), on its face, is directed to the establishment of *procedures* to prevent 'inappropriate' external influences on an already constituted advisory committee by outside special interests or the appointing body."); *Cargill, Inc. v. United States*, 173 F.3d 323, 339 n.30 (5th Cir. 1999) (considering whether FACA provided "adequate standards to guide courts in determining whether '*appropriate provisions*' have been taken to avoid 'inappropriate influence'" (emphasis added)); *Nat. Res. Def. Council. v. Dep't of Interior*, 410 F. Supp. 3d 582, 607 (S.D.N.Y. 2019) (concluding that Section 5(b)(3) is justiciable because "a court could review

whether [an] agency had established *any* provisions relating to the decisional independence of an advisory committee").

Based on Defendants' acknowledgement that the Commission was not established with the "provisions" required by Section 5(b)(3), discovery would be wasteful and serve no legitimate purpose. Indeed, if the Court were to allow LDF to proceed with discovery before ruling in LDF's favor on its Section 5(b)(3) claim, LDF would, at most, be entitled only to a declaration from the Court of what Defendants have already acknowledged—*i.e.*, that the Commission did not comply with Section 5(b)(3). And, other than injunctive relief—the scope of which the parties have already litigated and which the Court has addressed, *see* Nov. 2 Mem. Op. at 7–11; Nov. 2 Order at 2–4—LDF sought only a declaration that Defendants have not complied with FACA, *see* Am. Compl., Prayer for Relief, a proposition that Defendants concede. Here, discovery would be particularly inappropriate, and unnecessary, given that the Court has already ordered Defendants to produce documents covered by Section 10(b). Nov. 23 Order at 1-2. The Supreme Court has suggested that that discovery should not provide an avenue to obtain documents that a plaintiff cannot otherwise obtain if it succeeds on the merits of its FACA claim. *See In re Cheney*, 542 U.S. 367, 377 (2004) ("The majority [of the D.C. Circuit panel] acknowledged the scope of respondents' requests is overly broad, because it seeks far more than the 'limited items' to which respondents would be entitled if 'the district court ultimately determines that the NEPDG is subject to FACA.'"). For these reasons, even if Plaintiffs could establish standing, the Court should not entertain discovery

**CONCLUSION**

For the foregoing reasons, the Defendants respectfully ask the Court to dismiss LDF's

claim brought under FACA Section 5(b)(3) in Count I of the Amended Complaint or, alternatively,

to enter judgment on that claim.

Dated:  November 30, 2020                      Respectfully submitted,

                                              JEFFREY BOSSERT CLARK
                                              Acting Assistant Attorney General

                                              ELIZABETH J. SHAPIRO
                                              Deputy Branch Director

                                              */s/ Bradley P. Humphreys*
                                              BRADLEY P. HUMPHREYS
                                              Trial Attorney, U.S. Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, NW
                                              Washington, DC 20005
                                              Tel: (202) 305-0878
                                              Email: Bradley.Humphreys@usdoj.gov

                                              *Counsel for Defendants*