## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAACP LEGAL DEFENSE &<br>EDUCATIONAL FUND, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>WILLIAM P. BARR, in his official capacity<br>as Attorney General of the United States,<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, an agency of the United States,<br><br>PRESIDENTIAL COMMISSION ON LAW<br>ENFORCEMENT AND THE<br>ADMINISTRATION OF JUSTICE, an<br>advisory committee established and utilized<br>by Attorney General William Barr,<br><br>PHIL KEITH, in his official capacity as<br>Chair of the Presidential Commission on Law<br>Enforcement and the Administration of<br>Justice, and<br><br>KATHARINE SULLIVAN, in her official<br>capacity as Vice Chair of the Presidential<br>Commission on Law Enforcement and the<br>Administration of Justice,<br><br>                    Defendants. | Civil Action No. 20-1132 (JDB) |

## <ins>MEMORANDUM OF LAW IN SUPPORT OF<br>PLAINTIFF'S MOTION TO COMPEL</ins>

i

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

ARGUMENT ..........................................................................................................................4

I.      Defendants Must Disclose All Records Covered by Section 10(b) Even if Not Ultimately Shared with Each Commission Member. ........................................................5

II.     Defendants Must Disclose Documents Prepared for or by Commission Working Groups..............................................................................................................................11

        A.      The working groups were "established" by the Attorney General and the Department of Justice. .........................................................................................11

        B.      The working groups were "utilized" by the Attorney General. ...........................12

        C.      Because the working groups are subject to FACA, their documents must be disclosed pursuant to Section 10(b). .................................................................14

III.     Defendants May Not Categorically Withhold Supposedly "Administrative" Documents. .........................................................................................................................15

IV.    Further Relief .................................................................................................................15

CONCLUSION......................................................................................................................16

## <u>INTRODUCTION</u>

Plaintiff NAACP Legal Defense and Educational Fund, Inc. ("LDF") hereby moves this Court for an order compelling Defendants to publicly disclose documents required pursuant to Section 10(b) of the Federal Advisory Committee Act ("FACA"). This Court has already found that the Presidential Commission on Law Enforcement and the Administration of Justice ("Commission") is an advisory committee subject to FACA. Therefore, Defendants must make public all documents covered by Section 10(b)—all documents "which were made available to or prepared for or by" the Commission.

However, Defendants are categorically excluding countless documents from disclosure, based on a crabbed reading of FACA that would limit its coverage to only substantive documents that were sent to every Commissioner. Such a reading is unsupported by the text of the statute and this Circuit's authority. Section 10(b) encompasses relevant documents—those "made available to or prepared for or by" the Commission—even if they were not sent to each of the 18 Commissioners and regardless of whether the materials are allegedly administrative. Further, the Commission's working groups, which were created by Attorney General Barr, composed by the Department of Justice, and held hearings and drafted the report, are also covered by Section 10(b); Defendants must disclose any relevant working groups documents as well.

Specifically, Defendants are excluding from disclosure the following eleven categories of documents:

(1)  Administrative emails sent to the full Commission;
(2)  Emails and associated materials sent between Commission staff that were not sent to a Commissioner;
(3)  Emails and associated materials to or from staff that included one or more Commissioners, but not to the full Commission;
(4)  Emails and associated materials sent among individual Commissioners but not shared with the full Commission;
(5)  Public comments not provided to the full Commission;
(6)  Staff emails and work product never provided to the full Commission;

(7)     Emails and associated documents sent to or from Commission staff or individual Commission members to or from third parties (e.g., reporters, public-interest groups, witnesses) and not shared with the full Commission;

(8)     Materials considered or generated by Working Group members but not shared with the full Commission;

(9)     Communications between staff and Working Group members not shared with the full Commission;

(10)    Communications among Working Group members not shared with a Commissioner or the full Commission; and

(11)    Communications between Working Group members and one or more Commissioners but not shared with the full Commission.

Second Joint Status Report at 3–4, ECF No. 58.

Neither the text of Section 10(b) nor this Court's precedent support such blanket carve-outs. FACA's disclosure requirement is not dependent on who ultimately reviewed any documents or how they were used. Instead, in order to determine whether an advisory committee's "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents" must be publicly disclosed, Section 10(b) asks whether the documents were "made available to or prepared for or by" the advisory committee. 5 U.S.C. app. 2 § 10(b). Thus, the document's origins and intended audience are critical—for example, a document "prepared for" the advisory committee (including public comments or staff work product) must be disclosed under Section 10(b), even if it was ultimately only shared with a subset of the committee's membership. The D.C. Circuit recognized as much in *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), finding that Section 10(b) required disclosure of records that were not shared with all committee members.

Similarly, a document "prepared . . . by" one or more members on behalf of the advisory committee must also be disclosed under Section 10(b), even if the document itself is non-substantive or administrative. And as courts in this district have determined, an advisory committee's working groups may themselves be subject to disclosure under FACA where—as

here—they are substantively involved in holding hearings and drafting the committee's work product.

While some materials within Defendants' asserted categories may be properly withheld—such as personal messages sent to Commissioners or privileged documents concerning this litigation—Defendants have not provided sufficient information to identify and exclude those materials from production. Therefore, Plaintiff respectfully requests the Court order Defendants to disclose all documents that were "made available to," "prepared for" or "prepared . . . by" the Commission and its working groups, including any such documents found in the eleven categories of documents currently being withheld; and further order Defendants to provide an index describing with specificity any documents they continue to withhold based on any proposed exemption or privilege.

## FACTUAL BACKGROUND

On October 1, 2020, this Court held that the Commission is subject to FACA's requirements, Mem. Op. at 39, ECF No. 45 (hereinafter Oct. 1 Op.), providing Defendants notice that they must comply with all of FACA's provisions, including Section 10(b)'s document disclosure rules. The Court directed the parties to file supplemental briefing and proposed orders as to further relief. In its proposed remedial order, LDF requested the Court to order public disclosure of "all records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared by the Commission and/or any of its Working Groups in connection with their work," as Section 10(b) requires. Pl.'s Proposed Remedial Order at 3, ECF No. 46-1. Not only is such disclosure mandated by FACA's plain text, it will also remedy the Commission's FACA violations by providing "ammunition" necessary to challenge the "Commission's findings or any action taken in reliance on those

findings." Oct. 1 Op. at 20. The Court subsequently ordered Defendants to begin producing materials covered by Section 10(b). Order at 2, ECF No. 56.

After discussion between the parties, Defendants agreed to disclose, in three stages (the first on December 17, 2020, the second on December 31, 2020, and the third on January 14, 2021), five categories of documents that they are obligated to disclose under Section 10(b):

> (1)    Summaries of activity by the Commission and the Working Groups shared with the full Commission;
> (2)    Meeting agendas shared with the full Commission;
> (3)    Draft versions of the Commission's report circulated to the full Commission;
> (4)    Substantive documents related to the Commission's work and shared with the full Commission; and
> (5)    Substantive communications exchanged among the full Commission.

Second Joint Status Report at 3, ECF No. 58.

However, Defendants refuse to publicly disclose eleven categories of documents, as identified *supra.* ECF No. 58 at 3–4; *see also* Email from Bradley Humphreys to Natasha Merle, et al. (Dec. 4, 2020) (attached hereto as Exhibit A), despite the requirements of Section 10(b). The Parties conferred regarding these categories of documents but have reached an impasse.[1] *See* Third Joint Status Report at 2–3, ECF No. 60.

## **ARGUMENT**

Section 10(b) of FACA requires the Commission to publicly disclose the "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the Commission. 5 U.S.C. app. 2 § 10(b). Those requirements bind both the Commission and "any subcommittee or subgroup thereof . . . ." 5 U.S.C. app. 2 § 3(2). FACA's disclosure and transparency requirements are intended to provide

---

[1]    Given the ongoing litigation and the parties current impasse concerning which documents must be disclosed pursuant to Section 10(b), Defendants are required to maintain all Commission and working group materials, in any medium, despite their current position that these documents are not subject to disclosure.

for the contemporaneous availability of advisory committee documents. Section 10(b)'s disclosure requirement, in conjunction with Section 10(a)'s provisions enabling the public to be notified of and attend committee meetings, provides a meaningful opportunity to fully comprehend the committee's work. *See Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1469 (D.C. Cir. 1992) (holding that advisory committee records "must be available . . . before or on the date of the advisory committee meeting to which they apply"). A document covered under Section 10(b) must be disclosed unless it is covered by an exemption set forth in Section 552(b) of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. app. 2 § 10(b) (noting that FACA disclosure shall be "[s]ubject to section 552 of title 5, United States Code"); *see also Nat. Res. Def. Council v. Johnson*, 488 F.3d 1002, 1003 (D.C. Cir. 2007) (observing that FACA requires committees to "make committee documents available to the public subject to the exemptions of FOIA").

Defendants' proposal to exclude eleven broad categories of documents is plainly inconsistent with the operative provisions of Section 10(b). Accordingly, the Court should compel Defendants to: (1) disclose all documents that were "made available to or prepared for or by" the Commission and working groups, except to the extent they seek to invoke FOIA exemptions or legal privileges with respect to particular documents; and (2) prepare an index for any documents which Defendants claim can be withheld under FOIA or otherwise exempted from disclosure any other reason.

## I.   Defendants Must Disclose All Records Covered by Section 10(b) Even if Not Ultimately Shared with Each Commission Member.

Defendants mistakenly center Section 10(b)'s inquiry as to whether Commission documents "shall be" disclosed to the public on the ultimate recipients of the records—in order for

a document to be subject to disclosure, Defendants argue, each member of the Commission must have received it. However, the text of Section 10(b) includes no such requirement.

Contrary to Section 10(b)'s language, Defendants' proposed test does not assess whether the documents were "made available to or prepared for or by" the Commission. Instead, their test asks whether a particular document was ultimately received by each member of the Commission. However, consistent with Section 10(b)'s actual language, a document "prepared for" the Commission—such as public comments submitted for the Commission's consideration, or expert evidence submitted to inform the Commission's study—must be disclosed regardless of how many members of the Commission the document ultimately reached. Similarly, a document prepared on behalf of the Commission by one or more Commission members, working groups, or even commission staffers must also be disclosed under Section 10(b), provided that the document was prepared on the Commission's official behalf, and thus "prepared . . . by" the Commission. Rather than inventing new exemptions from disclosure, Defendants must do a careful analysis of all Commission documents to determine whether they were "prepared for or by" the Commission before withholding any materials.

Plaintiff does not seek any and all documents created by the Commission; materials such as a Commissioner's personal communications or emails from reporters to Commissioners may well be shielded from disclosure. Section 10(b)'s disclosure requirement is clearly broader, however, than only documents shared with all Commissioners. Materials sent to or from a Commissioner about their work on the Commission or related to the Commission's function should be deemed within FACA's coverage. Defendants have not rebutted this presumption or explained why materials related to the Commission's work should not be covered unless shared with each Commissioner.

6

Nor do Defendants cite any authority for their argument that documents prepared for or by the Commission must *also* have been shared with each Commission member in order to be covered by Section 10(b). Defendants rely instead on one case and a legal memorandum—*Nat'l Anti– Hunger Coal. v. Exec. Comm. of the President's Private Sector Survey on Cost Control*, 557 F. Supp. 524 (D.D.C. 1983) and Disclosure of Advisory Committee Deliberative Materials, 12 U.S. Op. Off. Legal Counsel 73 (1988) ("OLC Memo"). As discussed further *infra*, Section II(A)–(B), these authorities are inapposite and do not support categorical exclusion of documents not shared with each Commission member. *Nat'l Anti–Hunger Coal.* held that certain "task forces" that performed only "staff functions" for a FACA advisory committee were themselves not FACA advisory committees and thus not subject to its requirements. 557 F. Supp. at 529–30. The Office of Legal Counsel memorandum "essentially mirrors that holding." *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 228 n.6 (D.D.C. 2017).

Defendants' wholesale exclusion of documents that were not shared with each Commission member is also inconsistent with the purpose of FACA's disclosure requirement. Such a categorical exclusion would provide an advisory committee that does not wish to comply with FACA, like this Commission, an easy avenue for avoiding the disclosure of committee records— such a committee could simply withhold a particularly sensitive or incriminating document from one of its members. Under Defendants' theory, a document thus withheld from a single committee member would cease to be covered by Section 10(b). According to Defendants, that would be true even if the document in question was prepared for the committee's review, made available to other members of the committee, and centrally relied upon in the committee's recommendations. If even one member did not receive a document, Defendants argue, the document would be immune from

FACA's disclosure requirement. FACA's text and case law make clear that this is not how Section 10(b) operates.

One illustrative example is *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999). That case arose in part because an advisory committee withheld documents covered by Section 10(b) from Ms. Victoria Cummock, a member of the committee who held dissenting views on the issues to be studied. *Id.* at 287–88. The D.C. Circuit held "that the only claim . . . warranting [its] attention [wa]s Cummock's assertion that the Commission denied her access to relevant documents," noting that this claim "[wa]s rooted in § 10(b) of FACA." *Id.* at 289. Yet, according to the theory advanced by Defendants, the documents Ms. Cummock sought would have been categorically exempt from Section 10(b)'s disclosure requirement—precisely *because* they had been withheld from Ms. Cummock. In other words, if Defendants' argument were correct, Ms. Cummock would have been seeking records to which FACA did not apply, and her claim would have failed. But that is not what happened. Instead, the D.C. Circuit recognized that Ms. Cummock's claim to the committee's documents was legally cognizable under Section 10(b) and ruled in her favor. *Id.* at 289, 292.[2]

Furthermore, this district has recently rejected Defendants' argument—that documents are not covered by FACA unless used by the Commission as a whole. *See Dunlap v. Presidential*

---

[2]     The D.C. Circuit in *Cummock* also held that committee members have a right "to fully participate in [an advisory committee's] deliberations" that goes beyond that of the general public, which may entitle committee members to review documents covered by Section 10(b) but exempted from public disclosure pursuant to a FOIA exemption. *See Cummock*, 180 F.3d at 292. However, in order for Ms. Cummock to prevail on her Section 10(b) claim, the court found it sufficient that the defendants had already conceded she possessed "*at least* the same rights under FACA as the public[.]" *Id.* "[A]ny member of the public," the court observed, would have an enforceable right under Section 10(b) to obtain at least some of the documents that had been withheld from Ms. Cummock. *Id.* Subsequent courts have recognized this rationale as "central to the D.C. Circuit's reasoning and holding." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 31–32 (D.D.C. 2002). Thus, *Cummock*'s litigation history and outcome foreclose Defendants' position that documents must be received by all members of a committee for § 10(b)'s coverage to apply.

*Advisory Comm. on Election Integrity*, 286 F. Supp. 3d 96, 106-107 (D.D.C. 2017). As that court noted, this argument is "outdated and indefensible." *Id*. at 106. Similarly, here, any Commission documents to which the text of Section 10(b) applies must be disclosed, regardless of whether all or a subset of the Commission's members have reviewed them.

The broad categories of documents described by Defendants as those which they seek to exclude do not elucidate precisely which documents covered by Section 10(b) they may be withholding. However, a few examples demonstrate why their proposed reading fails. Defendants are categorically excluding "public comments not provided to the full Commission." Second Joint Status Report, ECF No. 58 at 4. Surely public comments were "prepared for" the Commission and intended for the Commission's review and consideration. Even the Commission's solicitation of public comment, to which LDF responded, asked for members of the public to submit "written statements on the topics covered by the Commission's work," adding that the Commission "strongly encourage[d] those with views on these critical topics to submit written comments."[3]

LDF responded to the Commission's solicitation for public comments and submitted two comments to the Commission that raised critical issues concerning the composition, operation, transparency and focus areas studied by the Commission.[4] LDF sent the comment letter to the LECommission@usdoj.gov email address, as directed by the Commission's solicitation.[5] However, LDF, like other individuals who submitted public comment, had no way of ensuring that its public comment was shared with each Commissioner to consider as intended or just a handful

---

[3]      Ex. A to Dixon Decl. at 2, ECF No. 25-26.
[4]      *See* Pl.'s Mem. of Law in Opp'n to Defs.' Renewed Partial Mot. to Dismiss at 7 & n. 4, ECF No. 59 (recounting LDF's submission of comment letters in response to this solicitation).
[5]      *See* Ex. B to Dixon Decl., ECF No. 25-27; Ex. C to Dixon Decl., ECF No. 25-28; Ex. E to Dixon Decl., ECF No. 25-30; Ex. F to Dixon Decl., ECF No. 25-31.

of Commission members.[6] If the Defendants had a gatekeeper who decided which public comments would be shared with the entire Commission and which would not, that provides no basis under Section 10(b) for withholding public comments that were "prepared for" the Commission.

Defendants also propose withholding documents prepared by third parties such as public-interest groups or witnesses and sent to Commission members if those documents were not shared with the full Commission. Second Joint Status Report, ECF No. 58 at 4. This would exclude, for example, documents in which the Commission solicited input from specific third parties in preparation for specific hearings. Plaintiff obtained one such document through public records requests: Defendant Phil Keith appears to have requested the submission of a written statement from the Hispanic American Police Command Officers Association ("HAPCOA") on behalf of the Commission.[7] Under Defendants' proposal, however, they would not have to disclose that the Commission solicited input from certain third parties in subject areas that go directly to the Commission's work. Nor would they have to disclose the response or materials received from the third party that may have been considered in the Commission's ultimate work, solely because they were not shared with each Commission member. There is no basis for this blanket exclusion.

Furthermore, the Commission had an email account, LECommission@usdoj.gov, through which Commission business was conducted. All emails and any attached materials sent from or received by this email address concerning the Commission's work or function constitute records prepared for or by the Commission and should be disclosed. It is unclear whether some documents

---

[6]     Along with Chair Keith and Vice Chair Sullivan, LDF knows that Commissioner Gina V. Hawkins and other members of the Respect for Law Enforcement Working Group also received LDF's public comment. *See* Ex. B to Chandran Decl. at 2, ECF 40-3.
[7]     *See* Email from Anthony Chapa, HAPCOA, to Shannon Long, DOJ (Apr. 30, 2020) (attached hereto as Exhibit B).

sent to or from the Commission's email address are being withheld under the Defendants' broad categories, and if so, on what basis they are being withheld. Plainly, however, emails sent to or otherwise received by the Commission's email address were prepared for the Commission, and emails sent from it were prepared by the Commission.

Given Defendants' categories encompass documents subject to FACA's disclosure requirement, their categorical exclusions are untenable, and Defendants must conduct the inquiry and disclosure Section 10(b) requires.

## II.    Defendants Must Disclose Documents Prepared for or by Commission Working Groups.

FACA's reach is unambiguous; by its plain terms, the statute applies to "any committee, board, commission, council, conference, panel, task force, or other similar group, *or any subcommittee or other subgroup thereof* . . . which is [] established or utilized by one or more agencies." 5 U.S.C. app. 2 § 3(2) (emphasis added). Thus, "unless otherwise stated, the same rules apply to committees as to subcommittees." *Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 600 (S.D.N.Y. 2019). Because the Commission's working groups were created by the Attorney General, and their membership determined by DOJ, they are "established . . . by one or more agencies." Furthermore, their substantive involvement in holding hearings and drafting the Commission's final report is sufficient to show that they are "utilized by" the agency. Thus, the working groups must comply with FACA. Defendants' refusal to provide *any* materials related to the working groups' operation lacks any basis in law or fact.

### A.    The working groups were "established" by the Attorney General and the Department of Justice.

An agency head "establishes" an advisory committee when he or she directly forms it. *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 32 (D.D.C. 2010) (citing

*Food Chem. News v. Young*, 900 F.2d 328, 332 (D.C. Cir. 1990)). An agency also "establishes" an advisory committee within the meaning of FACA when it "identifie[s] the members of the team, contract[s] directly with them for their services, pa[ys] them, and provide[s] them with initial questions to answer." *Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 34 (D.D.C. 2006).

These precedents make clear that the Commission's working groups were "established" by the Attorney General and the Department of Justice. The Attorney General himself created all fifteen working groups in the same memorandum in which he established the Commission; in that document, he provided specific questions that each working group was directed to answer. *See* Ex. 2 to Merle Decl. at 4–6, ECF 25-5 (describing subject areas and questions for each working group to study). And even the limited record before this Court makes clear that DOJ itself conducted outreach to recruit members for the working groups. *See, e.g.*, Ex. G to Chandran Decl. at 3–4, ECF No. 40-8 (email soliciting working group members and noting that "DOJ has, or if they have not already, will be in contact with you in the coming days regarding serving as a . . . Working Group Member"). And, in fact, the outreach emails to working group members specifically noted that certain procedures would need to be followed "[d]ue to the Federal Advisory Committee Act." *Id.* Defendants' own words leave no other conclusion: the working groups were "established" by the Attorney General and the Department of Justice and are thus themselves subject to FACA.

For this reason alone, Defendants' reliance on *National Anti-Hunger Coalition* is misplaced. There, the court held that FACA did not require disclosure of documents from task forces established by a non-profit corporation to assist an advisory committee with certain fact-gathering activities incidental to the committee's work. 557 F. Supp. 524, 526, 529 (D.D.C. 1983). But that case is readily distinguishable. Unlike the task forces at issue in *National Anti-Hunger*

*Coalition*, the working groups here were established—and their memberships selected—by the federal agency itself.

**B.     The working groups were "utilized" by the Attorney General.**

The Commission's working groups are subject to FACA for an additional, independent reason: they were also utilized by the Attorney General and DOJ. Courts take a functional approach in determining whether a working group is "utilized" by an agency. Where working groups are substantively involved in interfacing with the public and drafting an advisory committee's ultimate work product, for example, courts have found that the working groups themselves must themselves comply with FACA's disclosure requirements. *See, e.g.*, *Lorillard, Inc. v. U.S. Food & Drug Admin.*, Civ. No. 11-40, 2012 WL 3542228, at *3 (D.D.C. Aug. 1, 2012) (finding that FACA applied to a subcommittee that, among other things, was established by an agency and drafted the committee's report). By contrast, FACA "does not cover groups performing staff functions" for advisory committees. *Nat'l Anti-Hunger Coal.*, 557 F. Supp. at 529.

Here, the Commission's working groups went far beyond the narrow "staff functions" or "preparatory work" for the Commission that would allow them to evade compliance with FACA. *See id.*; *see also* OLC Memo at 76. Undisputed record evidence establishes that the working groups held hearings with subject matter experts to adduce testimony on their topics of study. *See, e.g.*, Ex. H to Chandran Decl. at 2–3, ECF No. 40-9 (discussing prior and future subject matter expert participation on working group calls). Based on those hearings and record submissions, the working groups put together annotated outlines of their recommendations, *see* Ex. I to Chandran Decl, ECF No. 40-10, and ultimately drafted entire sections of the Commission's report.[8] Those portions of the reports would be submitted for "deliberations of the Commission, [DOJ] leadership,

---

[8]     Email from Katherine McQuay to Respect for Law Enforcement working group members (May 23, 2020) (attached hereto as Exhibit C).

and the Attorney General."[9] DOJ provided funding for non-federal-employees' participation in working group activities.[10]

In sum, there is no dispute that the Commission's working groups were a true "point of contact between the public and the government." *Assoc. of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 913 (D.C. Cir. 1993). Because the working groups held their own hearings, solicited their own evidence, and drafted chapters on behalf of the Commission, they are subject to FACA.

### C.   Because the working groups are subject to FACA, their documents must be disclosed pursuant to Section 10(b).

Because the Commission's working groups are subject to FACA, Defendants must make public all "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the working groups. 5 U.S.C. app. 2 § 10(b). Defendants' own documents confirm that at least the following categories of documents exist: agendas and minutes for working group hearings; drafts and outlines for chapters of the Commission report; and legislative and policy analysis performed for the working groups by special interest groups. To ensure meaningful public oversight of how the Commission's report came to be, and what factors shaped the final report's recommendations, these documents must be made public. Anything less would severely undermine FACA's disclosure requirements: working groups could solicit evidence in secret, hold private hearings, and draft committee recommendations and still evade any public scrutiny.

---

[9]    Email from Phil Keith to Robert Chapman, Ruby Qazilbash, George Fachner, and Barry Bratburd (June 21, 2020) (attached hereto as Exhibit D).
[10]   Email from Phil Keith to unspecified recipients (May 15, 2020) (attached hereto as Exhibit E).

III.    **Defendants May Not Categorically Withhold Supposedly "Administrative" Documents.**

Section 10(b) of FACA does not restrict the requirement of disclosure to just those advisory committee materials an agency itself deems substantive; rather, any "documents which were made available to or prepared for or by each advisory committee shall be available for public inspection . . . ." 5 U.S.C. app. 2 § 10(b). Just recently, this Court interpreted this broad language as foreclosing an implied exception for documents concerning "administrative work." *See Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 48–49 (D.D.C. 2019). Thus, there mere fact that a Commission document may pertain to administrative work is no reason to shield it from public disclosure under FACA. Indeed, the statute's requirement that preparatory materials, including drafts or agendas, be disclosed counsels against such a categorical exclusion. *See* 5 U.S.C. app. 2 § 10(b).

Defendants may well be entitled to withhold certain materials that happen to be administrative on the basis of any applicable FOIA exemptions or privileges. Those questions, however, require more individualized consideration of specific withholdings, rather than a blanket exemption for any documents Defendants deem "administrative" in nature. As detailed further below, Defendants must provide specific bases for invoking privileges or exemptions for any and all documents withheld.

IV.    **Further Relief**

Along with compelling Defendants to produce all documents subject to Section 10(b) even if they were not shared with each Commission member, pertain to working group operations, or are allegedly administrative, Plaintiff respectfully requests that the Court order Defendants to: (1) submit an index describing the documents Defendants continue to withhold under their proposed

categories or on grounds of privilege; and (2) ensure disclosure of Commission and working group records in any and all mediums in which they may exist, including text messages.

To date, Defendants have provided eleven categories, most of which are vague and expansive, as to the records they are withholding. Defendants' overbroad categories do not allow the Court to fully assess whether any documents may in fact be appropriately withheld under Section 10(b). Plaintiff has identified some examples of documents that are being improperly withheld under Defendants' categories, but only Defendants know the full nature and extent of the documents being withheld. A closer analysis of the withheld documents prior to permitting such sweeping categorical exclusion is warranted. *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1452 (D.C. Cir. 1994) (holding that district court erred in not requiring a list of documents within the withheld category prior to determining whether specific documents were outside the scope of disclosure). Similarly, here, Defendants must provide more information about each of the documents being withheld to overcome the presumption of their disclosure.

Plaintiff also requests that Defendants disclose records covered by Section 10(b) in all mediums through which Commission and working group members have engaged in work for the Commission. This includes text messages, communications via the chat functions on platforms such as WhatsApp, Slack, and Teams, hard-copy memoranda, or other correspondence sent from or to Commissioners related to the Commission's work. Defendants' articulation of their current categories does not make clear whether the Defendants have searched other media aside from emails for relevant Commission documents.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion to compel and order Defendants to produce all material covered by Section 10(b), and provide an index explaining the specific basis for any continued withholding.

Dated: January 4, 2020

Respectfully submitted,

/s/ Natasha C. Merle
Samuel Spital, Bar No. SS4839
Natasha C. Merle*
Ashok Chandran*
Steven Lance*
**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**
40 Rector St., 5th Floor
New York, NY 10006
Tel.: (212) 965-2200
Fax.: (212) 226-7592
sspital@naacpldf.org
nmerle@naacpldf.org
achandran@naacpldf.org
slance@naacpldf.org

*admitted *pro hac vice*