# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

| | | |
|---|---|---|
| | ) | |
| NATIONAL LEGAL DEFENSE & EDUCATIONAL FUND, INC., | ) ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:20-cv-1132-JDB |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY A. ROSEN, in his official capacity as Acting Attorney General of the United States,[1] *et al.*, | ) ) ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## REPLY IN SUPPORT OF DEFENDANTS' RENEWED PARTIAL MOTION TO DISMISS

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Jeffrey A. Rosen is substituted for his predecessor, William P. Barr.

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      LDF NO LONG SUFFERS ANY LEGALLY COGNIZABLE INJURY. ........................ 2

II.     EVEN IF LDF'S SECTION 5(b)3 CLAIM WERE JUSTICIABLE, THE ONLY
       APPROPRIATE COURSE WOULD BE TO ENTER JUDGMENT IN LDF'S
       FAVOR. ............................................................................................................... 11

III.    IF LDF'S SECTION 5(b)(3) CLAIM GOES FORWARD, THE COURT
       SHOULD CONDUCT AN ARBITRARY-AND-CAPRICIOUS REVIEW
       LIMITED TO THE ADMINISTRATIVE RECORD ........................................................ 15

CONCLUSION ................................................................................................................. 16

**INTRODUCTION**

The parties are once again before the Court because LDF refuses to accept "yes" for an answer on its claim under Section 5(b)(3) of FACA.  The Presidential and agency documents establishing the Commission did not "contain appropriate provisions to assure" that the advice and recommendations of the Commission would not be inappropriately influenced by the appointing authority or by any special interest.  5 U.S.C. app. 2 § 5(b)(3), (c).  And Defendants therefore acknowledge that, in accordance with the Court's finding that the Commission was subject to FACA, they "have violated FACA by [ ] failing to ensure that the Commission's membership is . . . without undue influence."  Am. Compl., Prayer for Relief, ¶ b, ECF No. 24.  The Commission's work is finished, and this Court has entered an injunction requiring a disclaimer on the Commission's report indicating that the Commission was not legally constituted, which the Solicitor General has determined not to appeal.  Given these clear facts, LDF cannot identify any extant, cognizable injury that would support this Court's jurisdiction.

LDF counters that it faces continuing harm because the Commission's "lack of transparency" has prevented it from disputing the findings and recommendations.  Pl.'s Opp'n to Defs.' Renewed Partial Mot. to Dismiss at 4, ECF No. 59 ("Opp'n").  But Article III jurisdiction does not allow litigation for the sake of "transparency" alone, particular where an advisory committee's work is complete.  *See Nat'l Res. Def. Council v. Pena*, 147 F.3d 1012, 1021–22 (D.C. Cir. 1998).  LDF's purported injury is untethered to the "representational injury" it alleged in its Amended Complaint, and it has more than sufficient "ammunition" to dispute the Commission's findings in the public forum.  Indeed, LDF has also already relied on this Court's prior determinations in urging the next administration to "disavow and rescind the Commission and its

1

report," which LDF states was "developed through illegitimate means."[2]   Nor can LDF cannot

create a continuing case or controversy by pointing to "monitoring costs" regarding the

Commission's work because there is nothing left for LDF to monitor.  Opp'n at 7.

Assuming that the Court has jurisdiction over LDF's Section 5(b)(3) claim, the only

additional remedy would be a declaratory judgment stating that Defendants did not comply with

that provision, which is undisputed.  Contrary to LDF's premise, FACA does not authorize courts

to undertake a "substantive inquiry into the influence actually exerted" on a committee.  Opp'n at

9.  The inquiry that LDF demands would be nearly unprecedented as a general matter, and entirely

unique where it is already clear that an advisory committee did not comply with the statute.

Finally, even if this Court were to allow LDF's Section 5(b)(3) claim to proceed, LDF is

incorrect that it is entitled to discovery.  *See* Opp'n at 11–12.  It is well established that FACA

does not provide a private right of action, and therefore the only avenue for review of LDF's claim

is the Administrative Procedure Act ("APA").  Thus, to the degree LDF's claim goes forward at

all, the Court's review should be limited to an administrative record, consistent with the general

rule for APA claims.

## ARGUMENT

## I.    LDF NO LONGER SUFFERS ANY LEGALLY COGNIZABLE INJURY.

In light of the prior proceedings in this case, and the relief this Court has already ordered,

LDF faces no legally cognizable injury, and the Court therefore lacks jurisdiction to consider

LDF's Section 5(b)(3) claim.

---

[2] LDF, *et al*., Statement on Release of President Trump's Law Enforcement Commission Report, https://www.naacpldf.org/press-release/ldf-the-leadership-conference-on-civil-and-human-rights-the-open-society-policy-center-and-center-for-policing-equity-issue-statement-on-release-of-president-trumps-law-enforcement-commiss/.

To start, LDF has already obtained almost all of the relief that it sought from this Court in the first place.  Specifically, this Court has already declared (1) that the Commission was an advisory committee subject to the requirements of FACA; (2) that the Commission violated FACA by failing to file a charter and by failing to provide timely notice of meetings in the Federal Register; and (3) that then–Attorney General Barr violated FACA by failing to select a designated federal officer for the Commission and by failing to ensure the Commission's membership was fairly balanced in terms of view represented and the functions to be performed.  Order at 2, ECF No. 53 ("Nov. 2 Order").  In addition, although LDF sought a broader injunction, which the Court concluded would not be appropriate, the Court has issued a limited "use" injunction requiring Defendants to include a disclaimer stating that "the Commission's officers violated FACA in forming and operating the Commission" whenever publishing, releasing, or transmitting the Commission's report—and even when referencing the Commission's recommendations.  *See id*. at 3–4.

The only relief LDF requested in its Amended Complaint that this Court has not addressed is LDF's prayer for a "[d]eclar[ation] that Defendants have violated FACA by [ ] failing to ensure that the Commission's membership is . . . without undue influence."  Am. Compl., Prayer for Relief, ¶ b.  Yet, Defendants have acknowledged repeatedly, and do so again here, that the Commission *did not comply* with the requirements of Section 5(b)(3) to assure that the Commission's membership was without undue influence.  *See* Joint Status Report at 15–16, ECF No. 55 ("Defendants acknowledge that the Commission was not created with 'provisions' to prevent [ ] undue influence," as required by Section 5(b)(3)); Defs.' Mem. in Supp. of Renewed Partial Mot. to Dismiss at 10, ECF No. 57-1 (acknowledging the "Commission's non-compliance with Section 5(b)(3)").  Given that there is no dispute the Commission did not meet the

requirements of Section 5(b)(3), and that the Commission's work is complete, there is no live controversy with respect to LDF's claim under that provision that could support this Court's jurisdiction.  *See Hein v. Freedom from Religion Found.*, 551 U.S. 587, 597 (2007) ("Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and Controversies[.]'").

Furthermore, LDF cannot demonstrate that it continues to suffer any harm specifically tied to the undisputed violation Section 5(b)(3), which it must do in order to proceed on that claim.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("A plaintiff must demonstrate standing for each claim . . . [and] separately for each form of relief sought."); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross.").  The only harm that LDF alleged is that it has been "limit[ed]" in its "ability and right to have a representative voice on the Commission on an issue with which Plaintiff is engaged."  Am. Compl. ¶ 214.  But the Court has already remedied that harm by declaring that the Commission was not fairly balanced and through the limited "use" injunction.  *See* Mem. Op. at 4, ECF No. 54 ("Nov. 2 Mem. Op.")("Defendants' FACA violations caused LDF's injuries, which stem from its inability to influence the Commission's work by scrutinizing the Commission's activities and having access to a representative voice on the Commission. Requiring a disclaimer gives LDF some input into the Commission's work by removing the appearance of legitimacy that attaches to advisory committee recommendations.").

Indeed, as is apparent from the plain text of FACA, Section 5(b)(3) does not implicate any right to have a "representative voice" on the Commission at all.  Whereas Section 5(b)(2) requires a fair balance of different views on an advisory committee, Section 5(b)(3) requires agencies to put "*provisions*" in place to "assure" that "the advice and recommendations of the advisory

4

committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. app. 2 § 5(b)(3).  That language stands in stark contrast with Section 5(b)(2), which does not require only the inclusion of "provisions" but extends further to "require the membership of the advisory committee *to be* fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee."  *Id.* § 5(b)(2) (emphasis added); *see also* Oct. 1 Mem. Op. at 28–29, ECF No. 45 (concluding that LDF's inappropriate influence claim is justiciable because "[a]t a minimum, courts can review 'whether [an] agency had *any* provisions relating to the decisional independence of an advisory committee.'" (quoting *Nat'l Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 607 (S.D.N.Y. 2019) ("*NRDC*"))); *see also NRDC*, 410 F. Supp. 3d at 607 (concluding that the court in *Colorado Environmental Coalition  v. Wenker*, 353 F.3d 1121 (10th Cir. 2004), and Judge Silberman's concurrence in *Public Citizen v. Nat'l Advisory Committee on Microbiological Criteria for Foods*, 886 F.2d 419 (D.C. Cir. 1989), "do not sufficiently grapple with the fact that 'shall . . . contain . . . provisions' can provide a standard for a court to apply, even if only in cases where no such provisions are established at all")).

Yet, even if the Court were to put aside that Section 5(b)(3) requires only the implementation of "provisions"—as compared to the substantive requirement that advisory committees "*be* fairly balanced," 5 U.S.C. app. 2§ 5(b)(2)—LDF's alleged injury that it lacked a "representative voice" on the commission still would not flow from Section 5(b)(3).  Am. Compl. ¶ 214.  Whereas Section 5(b)(2) is *prescriptive* in that it requires the *inclusion* of a "fairly balanced" set of views and functions to be performed, 5 U.S.C. app. 2 § 5(b)(2), Section 5(b)(3) is *proscriptive* in that it is designed to *exclude* influences that are "inappropriate," *id.* § 5(b)(3).  The

fact that the Commission was not set up to exclude certain "inappropriate" influences, which Defendants acknowledge—and, indeed, even if the Commission was, in fact, inappropriately influenced—is a completely separate issue from whether LDF was unlawfully denied a "voice." Put differently, LDF has not alleged any injury flowing from the alleged inclusion of *other* views on the Commission, only that it was denied the opportunity to have its own views represented. As such, LDF has not alleged any injury that could possibly result from the Commission's violation of Section 5(b)(3).

LDF's primary response is that it needs further relief to "dispute the Commission's findings and recommendations," asserting that this Court's involvement with respect to LDF's inappropriate influence claim is necessary in order to allow "public scrutiny" through a "complete accounting" of the Commission's activities. Opp'n at 4. But again, LDF's requested relief goes far beyond what it sought in its Amended Complaint. Aside from a complete injunction of the Commission's work, which this Court has already determined would not be appropriate, *see* Nov. 2 Mem. Op. at 8–9, LDF's only relevant request for relief was for a declaration that Defendants violated Section 5(b)(3), and Defendants have already acknowledged that. Article III jurisdiction does not sweep so broadly as to allow LDF to carry on with its Section 5(b)(3) claim in the interests of pure issue advocacy.

Even putting aside that LDF's alleged injury is unmoored from its Amended Complaint, LDF's arguments are foreclosed by *Natural Resources Defense Council v. Pena*, 147 F.3d 1012 (D.C. Cir. 1998). There, the plaintiffs made very similar arguments to those that LDF urges here— *i.e.*, that, had the defendants complied with FACA, the plaintiffs would have been able to participate in the advisory committee's work and been able to monitor its activities, and that the plaintiffs were injured because they were unable to "publicly critique the Report in a manner that

FACA allows." *Id.* at 1021.  Yet, the D.C. Circuit rejected the plaintiffs' argument that they continued to have standing for injunctive relief, given that the advisory committee had been dissolved and would no longer meet.  As the court explained, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effects." *Id.* at 1022.  That reasoning applies with even greater force here, because this Court has already entered an injunction against Defendants, which the government has declined to appeal.

LDF, moreover, already has ample "ammunition" to dispute the Commission's findings, based on the Court's existing declaration that the Commission did not comply with FACA; the Court's injunction requiring a disclaimer whenever the Commission's report or recommendations are transmitted or referenced; and, with respect to Section 5(b)(3) specifically, Defendants' repeated acknowledgement that the Commission did not comply with that provision of the statute. LDF itself has touted this Court's injunction in a public statement, and has called on the next administration[3] to "disavow and rescind the Commission and its report," which LDF states was "developed through illegitimate means."[4]  In addition—with very few exceptions, as far as the

---

[3] LDF's (already untenable) claim that it continues to be harmed will soon be *even less* plausible. The creation of the Commission arose out of an Executive Order, which directed then–Attorney General Barr "to establish a Commission on Law Enforcement and the Administration of Justice" to make recommendations to Attorney General Barr, "who shall submit a report and recommendations to the President on actions that can be taken to prevent, reduce, and control crime, increase respect for the law, and assist victim."  84 Fed. Reg. 58,595, 58,595–96 (Nov. 1, 2019).  President Trump, who issued the Executive Order, will leave office on January 20, 2021 and then will no longer be in a position to direct the implementation of the Commission's recommendations.

[4] LDF, *et al.*, Statement on Release of President Trump's Law Enforcement Commission Report, https://www.naacpldf.org/press-release/ldf-the-leadership-conference-on-civil-and-human-rights-the-open-society-policy-center-and-center-for-policing-equity-issue-statement-on-release-of-president-trumps-law-enforcement-commiss/.

government is aware—the news sources that have reported on the Commission's recommendations have highlighted this Court's conclusion that the Commission did not meet FACA's requirements.[5] *See also* Nov. 2 Mem. Op at 5 (rejecting LDF's argument that a limited use injunction is not sufficient for LDF to challenge the Commission's recommendations in the public forum").

Nor is litigation of LDF's Section 5(b)(3) claim—which no longer presents a live controversy, for the reasons discussed above—the proper avenue for it to seek to obtain additional information regarding the Commission's activities. Subject to certain statutory exceptions, Section 10(b) of FACA imposes on advisory committees the obligation to provide to the public "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee." 5 U.S.C. app. 2 § 10(b). And, in light of this Court's conclusion that the Commission is subject to FACA, Defendants have agreed to release publicly materials subject to Section 10(b). As the Court is no doubt aware, the parties disagree as to the proper scope of Section 10(b), and the Court has ordered briefing on LDF's motion to compel production of additional documents. But it is through that dispute over the scope of FACA's public records requirement—and not whether the Commission complied with Section 5(b)(3)—that LDF can obtain additional "ammunition" as appropriate. *See*

---

[5] *See, e.g.*, The Washington Post, Trump Policing Commission Calls for Independent Probes of Officer Shootings, More Technology Use, https://www.washingtonpost.com/nation/2021/01/03/trump-police-commission-report/ ("After the NAACP Legal Defense and Educational Fund (LDF) sued . . . , a federal judge in Washington found the commission did violate the law, and ordered a disclaimer included in the report saying its membership was not fairly balanced, it did not file a charter or provide timely notice of its meetings."); The Hill, Trump-Created Commission Offers Recommendations on Policing, https://thehill.com/homenews/administration/532436-trump-created-commission-offers-recommendations-on-police (same); *see also* Standard-Times, Opinion, Failed Policing Report Includes a Few Useful Nuggets, https://www.southcoasttoday.com/story/opinion/2020/12/31/trump-policing-report-has-some-use/4062956001/ ("The rogue panel's work was so legally out of bounds that a federal judge ordered the final product to be emblazoned with a prominent disclaimer or withheld altogether. The mandated wording appears on the report's inside front cover, and the court's order is attached.").

*Nat'l Resources Def. Council*, 147 F.3d at 1022 (rejecting the plaintiffs' argument that the government's alleged failure to disclose information required by Section 10(b) gave them standing to pursue other relief).

LDF's only other alleged injury is "increased monitoring costs," in terms of additional staff time and resources, which LDF claims have been necessary because of the Commission's "lack of 'sufficient safeguards against influence by special interest.'" Opp'n at 1, 5–6 (quoting *NRDC*, 410 F. Supp. 3d at 607). LDF cites *NRDC* for the proposition that those efforts are sufficient to confer standing. But that case is easily distinguishable from the present circumstances because the court in *NRDC* had not already ruled that the relevant advisory committee violated FACA or issued an injunction to redress the plaintiffs' alleged injuries. Nor had the government conceded that the advisory committee did not comply with Section 5(b)(3). Thus, there was still a live controversy between the parties, and the Court therefore went on to consider whether the plaintiffs' claim that "the IWCC failed to include provisions in its charter to protect the independence of the committee from inappropriate influence." *Id.* at 607. Here, there can be no live controversy, because Defendants acknowledge what LDF sought to have the Court declare. Even if LDF suffered "increased monitoring costs" when it initially filed this action, those costs no longer legitimately flow from non-compliance with Section 5(b)(3).

LDF's argument also rests on a fundamental misunderstanding of what is required to establish organizational standing in the D.C. Circuit. The mere expenditure of resources is not sufficient. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919–20 (D.C. Cir. 2015) ("Our precedent makes clear that an organization's use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury."). Furthermore, an organization does not suffer an injury in fact where it expends resources to educate

its members and others, unless doing so subjects the organization to operational costs beyond those normally expended." (internal citations and quotation marks omitted)).  To have standing, an organization must demonstrate that it has suffered a "concrete and demonstrable injury to [its] activities—with [a] consequent drain on [its] resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)).  "'[T]he organization must allege that discrete programmatic concerns are being directly and adversely affected' by the challenged action." *Nat'l Taxpayers*, 68 F.3d at 1433 (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)).

Here, LDF does not explain how its expenditure of resources affects any of its programmatic objectives.  Indeed, like any other advocacy or lobbying organization, the expenditures to which LDF complains is only ordinary activity in support of its mission.  Indeed, advocacy regarding law enforcement issues is part of LDF's core mission, undercutting its argument of injury.  *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 5, 23–24 (holding that the plaintiff has not alleged an injury in fact and thus did not have organizational standing to challenge the new regulation because defendant's action merely "prompted the plaintiff to engage in the very sort of advocacy that is its raison d'etre"); *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 136 (D.D.C. 2010) ("Challenging conduct like General Mills' alleged mislabeling is the very purpose of consumer advocacy organizations. As such, General Mills' alleged conduct does not hamper NCL's advocacy effort[s]; if anything it gives NCL an opportunity to carry out its mission."); *see also* LDF, Criminal Justice, https://www.naacpldf. org/naacp-mission/criminal-justice/ ("LDF has always worked to ensure that our nation's criminal justice laws are administered fairly and without regard to race.").  Because the

10

"monitoring costs" to which LDF points constitute the very activities in which LDF routinely

engages as an advocacy organization, it cannot establish standing on that basis.

At bottom, LDF is not entitled to any additional relief. And LDF's explanation of how this

Court could redress its alleged injuries only proves the point. It contends the Court should issue a

further limited use injunction "detailing the extent of the Attorney General's and/or law

enforcement interest group's covert involvement in drafting the report," which LDF contends

would "strengthen LDF's ability to challenge the report in the public fora." Opp'n at 8–9. LDF's

proposal is clearly improper, both because it goes far beyond the Court's role in resolving cases

and controversies, and because it seeks to turn this Court into a mouthpiece for LDF own advocacy.

LDF alleged that the Commission does not comply with Section 5(b)(3), and Defendants agree.

Defendants therefore respectfully submit that there is nothing left for the Court to do with respect

to LDF's Section 5(b)(3) claim, except to dismiss it for lack of jurisdiction.[6]

## II.   EVEN IF LDF'S SECTION 5(b)(3) WERE JUSTICIABLE, THE ONLY APPROPRIATE COURSE WOULD BE TO ENTER JUDGMENT IN LDF'S FAVOR.

As discussed above, and in Defendants' opening brief, Defendants have acknowledged that

the Commission did not meet the requirements of Section 5(b)(3), and therefore the Court may

---

[6] Even if the Court were to determine it continues to have jurisdiction over LDF's Section 5(b)(3) claim, it should still exercise its discretion to deny LDF additional declaratory relief as a prudential matter. As the Supreme Court explained in *Wilton v. Seven Falls Co.*, 515 U.S. 227, 288 (1995), "[i]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Id.* at 288. Here, there could be no useful purpose to further declaratory relief, because Defendants have already acknowledged that the Commission does not comply with Section 5(b)(3). *See President v. Vance*, 627 F.2d 353, 365 n.76 (D.C. Cir. 1980) (denying request for declaration that employment action was discriminatory because the government did not challenge the administrative finding of discrimination against the plaintiff, and therefore a declaratory judgment would not "serve a useful purpose").

declare, as LDF requested in its Amended Complaint, that Defendants violated FACA, in light of this Court's prior ruling that the statute applies to the Commission. Thus, even if the Court were to reach LDF's Section 5(b)(3) claim, the only appropriate course would be to enter judgment on that claim in LDF's favor.

LDF is unwilling to accept victory and insists that the Court must go further to conduct "a substantive inquiry into whether" the Commission "was, in fact, inappropriately influenced." Opp'n at 9. But nothing in FACA requires this Court to launch a blue-ribbon investigation into the Commission's activities, as LDF would have it, or to do anything more than to declare that the Commission did not comply with the statute.

LDF's textual argument is strained to say the least. As Defendants have shown, the plan language of Section 5(b)(3) requires only that "procedures" be in place to "assure that the advice and recommendations of the advisory committee." 5 U.S.C. app. 2 § 5(b)(3); *see also, e.g.*, *NRDC*, 410 F. Supp. 3d at 606–08. Even if there could conceivably be a situation, in another case, where a court would be called on to determine whether such procedures were "appropriate [ ] to assure" against, the text of Section 5(b)(3) does not "imply[ ] that the Court must conduct a "functional inquiry" into the actual workings of advisory committees, as LDF argues. Opp'n at 9. And LDF's argument is particularly misplaced here, given that the Commission was not set up *at all* with the procedures required by Section 5(b)(3).

LDF also cites several cases for the proposition that "courts applying Section 5(b)(3) of FACA have routinely examined the actual influence exerted on the Commission." Opp'n at 9–10. But LDF is incorrect; a substantive examination for inappropriate influence is far from "routine," as a reading of LDF's cited cases reveals. In *In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005), which LDF cites first, the D.C. Circuit nowhere "examine[d]" any influence on the relevant entity, the

12

National Energy Policy Development Group ("NEPDG"). The court merely described the statute before concluding that it did not apply to the NEPDG. *Id.* at 727–31. And the Court had no reason therefore to address whether Section 5(b)(3) requires "a substantive injury" into whether there was inappropriate influence, as LDF claims, rather than what the plain text of Section 5(b)(3) requires—*i.e*., "provisions." 5 U.S.C. app. 2 § 5(b)(3).

Nor did the D.C. Circuit "examine" any influence exerted on the advisory group at issue in *Metcalf v. National Petroleum Council*, 553 F.2d 176 (1977). The court explicitly disclaimed any need to address the scope of Section 5(b)(2) and 5(b)(3) and "assume[d] for the purposes of standing that the Council is inappropriately influenced in its work," before concluding that the plaintiffs lacked standing to bring their FACA claims. *Id.* at 180 ("In the context of this case we need not express a view as to the proper interpretation of the membership provisions of FACA."); *see also id.* at 190 (explaining that courts should not be "continuing monitors of the wisdom and soundness of Executive action").

Most of the remaining cases LDF cites also did not actually inquire into what influences were present within the advisory committees either, much less whether they were inappropriate. In *Commock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), the court addressed whether a member of an advisory committee could obtain access to information relied on by the Committee through Section 10(b), and whether that member should be able to amend and publish a dissent incorporating her views in light of that information. *Id.* at 354. In *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020), the court addressed only whether an inappropriate influence claim is justiciable in the first place, before remanding to the district court, *id.* at 18–20. The court decision in *Natural Resources Defense Council v. EPA*, 438 F. Supp. 3d 220 (S.D.N.Y. 2020), similarly did not examine whether there was any actual inappropriate influence, but rather concluded only that

13

a Section 5(b)(3) claim is justiciable, *id.* at 229–30.  Defendants acknowledge that there is some language in those decisions that suggests Section 5(b)(3) requires more than "procedures." However, those courts were not called on to address that question.  And the plain language of the statute supports Defendants' position.  Furthermore, while the Fifth Circuit in *Cargill, Inc. v. United States*, 173 F.3d 323 (5th Cir. 1999), did substantively examine the influences on the relevant advisory committee, *id.* at 339, one can hardly imagine that it would have done so if the government had already admitted a violation of Section 5(b)(3) in that case, as Defendants have done here.

Nothing in the legislative history LDF cites supports its position that it should be able to drag out its claim either.  Even a passing glance at the portion of the House Report that that refers to "surreptitious use of advisory committees" reveals that the statement addressed FACA's public information requirements in Section 10(b), not Section 5(b)(3).  H.R. Rep. No. 92-1017 (1972), 1972 U.S.C.C.A.N. 3491, 3500.  And the portion of the House Report that does address Section 5(b)(3) (which was Section 4(b)(3) of the statute at the time) merely reiterates that advisory committees should be created with "appropriate provision to assure" against inappropriate influence.  *Id.* at 3496.  Nor does the language LDF cites from *Commock* suggest that Section 5(b)(3) requires anything more than it says on its face.  *See* 180 F.3d at 284 (describing the general purposes that motivated Congress to enact FACA).

In any event—far from rendering Section 5(b)(3) a "paper tiger," Opp'n at 11, FACA's purposes would be achieved by a declaration from this Court that Defendants violated that provision, particularly given that such a declaration would be cumulative of the remedies the Court has already ordered.  *Cf.* Nov. 2 Mem. Op. at 8 (explaining that "invoking advisory committee recommendations lends 'political legitimacy,'" and that "[a] conspicuous disclaimer on the

Commission's report will qualify that legitimacy by ensuring that everyone who views the report

learns it was produced unlawfully by a non-representative body") (citation omitted).

**III.   IF LDF'S SECTION 5(b)(3) CLAIM GOES FORWARD, THE COURT SHOULD CONDUCT AN ARBITRARY-AND-CAPRICIOUS REVIEW LIMITED TO THE ADMINISTRATIVE RECORD.**

Even if the Court were to determine that LDF's Section 5(b)(3) claim remains justiciable,

and that more than a declaratory judgment in LDF favor would be appropriate, the Court should

still reject LDF's request for discovery.

It is well established that FACA does not provide a private right of action.  *See, e.g.*,

*Judicial Watch v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 29 (D.D.C. 2010).  It is equally

clear, moreover, that the obligations in Section 5(b)(3) apply only to the Attorney General and the

Department of Justice, which established the Commission.  *See* 5 U.S.C. app. 2 § 5(c) ("To the

extent they are applicable, the guidelines set out in subsection (b) of this section shall be followed

by the President, agency heads, or other Federal officials in *creating* an advisory committee."

(emphasis added)).  Accordingly, any further review by the Court of LDF's Section 5(b)(3) claim

must proceed under the APA, which would allow the Court to evaluate whether the agency action

was arbitrary and capricious, or contrary to law.  *See, e.g.*, *Union of Concerned Scientists*, 954

F.3d at 17 ("FACA contains no private right action.  The APA, however, generally provides a

vehicle for reviewing agency decisions that are alleged to violate federal law."); *see also Telecom*

*Research & Action Ctr. v. FCC*, 750 F.2d 70, 78 (D.C. Cir. 1984) ("Mandamus is an extraordinary

remedy that is not available when review by other means is possible.").

As this Court is well aware, on APA review, discovery is generally not available, and the

Court's inquiry should be limited to an administrative record crated by the agency.  *See Fla. Power*

*& Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985); *see also, e.g.*, *Damus v. Nielsen*, Civil Action

No. 18-578 (JEB), 2019 WL 1003440, *4 (D.D.C. Feb. 28, 2019) ("The general rule, of course is

15

that discovery is not available in an APA case—such cases are litigated on the basis of the administrative record.") (citing *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011)).  Here, because the Commission's establishing documents are public and have been submitted in this case, and show that it was not established with the required provisions under Section 5(b)(3), the Court already has all of the record materials available to enter judgment in LDF's favor on its Section 5(b)(3) claim.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully ask the Court to dismiss LDF's claim brought under FACA Section 5(b)(3) in Count I of the Amended Complaint or, alternatively, to enter judgment on that claim.

Dated:  January 8, 2021

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0878
Email: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*