# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

|  |  |
|---|---|
| NATIONAL LEGAL DEFENSE & EDUCATIONAL FUND, INC., | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| JEFFREY A. ROSEN, in his official capacity as Acting Attorney General of the United States, *et al.*, | ) ) ) ) |
| *Defendants.* | ) ) ) |

Case No. 1:20-cv-1132-JDB

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................. 7

I.      DEFENDANTS HAVE SATISFIED THEIR OBLIGATIONS UNDER FACA
        SECTION 10(b). ............................................................................................... 7

II.     THE COURT SHOULD NOT REQUIRE PRODUCTION OF WORKING
        GROUP MATERIALS.. .................................................................................... 14

        A.      LDF Has Not Properly Alleged that the Commission's Working Groups
                 Were Themselves Subject to FACA.. ................................................... 14

        B.      The Working Groups Were Not Advisory Committees Subject to FACA.......... 16

III.    IF THE COURT IS INCLINED TO GRANT PLAINTIFFS' MOTION AND
        ORDER THE PRODUCTION OF DOCUMENTS, IT SHOULD STAY THE
        ORDER SO THAT THE GOVERNMENT MAY CONSIDER APPEAL. ..................... 21

CONCLUSION ............................................................................................................. 23

i

## INTRODUCTION

Defendants respectfully ask that the Court deny LDF's motion to compel.  Section 10(b) requires the public disclosure of documents "made available to or prepared for or by" an "advisory committee."  5 U.S.C. app. 2 § 10(b).  Consistent with the plain language of Section 10(b)—and with the Department's long-standing interpretation of that provision—Defendants have released publicly all documents that were "made available to or prepared by" the Commission as a whole. Those documents are voluminous, and they provide a clear picture of the Commission's activities and the materials that formed the basis for the Commission's recommendations.  Indeed, they include far more than what advisory committees subject to FACA typically make available to the public.

LDF contends that that Section 10(b) requires much more, including materials considered by individual Commissioners that were not shared with the Commission as a whole.  But it is the Commission, not individual Commissioners, that is the "advisory committee" referenced in Section 10(b), because only the Commission as a whole, rather than individual Commissioners, were "established or utilized" by the Department.  *See Nat'l Anti-Hunger Coalition v. Executive Committee of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983, *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983).  Because Defendants have now released all materials "made available to or prepared for by" the Commission, Defendants have satisfied their obligations under Section 10(b), and the Court should deny LDF's motion.

The Court should also reject LDF's new claim that the Commission's fifteen working groups are independently "advisory committees" subject to Section 10(b).  That claim is unmoored from LDF's Amended Complaint, which alleges only that the Commission itself—not its subordinate working groups—was subject to FACA.  In order to insert its new allegations into this

1

litigation now, LDF must seek leave to amend.  Yet, even putting that dispositive issue aside, and assuming LDF's argument had any grounding in its pleadings, LDF still could not show that the working groups were advisory committees subject to FACA under the law of this Circuit.  Like individual Commissioners, the working groups did not directly advise the agency, but rather merely gathered information and provided drafts for the Commission's use, which is insufficient to make them independent advisory committees.

## BACKGROUND

On October 28, 2019, the President signed an Executive Order directing the Attorney General to establish the Commission.  *See* Executive Order 13896, 84 Fed. Reg. 58,595 (Nov. 1, 2019).  Consistent with the terms of the Executive Order, then–Attorney General Barr established the Commission on January 21, 2020.  *See* Memorandum from the Attorney General, The Commission on Law Enforcement and the Administration of Justice (Jan. 21, 2020), ECF No. 33-2 ("AG Mem.").  The Attorney General instructed the Commission's Chair to submit the Commission's report, "which shall consist of a summary of the Commission's actions to investigate the issues identified, an analysis of the information received by the Commission, and the recommendations of the Commissioners," "[n]o later than October 28, 2020."  *Id.* at 6.  The Executive Order directed that, within sixty days of receiving the Chair's report, the Attorney General would submit a report and recommendations to the President, following consultation with the Director of the Office of Management and Budget.  84 Fed. Reg. at 58,597.

The Attorney General also instructed that the Commission "shall be assisted in its deliberations by working groups that will provide advice, counsel, and support on the various law enforcement issues the Commission subjects to review and recommendation."  AG Mem. at 4.  As the Attorney General explained, "[a]fter consultation with the Commission, the Chair and Vice

Chair will establish the working groups and select their members." *Id.* The Attorney General further instructed that, "[e]xcept for Commissioners who serve on working groups," working group members were to "serve exclusively in a consultative capacity." *Id.*

LDF filed this action on April 30, 2020. *See* Compl., ECF No. 1. Count I of LDF's Amended Complaint alleged that the Commission violated FACA Section 5(b)(2), which requires that the membership of an advisory committee "be fairly balanced in terms of the points of view represented and the functions to be performed," 5 U.S.C. app. 2 § 5(b)(2), and Section 5(b)(3), which requires that legislation or executive branch documents establishing advisory committees "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but instead will be the result of the advisory committee's independent judgment," *id.* § 5(b)(3); *see also id.* § 5(c). Count II alleged that the Commission failed to file a charter in violation of Section 9(c). Count III alleged that the Commission had not made its hearings open to the public as required by Section 10(a)(1), published timely notice of each meeting in the Federal Register as required by Section 10(a)(2), or made its records available for public inspection as required by Section 10(b). Count IV incorporated LDF's fair balance and public records claims against the Attorney General and DOJ, respectively, and also alleged that the Attorney General failed to appoint a designated federal officer for the Commission in violation of Section 10(e). And Count V alleged that LDF was entitled to a declaration of all the foregoing. *See* Am. Compl. ¶¶ 172–216, ECF No. 26.

As for remedies, LDF sought a declaration that (1) the Commission is an advisory committee subject to the requirements of FACA, (2) Defendants have violated FACA, and (3) the Commission "is not properly constituted and that any report or recommendation does not reflect

the views of a lawfully constituted advisory committee." *Id.*, Prayer for Relief.  LDF also asked the Court to enjoin Commissioners Keith and Sullivan and the Commission, and all of its working groups, "from holding further meetings, sessions, or hearings, or conducting any official business whatsoever on behalf of the Commission." *Id.*  LDF further sought an injunction against the Attorney General, the Department of Justice, and the Commission "from submitting, accepting, publishing employing, or relying upon any report or recommendations produced by the [Commission] for any official purpose whatsoever, directly or indirectly." *Id.*

LDF moved for summary judgment on May 28, 2020 on its claims that Defendants violated FACA by failing to (1) ensure fairly balanced membership of the Commission, (2) file a charter with the required entities, (3) appoint a designated federal officer, and (4) provide timely notice of meetings in the Federal Register.  *See* Mem. of Law in Supp. of Pl.'s Mot. for Summ. J., ECF No. 25.  LDF did not move for summary judgment on its claims under FACA Section 5(b)(3) or Section 10(b).  Defendants opposed LDF's motion and cross moved to dismiss and/or for summary judgment.  *See* Mem. of Law in Supp. of Defs.' MTD and/or MSJ, ECF No. 33-1.

On October 1, 2020, the Court granted LDF's motion and denied Defendants' motion.  The Court concluded that LDF had standing to pursue its claims under Section 5(b)(2), Section 9(c), and Section 10(e), and that LDF's claims under Section 5(b)(2) and Section 5(b)(3) were justiciable.  Mem. Op. at 13–29, ECF No. 45.  The Court also determined that the Commission was subject to FACA.  *Id.* at 29–39.  Accordingly, the Court declared that the Commission violated FACA by failing to file a charter with the necessary entities, and by failing to provide timely notice of each meeting in the Federal Register, and that the Attorney General violated FACA by failing to select a designated federal officer for the Commission and by failing to ensure the Commission's

membership is fairly balanced in terms of the points of view represented and the functions to be performed.  Order at 3, ECF No. 44.

After further briefing on remedies, the Court issued a superseding remedial order on November 2, 2020.  The Court denied LDF's request for "complete 'use injunction'" that would prohibit Defendants from releasing or using the Commission's recommendations until the Commission complies with FACA.  Mem. Op. at 2, 9–11, ECF No. 54.  However, the Court again declared that the Commission was subject to FACA and that the Commission and the Attorney General had violated the statute.  Order at 2, ECF No. 53.  The Court enjoined Defendants from "publishing, releasing, or transmitting any unrestricted copy of all, or a portion, of any report produced by the Commission, unless Defendants comply with specified FACA provisions.  *Id.* at 2–3.  The Court further ordered that, "if defendants publish, release, or transmit any copy of all, or a portion, of the report produced by the Commission (or refer to the Commission's recommendations) . . . without first satisfying the requirements of FACA as detailed" in the order, then Defendants must include a specified disclaimer near the beginning of the report or reference. *Id.* at 3–4.

As directed by the Court, the parties submitted a joint status report on November 16, 2020 addressing compliance with the Court's remedial order and proposals for further proceedings concerning LDF's claims that were not resolved on summary judgment—*i.e.*, LDF's claims under Section 5(b)(3) and Section 10(b).  *See* Joint Status Report, ECF No. 55 ("JSR").  On November 23, 2020, the Court ordered that, "prior to releasing the Commission's report and by not later than November 25, 2020," Defendants release "(1) any records (including transcripts of the June 16, 2020 meeting between Attorney General William P. Barr and the Commission that are covered by 5 U.S.C. app. 2 § 10(b); and (2) the most recent draft of the Commission's report covered by

§ 10(b)."  Order at 1–2, ECF No. 56.  The Court further ordered that, by December 4, 2020, Defendants shall "(1) make an initial public release of other materials covered by § 10(b); (2) provide plaintiff an estimate of the volume of remaining materials that are subject to disclosure under FACA and a proposed schedule for releasing those materials; and (3) provide plaintiff a description of any categories of documents, including working group documents, that defendants possess but contend are not subject to disclosure under § 10(b)."  *Id.* at 2.  The Court also directed the parties to submit a joint status report that details progress toward completing the release of documents, identifies any areas of disagreement regarding what documents are covered by Section 10(b), and includes proposal for resolving any areas of dispute.  *Id.* at 2.

Over the course of several weeks, the parties attempted in good faith to resolve their dispute over LDF's Section 10(b) claim.[1]  However, as the parties reported to the Court on December 23, 2020, they reached an impasse, *see* Joint Status Report, ECF No. 60, and, accordingly, the Court set a briefing schedule on LDF's motion to compel additional materials LDF contends are subject to Section 10(b).

As relevant to LDF's motion to compel, and as discussed further below, Defendants have completed their production of all materials that are subject to Section 10(b).  Specifically, Defendants have conducted a search and publicly released all materials that were distributed to the Commission as a whole.  *See* Fourth Declaration of Dean Kueter ¶¶ 4–5 ("Fourth Kueter Decl.") (attached as Exhibit A).  Those materials include among other things, all of the Commission's founding documents, hearing transcripts and audio recordings, hearing agendas, bios and

---

[1]  In the meantime, the Attorney General submitted the Commission's final report, consistent with the terms of the Executive Order and this Court's November 23 remedial order. *See* President's Commission on Law Enforcement and the Administration of Justice, Final Report (Dec. 2020), https://www.justice.gov/file/1347866/download ("Final Report").

testimony of witnesses at Commission hearings, hearing summaries, draft portions of report chapters distributed to the Commission, decision matrices to resolve comments on drafts submitted by individual Commissioners, agendas for telephonic meetings to discuss report chapters, and proposed questions for Commissioners to pose to witnesses at hearings.  *Id.* ¶ 4.[2]

## ARGUMENT

## I.   DEFENDANTS HAVE SATISFIED THEIR OBLIGATIONS UNDER FACA SECTION 10(b).

Section 10(b) requires agencies to "make available for public inspection" the "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee." 5 U.S.C. app. 2 § 10(b).  Defendants have satisfied that requirement.

Even before this Court concluded that the Commission was subject to FACA, Defendants had already made publicly available, among other things, all of the Commission's founding documents, hearing transcripts and audio recordings, hearing agendas, bios and testimony of witnesses at Commission hearings, and hearing summaries.  *See* Fourth Kueter Decl. ¶ 3.  Then, after this Court concluded that FACA's requirements applied to the Commission, Defendants searched for and released all additional materials that were considered by the full Commission.  *Id.* ¶¶ 4–5.  Those additional materials consist of—again, among other things—all draft portions of report chapters distributed to the Commission, decision matrices to resolve comments on drafts submitted by individual Commissioners, agendas for telephonic meetings to discuss report chapters, proposed questions for Commissioners to pose to witnesses at hearings, and

---

[2]  The materials disclosed under Section 10(b) are publicly posted here:   https://www.justice.gov/ag/presidential-commission-law-enforcement-and-administration-justice.

administrative emails related to Commission business. *Id.* ¶ 4.[3]  Together, the materials released

to the public include everything Defendants have located that the Commission as a whole

considered—and, necessarily, everything "prepared for" the "advisory committee" consistent with

the longstanding interpretation of Section 10(b) in this District.

The touchpoint decision on the scope FACA is *National Anti-Hunger Coalition v.*

*Executive Committee of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524

(D.D.C. 1983), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983), where the court considered whether FACA's

disclosure requirement applied to entities ("task forces" in that case) that did "not provide advice

directly to the President or any agency." *Id.* at 529.  The court acknowledged that "[t]here is no

question" that the task forces in that case were "intimately involved in the gathering of information

about federal programs and formulation of possible recommendations for consideration of the

Committee." *Id.*  But that was "not enough" to make them subject to FACA, because the task

forces were "utilized by and provide[d] advice to only the Executive Committee, which then

provide[d] advice to the President or agency." *Id.*  Accordingly, the court rejected the plaintiffs'

claim that FACA's procedural requirements applied to the task forces. *Id.* at 530.

Based in part on the analysis in *National Anti-Hunger Coalition*, "as well as an exhaustive

survey of the FACA legislative history," the Department of Justice Office of Legal Counsel

("OLC") concluded that FACA's public disclosure requirement is narrower than LDF would have

this Court believe.  In a published opinion, OLC advised that, "FACA compels disclosure [only]

of a limited subset of information, namely the material used by the advisory committee."

Disclosure of Advisory Committee Deliberative Materials, 12 U.S. Op. Off. Legal Counsel 73, 76

---

[3]  Although Defendants previously informed LDF that they intended to withhold
administrative emails sent to the full Commission, *see* ECF No. 58, Defendants have since released
all such documents publicly.  *See* Fourth Kueter Decl. ¶ 4.

(1988).  OLC explained that "[t]he courts and this Office have construed the concept of advisory committees established or utilized by the President or an agency to preclude section 10(b)'s application to the work prepared by a staff member of an advisory committee . . . so long as the material was not used by the committee *as a whole*."  *Id.* at 75 (emphasis added).  That interpretation is consistent with the language of Section 10(b)—which requires that material "made available to or prepared for or by each *advisory committee*," as opposed to individual committee members or staff, be made publicly available.  5 U.S.C. app. 2 § 10(b) (emphasis added.  It is also an eminently reasonable interpretation of the statute, in that it allows the public access to the information that the "advisory committee" considered when making its recommendations, consistent with FACA's purpose.  *See Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 446 (1989) (indicating that Congress enacted FACA in part "to ensure that the public could remain apprised of the existence, activities and cost of advisory committees").

LDF rejects this analysis and contends that it has been supplanted by *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999).  *See* Mem. of Law in Supp. of Pl.'s Mot. to Compel at 5–11, ECF No. 61-1 ("Pl.'s Mem.").  Yet, LDF's argument stretches the analysis in *Cummock* much too far.  In that case, the issue before the D.C. Circuit was whether a *member* of an advisory committee could obtain access to "records, reports, and other documents" to which she was denied access, "thereby thwart[ing] her dissenting voice."  *Cummock*, 180 F.3d at 289.  Indeed, the court's analysis in *Cummock* was based largely on the plaintiff-member's ability to "fully participate" in the advisory committee's work, "in order to give meaning to FACA's fair balance and independent judgment provisions."  *Id.* at 291–92.  Contrary to LDF's suggestion, the D.C. Circuit did not opine on the scope of Section 10(b).  It merely rejected the government's argument in that case that the plaintiff-member "had no right under FACA to obtain documents that were exempt from public

disclosure under FACA," *id.* at 290, and held that the Commission could not deny her access to information that it reviewed and relied upon in formulating its recommendations," *id.* at 292. Here, of course, there is no Commissioner who is a litigant, so the concerns presented in *Cummock* are not present in this case.[4]

LDF also cites *Dunlap v. Presidential Advisory Committee v. Election Integrity*, 286 F. Supp. 3d 96 (D.D.C. 2017), to suggest that Defendants' reading of Section 10(b) is "outdated" in light of *Cummock*. *See* Pl.'s Mem. at 8–9. But there too the court addressed only whether a plaintiff-*member* of an advisory committee was entitled to additional documents beyond those considered by the advisory committee as a whole, "so that he can contribute along the way in shaping the ultimate recommendations of the Commission." *Id.* at 107. The court did not address whether—contrary to the decision in *National Anti-Hunger Coalition* and OLC's published decision—the *public* has a right to materials not considered by an advisory committee as a whole.

LDF also ignores the subsequent decisions in the *Dunlap* litigation from the D.C. Circuit and Judge Kollar-Kotelly. On appeal, the D.C. Circuit explained that the decision in *Cummock* was based on "FACA's admonition that advisory committees should be 'fairly balanced' and exercise independent judgment free from inappropriate influence," which underscores that *Cummock*'s reasoning was limited to addressing the rights of advisory-committee members. *Dunlap v. Presidential Advisory Commission on Election Integrity*, 944 F.3d 945, 950 (D.C. Cir.

---

[4] In a footnote, LDF cites *Judicial Watch, Inc. v. National Energy Policy Development Group*, 219 F. Supp. 2d 20 (D.D.C. 2002), to suggest that *Cummock* forecloses Defendants' interpretation of Section 10(b). *See* Pl.'s Mem. at 8 n.2. The only relevant question in *Judicial Watch*, however, was whether a claim for documents under Section 10(b) was "moot beyond the life of the committee." 219 F. Supp. 2d at 31–32. And the court concluded, based on *Cummock*, that the public has the right "to documents after the committee has disbanded." *Id.* at 32. Nothing in *Judicial Watch* supports LDF's argument that it is entitled to materials not considered by a full advisory committee.

2019) (alterations and citations omitted).  Then, on remand, the district court rejected the plaintiff-member's request for certain categories of documents, explaining that "the reasoning in *National Anti-Hunger Coalition* is persuasive and still applies" even as to a committee member.  *Dunlap v. Presidential Advisory Commission on Election Integrity*, 464 F. Supp. 3d 247, 261 (D.D.C. 2020).

At bottom, LDF fails to establish Defendants are required to release anything more than they have already made publicly available.  The *National Anti-Hunger Coalition* and OLC decisions demonstrate that advisory-committee materials generally are not subject to Section 10(b) unless the materials generated are provided to the entirety of an advisory committee's membership to inform the committee's advice and recommendations to the President or an agency.  And, although those authorities predate *Cummock*, their analysis remains sound and has not been superceded.  *See, e.g.*, *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 228 & n.6 (D.D.C. 2017) (distinguishing *National Anti-Hunger Coalition* without suggesting that the decision was incorrect); *Dunlap*, 464 F. Supp. 3d 247 (relying on *National Anti-Hunger Coalition* to deny the plaintiff's motion to compel).

The conclusion that materials not shared with the full Commission are not required to be disclosed also accords with the purpose of FACA.  While FACA was designed to increase openness—and, as discussed, the Commission has already released information that is more than sufficient to provide transparency into its workings—it was also intended to address the problem of "advisory bodies that are duplicative, ineffective and costly."  S. Rep. No. 92-1098, at 5 (1972).  The Supreme Court has recognized that, in interpreting FACA's reach, courts must be mindful of the "specific ills" the Act was intended to remedy, "above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals."  *Pub. Citizen*, 491 U.S. at 453.  Accordingly, the Supreme Court has rejected a "literal reading" of the statute that would broadly

subject materials and meetings to FACA's scope.  *Id.* at 454–55; *see also id.* at 463–64 ("A literalistic reading [of FACA] would catch far more groups and consulting arrangements than Congress could conceivably have intended.").  Requiring materials to be released that were not considered by the Commission as a whole, even if they might in some sense be "prepared" to benefit the Commission's work, would be inconsistent with this command.

LDF's broad reading of Section 10(b) would also make the statute's public disclosure requirement unworkable as a practical matter—creating essentially a separate Freedom of Information Act to cover every document arguably "prepared for" by an advisory committee's staff for any individual committee member, even if the "advisory committee" itself did not rely on that material when providing advice to the President or the agency.  5 U.S.C. app. 2 § 10(b).  The unworkability of LDF's interpretation is particularly apparent given that materials subject to Section 10(b) must be affirmatively disclosed.  As the D.C. Circuit has explained, "the Government is required to make available all nonexempt section 10(b) materials regardless of whether a FOIA request was filed."  *Food Chem. News v. Dep't of Health & Human Services*, 980 F.2d 1468, 1472 (D.C. Cir. 1992)  If Section 10(b) were to require all material be disclosed that could arguably be construed as "prepared for" an individual advisory committee member—even if it was never considered by the advisory committee as a whole—advisory committees would be endlessly disclosing interim materials, creating precisely the type of malaise that concerned the *National Anti-Hunger Coalition* court.  *See* 557 F. Supp. at 529 ("[S]urely Congress did not contemplate that interested parties like the plaintiffs should have access to every paper through

which recommendations are evolved . . . .").  That cannot be what Congress intended, and it would go far beyond the purpose of Section 10(b).[5]

Defendants' interpretation of Section 10(b) is also consistent with the operation of FACA advisory committees more broadly, which confirms the general practice of not releasing publicly materials not before the full advisory committee.  These practices of other advisory committees are informative for the Court's consideration of the scope of Section 10(b)'s requirements.  *See, e.g.*, *Am. Methyl Corp. v. EPA*, 749 F.2d 826, 837 (D.C. Cir. 1984) (considering "administrative practice" of agency in statutory interpretation analysis); *Tenn. Valley Auth. v. Whitman*, 336 F.3d 1236, 1241 (11th Cir. 2003) (same).

Based on a review of publicly available information, it is apparent that other advisory committees, from multiple administrations, have apparently taken a similar interpretation of Section 10(b) as Defendants do here—and, indeed, have released far less information in many instances.  As detailed further in Exhibit B, which identifies materials posted from a sample of advisory committees, federal agencies hosting advisory committees typically post only committees' founding documents, materials presented at meetings, and final reports—all of which (and more) the Commission has released to the public.  Even the General Services Administration, which issues government-wide regulations interpreting FACA, does not make available as much information as Defendants have posted publicly regarding the Commission.  *See* Office of Federal High-Performance Buildings, Green Building Advisory Committee, https://www.gsa.gov/ governmentwide-initiatives/federal-highperformance-buildings/policy/green-building-advisory-

---

[5] Notably, rejecting LDF's overbroad reading of Section 10(b) would not mean that other materials not covered by that provision would be necessarily be unavailable to the public.  If an advisory committee is housed in an agency, as many of the Commissioners and the Commission's staff was, documents can be requested pursuant to the Freedom of Information Act.

committee (posting documents related to "Advisory Committee Meetings" and "Advice Letters and Resolutions").  While agency practice may not determinatively establish what materials are not covered by FACA Section 10(b), the apparently overwhelming weight of authority by the entities subject to FACA does suggest that LDF's interpretation is overbroad and that Defendants have met their obligations under Section 10(b).

Here, Defendants have already disclosed publicly everything prepared for the relevant "advisory committee."  Yet, even if there could be any doubt about on what shaped the Commission's work, the final Commission report itself meticulously details the testimony and sources that formed the basis of its conclusions and recommendations in nearly 800 footnotes, as well as in lengthy appendices that detail, among other things, the methodology employed by the Commission to conduct its work, a detailed timeline of hearings, and the individuals and organizations that submitted public comments and/or testimony for the Commission's consideration.  *See generally* Final Report.  There is no plausible claim, therefore, that any further disclosures are necessary under Section 10(b) to advance FACA's purpose of transparency, and Defendants respectfully ask that the Court deny LDF's motion to compel.

## II.   THE COURT SHOULD NOT REQUIRE PRODUCTION OF WORKING GROUP MATERIALS.

### A.   LDF Has Not Properly Alleged that the Commission's Working Groups Were Themselves Subject to FACA.

LDF now argues that Defendants are obligated to disclose materials "created by or prepared for" all of the Commission's fifteen working groups because—according to LDF—those working groups were themselves advisory committees subject to FACA.  *See* Pl.'s Mem. at 11–14.  The Court should reject LDF's argument out of hand, because it finds no basis in LDF's Amended Complaint.  *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement

of providing not only "fair notice" of the nature of the claim, but also 'grounds' on which the claim rests."); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").

From the outset of this litigation, LDF has alleged that FACA applied to *the Commission*, and it sought relief from this Court on that basis, while also distinguishing between the Commission and its working groups. *See* Am. Compl. ¶ 174 ("Because *the Commission* is a 'Commission . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government,' 5 U.S.C. app. 2 § 3(2), it is an 'advisory committee' as defined in FACA.") (emphasis added); *id.* ¶ 203 ("Defendants thus have a nondiscretionary duty to make all documents 'available to or prepared for or by' *the Commission*, including meeting agendas, witness boils, hearing transcripts, and record evidence, available to the public.") (emphasis added); *id.* ¶ 212 ("Defendant DOJ has failed to ensure that the documents made available to, or prepared for, or prepared by *the Commission* are available through its offices.") (emphasis added); *id.*, Prayer for Relief ¶ a (asking the Court to "[d]eclare that Defendant Presidential Commission on Law Enforcement and the Administration of Justice is an advisory committee subject to the requirements of the Federal Advisory Committee Act"); *see also id.* ¶ 34 ("Each of the 15 working groups focus on a specific law enforcement subject relevant to issue *for which the Commission* shall review and make recommendations.") (emphasis added).

At this point in the litigation—months after LDF filed its Amended Complaint, and after the Court has already considered the parties' cross-motions and decided that the Commission was subject to FACA—LDF should not be permitted to introduce what amounts to a new claim under

Section 10(b).  The proper way to have raised that claim would have been through a motion for leave to amend LDF's Amended Complaint, which would have provided Defendants the opportunity to respond in the ordinary course, including by filing a motion to dismiss.  *See* Fed. R. Civ. P. 12; Fed. R. Civ. P. 15(a)(c).  Such a motion would be untimely and unduly prejudicial to Defendants at this late stage of the litigation.  But, in any event, as things stand based on the allegations in the Amended Complaint, LDF has no basis to argue that FACA applied to the Commission's working groups independently.  *See Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 32 (D.D.C. 2010) (citing the plaintiffs' complaint for the conclusion that the plaintiffs had not adequately alleged that the defendants directly formed or "established" the alleged advisory committee, or that the defendants exercised control over it).  *Compare Tidwell*, 239 F. Supp. 3d at 229 (concluding that the plaintiff had pleaded a viable claim under the APA for violation of section 10(b) "as the Complaint plausibly alleges that the Strategy Team was a FACA advisory committee").

Because LDF's Amended Complaint does not allege that the Commission's working groups were subject to FACA, it cannot through its motion to compel to attempt to force the disclosure of additional material pursuant to Section 10(b).

### B.    The Working Groups Were Not Advisory Committees Subject to FACA.

Even if the Court were to consider LDF's eleventh-hour argument that the Commission's working groups were independently subject to FACA, LDF's argument fails on the merits.  As relevant here, Section 3 of FACA defines the term "advisory committee" as any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is . . . (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government."  5 U.S.C. app. 2 § 3(2).

LDF's argument that the working groups were themselves "advisory committees" subject to FACA is directly contrary to the court's holding in *National Anti-Hunger Coalition*.   As discussed above, the court in that case rejected the claim that so-called "task forces" were subject to FACA.   The court explained that, "[t]here is no question that the task forces are intimately involved in the gathering of information about federal programs and the formulation of possible recommendations for consideration of the Committee."   *Nat'l Anti-Hunger Coalition*, 557 F. Supp. at 529.   But the court concluded that was not enough, because the task forces "[did] not directly advise the President or any agency, but rather provid[ed] information and recommendation for consideration to the Committee."   *Id*.

Just like the task forces in *National Anti-Hunger Coalition*, the Commission's working groups did not "directly advise the President or any agency."   *Id.*   Indeed, the Attorney General's memorandum establishing the Commission states clearly that the "Commission shall be *assisted* in its deliberations by working groups that will provide *advice, counsel, and su*pport on the various law enforcement issues the Commission subjects to review and recommendations."   AG Memo. at 4.   And, except for Commissioners who may serve on working groups, "working group members serve exclusively in a consultative capacity.   *Id.*   The working groups were tasked with "focusing on a specific law enforcement subject relevant to the issues *for which the Commission* shall review and make recommendations."   *Id.* (emphasis added).   These "staff functions" carried out by the working groups (*i.e.*, information gathering, drafting) do not render them subject to FACA under the reasoning of *National Anti-Hunger Coalition*, even if they played an important role in the Commission's work.   557 F. Supp. at 529.

LDF attempts to avoid that conclusion, and to distinguish *National Anti-Hunger Coalition*, by claiming that the Commission's working groups were different, because they were

"established" by the Department.  Pl.'s Mem. at 11–12.  To start, that is incorrect as a factual matter.  As explained in the Attorney General's memorandum establishing the Commission, the authority to select working group members was vested with the Chair and Vice Chair of the Commission, "[a]fter consultation with the Commission."  AG Memo. at 4.  But, even putting that aside, LDF misses the point of *National Anti-Hunger Coalition*, which focused on the question of whether the relevant entity "directly" provided recommendations to the President or an agency.  557 F. Supp. at 529.  Here, it was *the Commission* that provided recommendations to the Attorney General, not the working groups.  *See* 84 Fed. Reg. at 58,595–96 ("The Commission shall study issues related to law enforcement and the administration of justice and make recommendations to the Attorney General, . . . ."); AG Mem. at 2 ("The Commission shall undertake its duties and functions set forth in this Order.").

    None of the other cases on which LDF relies supports its claim that the working groups were subject to FACA.  In *Judicial Watch, Inc. v. U.S. Department of Commerce*, 736 F. Supp. 2d 24 (D.D.C. 2010), the court concluded that the plaintiffs had not alleged in their complaint facts sufficient to establish that council in question, the North American Competitive Council, was either established by or utilized by the defendants within the meaning of FACA Section 3(2).  *Id.* at 31–32.  The same is true here with respect to the working groups, of course, given that, as discussed above, LDF's Amended Complaint does not allege that the working groups were subject to FACA *at all*—much less provide sufficient allegations to support that proposition.  *See supra* Part II.A.  Moreover, in *Heartwood, Inc. v. U.S. Forest Service*, 431 F. Supp. 2d 28 (D.D.C. 2006), upon which LDF also relies, the relevant entity, the Hoosier-Shawnee Ecological Analysis Committee, itself provided the agency with draft ecological assessments "to inform the [United

States Forest Service's] policy-making—which is unlike the working groups here, whose work merely informed the recommendations of the Commission. *See id.* at 35.

LDF also argues that the working groups are advisory committees because they were "utilized" by the government. Pl.'s Mem. at 13–14. But LDF's argument is inconsistent with the D.C. Circuit's instruction that the government "utilizes" an advisory committee only when it exercises "something along the lines of actual management or control" over that committee. *See Wash. Legal Found. v. U.S. Sentencing Com'n*, 17 F.3d 1446, 1450–51 (D.C. Cir. 1994). Nothing in LDF's Amended Complaint even implies that the government exercised that sort of control over the working groups. Furthermore, the only case LDF cites to support its utilization argument is the unpublished opinion *Lorillard, Inc. v. U.S. Food & Drug Administration*, Civ. No. 11-40, 2012 WL 3542228 (D.D.C. Aug. 1, 2012), which did not definitively determine that the Menthol Report Subcommittee and its writing group were advisory committees under FACA. Rather, the court in that case merely denied the government's motion to dismiss "based on the facts currently in the record." *Id.* at *3. Even putting that aside, however, the court found it significant that those entities "consisted *only*" of members of the Tobacco Products Scientific Advisory Committee, which the government did not dispute was subject to FACA. *Id.* at *3 & n.5. Thus, the subcommittee and its writing group were unlike the working groups here, which included non-Commission members and which merely provided "advice, counsel, and support" to the Commission, which was ultimately responsible for making independent recommendations to the agency. AG Memo. at 4.

Finally, LDF fares no better by relying on the D.C. Circuit's decision in *Association of American Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898 (D.C. Cir. 1993), and, indeed, LDF appears to miss the point of that decision, which strongly supports Defendants' position. In that case, the district court had concluded that the Task Force on National Health Care Reform

19

("Task Force") was subject to FACA based on its conclusion that then–First Lady Clinton "was not an officer or employee of the federal government merely by virtue of her status as 'First Lady,'" meaning that the Task Force did not qualify for the intra-government exception to FACA. *Id.* at 901–02. Accordingly, the district court held that the Task Force was generally required to comply with FACA. *Id.* at 902. The plaintiffs in that case had also argued that a working group of the Task Force was also subject to FACA, but based on its conclusion that the Task Force was required to meet FACA's requirements, and relying on *National Anti-Hunger Coalition*, the district court concluded that the statute did not cover the "subordinate body" (*i.e.*, the working group). *Id.*

On appeal, the D.C. Circuit disagreed with the district court's conclusion that the Task Force was not subject to FACA, because it read the phrase "full-time officer or employee of the government" in FACA to apply to Ms. Clinton. *Id.* at 911. The court then went on to review the district court's decision that the working group was not subject to FACA in light of that holding. The D.C. Circuit took pains to explain that it "underst[ood] why the district court, believing the Task Force covered by FACA, thought it unnecessary to put the working group under further scrutiny." *Id.* at 916. However, because the D.C. Circuit determined that the Task Force "is a committee wholly composed of government officials," and therefore not subject to FACA, it concluded that the status of the working groups was unlike the situation in *National Anti-Hunger Coalition.* The court explained as follows:

> In contrast to the situation here, in [*National*] *Anti-Hunger* [*Coalition*] the top levels of the *outside* advisory groups were covered by FACA—both the executive committee of 150 and the subcommittee of 30. In that scenario, there is less reason to focus on subordinate advisers or consultants who are presumably under the control of the superior groups. It is the superior groups, after all, that will give the advice to the government, and which, in accordance with the statute, must be "reasonably" balanced. But when the Task Force itself is considered part of the government—due to the government officials exemption—we must consider more closely FACA's relevance to the working group. For it is the working group now that is the point of contact between the public and the government. The district

court's conclusion that the working group could be disregarded as staff depended on its determination that the Task Force was covered by FACA.  Our disagreement with the district court on the latter issue therefore compels a different analysis of the working group's status.

*Id.* at 913.

This case presents the opposite situation as in *Association of American Physicians & Surgeons* and illustrates precisely why the reasoning in *National Anti-Hunger Coalition* applies to the Commission's working groups.  This Court has concluded that FACA applies to the Commission, which is the body that provided recommendations to the Attorney General, *see* AG Mem. at 4, and is therefore the "superior group[]" that provides advice to the government according to the D.C. Circuit's analysis, *Assoc. of Am. Physicians & Surgeons*, 997 F.2d at 913. The working groups, by contrast, served in a purely consultative capacity and were subordinate to the Commission.  Based on the D.C. Circuit's analysis, LDF cannot prevail on its argument that the working groups were themselves advisory committees.

III.    **IF THE COURT IS INCLINED TO GRANT PLAINTIFFS' MOTION AND ORDER THE PRODUCTION OF DOCUMENTS, IT SHOULD STAY THE ORDER SO THAT THE GOVERNMENT MAY CONSIDER APPEAL.**

Defendants have fulfilled their obligations under Section 10(b) for the reasons discussed above.  However, if the Court disagrees and is inclined to order Defendants to produce additional materials, Defendants respectfully ask that the Court stay any order to compel disclosure for at least sixty days to allow the Solicitor General an opportunity to consider whether to appeal.

A defendant's right to appeal a disclosure order "will become moot" and thus "entirely destroy [defendant's] rights to secure meaningful review" unless a stay of disclosure is granted. *Providence Journal v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979).  As the D.C. Circuit has stated under analogous circumstances, "[d]isclosure followed by appeal . . . [is] obviously not adequate in [privilege] cases—the cat is out of the bag." *In re Papandreou*, 139

F.3d 247, 251 (D.C. Cir. 1998); *see also Providence Journal*, 595 F.2d at 890 ("Once the documents are surrendered pursuant to the [ ] court's order, confidentially will be lost for all time. The status quo could never be restored.").  For that reason, "stays are routinely granted in FOIA cases." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C 2002); *accord People for the Am. Way Found. v. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007).  The same rational would apply here if Defendants were ordered to disclose documents under Section 10(b).

Because of the clear irreparable harm to defendants facing disclosure orders, courts do not require such defendants to make a detailed showing of a likelihood of success on the merits. Instead, to justify a stay, a defendant need only show that its position has "potential merit." *Providence Journal*, 595 F.2d at 890.  As discussed herein, Defendants respectfully submit that their interpretation of Section 10(b) is correct.  However, even if the Court ultimately disagrees with Defendants' position, at a minimum, the government has raised important questions about the scope of Section 10(b), and it should be afforded sufficient time to determine whether to appeal any injunctive order requiring the disclosure of additional documents.

LDF, on the other hand, would not be harmed by a stay.  Granting a stay only "postpones the moment of disclosure assuming that [plaintiff] prevails by whatever time" it takes to resolve any potential appeal. *Providence Journal*, 595 F. 2d at 890.  Here in particular, there would be no harm caused by a stay.  The Commission's report has been issued, and, indeed, the Commission no longer exists.  Moreover, although LDF has asserted that it requires additional information to criticize the Commission work in the public forum, LDF already has ample "ammunition" in that respect based on the Court's existing declaration that the Commission did not comply with FACA; the Court's injunction requiring a disclaimer whenever the Commission's report or

recommendations; and the copious information regarding the Commission's operations that Defendants have already released publicly.

As such, if the Court is inclined to order the release of any additional materials, Defendants ask that they be given at least sixty days after the order before disclosure is due to give the Solicitor General adequate time to consider appeal, as provided by the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 4(a)(1)(B) (giving the United States 60 days for the date an order is issued to file a notice of appeal).

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should deny LDF's motion to compel.

Dated:  January 19, 2021                     Respectfully submitted,

JOHN V. COGHLAN
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0878
Email: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*