**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NAACP LEGAL DEFENSE &** **EDUCATIONAL FUND, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  20-1132 (JDB)** |
| **MONTY WILKINSON, in his official** **capacity as Acting Attorney General of the** **United States, et al.,** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

This Court previously granted plaintiff NAACP Legal Defense and Educational Fund's ("LDF") motion for summary judgment on several of its claims that defendants violated the Federal Advisory Committee Act ("FACA") in forming and operating the Presidential Commission on Law Enforcement and the Administration of Justice ("Commission").  Defendants now move to dismiss for lack of standing LDF's remaining claim that the Commission violated Section 5(b)(3) of FACA, which requires that the directive establishing an advisory committee "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest."  5 U.S.C. app. 2 § 5(b)(3).  In the alternative, defendants ask the Court to grant summary judgment to LDF—and forego discovery—on that claim based on defendants' admission that the documents establishing the Commission lacked <u>any</u> provisions aimed at preventing inappropriate influence.  LDF, on the other hand, has moved to compel defendants to publicly release documents that LDF claims are covered by FACA's public records provision, <u>id.</u> § 10(b), but that defendants believe are not subject to disclosure.  For the reasons stated below, the Court will enter summary

judgment in favor of LDF on its Section 5(b)(3) claim and order defendants to release some additional documents pursuant to Section 10(b).

## Background

The Court will assume familiarity with the basic facts of this case, which were summarized at length in the Court's opinion granting LDF's partial motion for summary judgment.  See NAACP Legal Def. & Educ. Fund, Inc. v. Barr ("NAACP I"), — F. Supp. 3d —, 2020 WL 5833866, at *1 (D.D.C. Oct. 1, 2020).  There, the Court held that the Commission is subject to FACA and that defendants violated FACA by failing to (1) ensure fairly balanced membership of the Commission, (2) file a charter with the required entities, (3) appoint a designated federal officer, and (4) provide timely notice of meetings in the Federal Register.  See id. at *17–18. Consequently, the Court issued a declaratory judgment and temporarily enjoined Commission proceedings and publication of any work product until defendants complied with FACA.  See Oct. 1, 2020 Order ("Oct. 1 Order") [ECF No. 44].  The Court also ordered the parties to submit proposed remedial orders regarding injunctive relief and any other appropriate relief.  Id.

After considering the parties' briefing on remedies, the Court issued a superseding remedial order.  See Nov. 2, 2020 Order ("Nov. 2 Order") [ECF No. 53].  In that order, the Court again declared that the Commission was subject to FACA and had violated several of its provisions.  Id. at 2.  Further, the Court permanently enjoined defendants from publishing any unrestricted copy of the Commission's report unless defendants first filed a charter, provided timely notice of future meetings in the Federal Register, selected a designated federal officer for the Commission, and took steps necessary to ensure the Commission's membership was fairly balanced.  Id. at 2–3.  And the Court ordered that if defendants published the report without satisfying those requirements,

2

then defendants must include the following statement near the beginning of the report, in at least

the same size print as the rest of the text:

> Although the Commission which prepared this Report was subject
> to the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app.
> 2, a United States District Court judge has found that the
> Department of Justice ("DOJ") and the Commission's officers
> violated FACA in forming and operating the Commission. In
> particular, DOJ and the Commission did not comply with FACA's
> requirements to ensure the Commission's membership is fairly
> balanced in terms of the points of view represented, file a charter,
> select a designated federal officer, or provide timely notice of
> meetings in the Federal Register. For additional detail, the
> remedial order of the United States District Court that issued this
> decision is attached to the Commission's Report.

Id. at 3–4.

On November 16, 2020, the parties submitted a joint status report addressing compliance

with the Court's remedial order and providing proposals for proceeding with LDF's claims that

were not resolved on summary judgment—namely, LDF's claims that defendants did not protect

the Commission from inappropriate influence as required by Section 5(b)(3) or make its records

available for public inspection as required by Section 10(b).  Joint Status Report [ECF No. 55].

Given the Court's conclusion that the Commission was subject to FACA, the parties agreed that

documents subject to Section 10(b) should be available for public inspection.  See id. at 5, 9.  As

to LDF's Section 5(b)(3) claim, defendants stated they would file a renewed motion to dismiss for

lack of standing.  Id. at 14.

The Court subsequently ordered defendants to begin releasing materials covered by Section

10(b) and set a briefing schedule for defendants' renewed motion to dismiss.  Nov. 23, 2020 Order

[ECF No. 56].  Defendants agreed to (and did) release all materials that were distributed to the full

Commission.  See Second Joint Status Report [ECF No. 58] at 3; Fourth Decl. of Dean M. Kueter,

Jr. [ECF No. 64-1] at 3.  But LDF sought additional documents, and the parties reached an impasse

over what types of records must be disclosed under Section 10(b).  See Third Joint Status Report [ECF No. 60].  In December 2020, Attorney General Barr published the Commission's final report, which included the disclaimer mandated by the Court's remedial order.  See U.S. Dep't of Justice, President's Commission on Law Enforcement and the Administration of Justice, Final Report (Dec. 2020), https://www.justice.gov/file/1347866/download ("Final Report").  The Commission's study has concluded.  See id. at iii.

Defendants have now moved to dismiss LDF's Section 5(b)(3) claim for lack of standing. Defs.' Renewed Partial Mot. to Dismiss [ECF No. 57].  If the Court declines to dismiss, defendants ask the Court to enter summary judgment in favor of LDF—without allowing discovery—based on defendants' admission that the Commission violated Section 5(b)(3).  See Mem. of P. & A. in Supp. of Defs.' Renewed Partial Mot. to Dismiss ("Mot. to Dismiss") [ECF No. 57-1] at 1.  In addition, LDF has moved to compel defendants to release additional documents pursuant to Section 10(b).  Pl.'s Mot. to Compel Defs. to Publicly Disclose Docs. Required by FACA [ECF No. 61].  Both motions are now fully briefed and ripe for consideration.

## Legal Standards

### I.   Defendants' Motion to Dismiss

To survive a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish the court's jurisdiction by a preponderance of the evidence.  Judicial Watch, Inc. v. Nat'l Archives & Records Admin., 845 F. Supp. 2d 288, 294 (D.D.C. 2012) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).  "In order to establish jurisdiction, a plaintiff must establish standing."  Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015).  The "plaintiff must demonstrate standing for each claim . . .

and for each form of relief that is sought." Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (quoting Davis v. FEC, 554 U.S. 724, 734 (2008)).

## II.     Defendants' Request in the Alternative for Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Anderson, 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.    Plaintiff's Motion to Compel

Section 10(b) of FACA provides that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist."  5 U.S.C. app. 2 § 10(b).  Unless a Freedom of Information Act ("FOIA") exception applies, the government must make these materials publicly available as a matter of course.  See Food Chem. News v. Dep't of Health & Human Servs., 980 F.2d 1468, 1469 (D.C. Cir. 1992) (holding that advisory committee records "must be available . . . before or on the date of the advisory committee meeting to which they apply"); 5 U.S.C. app. 2 § 10(b) (noting that FACA's disclosure requirement is "[s]ubject to section 552 of title 5, United States Code").  A request for documents pursuant to FACA survives

the termination of the advisory committee.  <u>Cummock v. Gore</u>, 180 F.3d 282, 292 (D.C. Cir. 1999);

<u>Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.</u>, 219 F. Supp. 2d 20, 30 (D.D.C. 2002)

("[C]laims for documents pursuant to § 10(b) [are] eventually rendered moot not by the

termination of the advisory group but only when the defendants release[] the documents.").

<u>**Analysis**</u>

## I.     Motion to Dismiss

Defendants contend that LDF lacks standing for its claim that defendants violated Section

5(b)(3) of FACA, which requires that the directive establishing an advisory committee "contain

appropriate provisions to assure that the advice and recommendations of the advisory committee

will not be inappropriately influenced by the appointing authority or by any special interest, but

will instead be the result of the advisory committee's independent judgment."  5 U.S.C. app. 2

§ 5(b)(3).  Specifically, defendants assert that "LDF has not alleged any injury that is fairly

traceable [to] Defendants' non-compliance with Section 5(b)(3)—particularly in light of the

remedies already ordered by this Court."  Mot. to Dismiss at 8.  If the Court concludes that LDF

does have standing to pursue its Section 5(b)(3) claim, defendants contend that discovery is

unnecessary and "the appropriate course would be to enter judgment on that claim based on

Defendants' acknowledgment that the Presidential and agency documents establishing the

Commission did not 'contain appropriate provisions to assure' that the advice and

recommendations of the Commission would not be inappropriately influenced."  <u>Id.</u> at 11.  The

Court rejects defendants' standing challenge but agrees with defendants that LDF is entitled to

summary judgment on its Section 5(b)(3) claim and discovery is unwarranted.

A. **Standing**

This Court previously held that LDF "suffered injury in fact for all its claims" and declined to "dismiss any of LDF's claims for lack of standing." NAACP I, 2020 WL 5833866, at *6–9. At that point, defendants had not challenged LDF's standing to assert its Section 5(b)(3) claim. See id. at *6 (noting that defendants disputed LDF's standing to bring its imbalanced membership, charter-filing, and designated federal officer claims). Defendants now argue that LDF no longer has standing because it has not alleged an injury in fact caused by defendants' violation of Section 5(b)(3), and any injury LDF has alleged has already been redressed by the Court's remedial order. See Mot. to Dismiss at 9–10. The Court disagrees.

Constitutional standing requires an injury-in-fact traceable to the challenged conduct that is redressable by a favorable judicial decision. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan, 504 U.S. at 560–61). Specifically, a plaintiff must allege (1) "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560); (2) "a causal connection between the injury and the conduct complained of," Lujan, 504 U.S. at 560–61 (citing Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976)); and (3) a likelihood that "the injury will be 'redressed by a favorable decision,'" id. (quoting Simon, 426 U.S. at 38). LDF has met those requirements.

Defendants' failure to protect the Commission from inappropriate influence has "reduced the efficacy of LDF's advocacy before the Commission, forced LDF to incur additional monitoring costs, and impaired LDF's ability to learn and utilize information about the Commission that undermines the legitimacy of its recommendations." Pl.'s Mem. of Law in Opp'n to Defs.' Renewed Partial Mot. to Dismiss ("Pl.'s Mot. to Dismiss Opp'n") [ECF No. 59] at 7. As

defendants concede, the Commission's founding documents did not "contain appropriate provisions to assure that [its] advice and recommendations" would not be "inappropriately influenced by the appointing authority or by any special interest, but [would] instead be the result of the [Commission's] independent judgment." 5 U.S.C. app. 2 § 5(b)(3); see also Mot. to Dismiss at 1. Without any assurance that the Commission would exercise independent judgment, LDF "has been limited in its ability to properly direct its advocacy to the Commission's true decision-makers," diluting LDF's expressed views. Pl.'s Mot. to Dismiss Opp'n at 7. Further, defendants' failure to guard against inappropriate influence has impeded LDF's ability to scrutinize the Commission's decisional processes, forcing LDF to "expend additional time and resources to monitor the Commission in order to be informed of its actions, educate the public, and be able to challenge its legitimacy."[1] Id. at 5, 7; see also Nat. Res. Def. Council v. Dep't of Interior ("NRDC"), 410 F. Supp. 3d 582, 607 (S.D.N.Y. 2019) (finding "increased monitoring costs" resulting from "the absence of sufficient safeguards against influence by special interests" sufficient to confer standing for Section 5(b)(3) claim).[2]

These injuries are distinct from, but related to, those caused by defendants' violations of FACA's transparency and fair balance requirements—LDF's "inability to influence the Commission's work by scrutinizing the Commission's activities and having access to a representative voice on the Commission." See NAACP Legal Def. & Educ. Fund, Inc. v. Barr ("NAACP II"), 2020 WL 6392777, at *2 (D.D.C. Nov. 2, 2020). As LDF explains, "Sections

---

[1] For instance, LDF learned through an open records request to local governments that a senior legislative liaison for the Fraternal Order of Police was introduced to the "Respect for Law Enforcement" working group as a "new member" and provided analysis to that working group. See Pl.'s Mot. to Dismiss Opp'n at 4–5.

[2] Defendants claim that NRDC is "easily distinguishable" because "there was still a live controversy between the parties." See Reply in Supp. of Defs.' Renewed Partial Mot. to Dismiss ("Defs.' Mot. to Dismiss Reply") [ECF No. 62] at 9. As explained below, there is also still a live controversy here.

5(b)(2) and 5(b)(3) work in tandem, addressing complementary but distinct dimensions of an advisory committee's activities.  Together, the two provisions ensure a fairly balanced committee exercising independent judgment so that the public may have confidence in the legitimacy and objectivity of advisory-committee recommendations."  Pl.'s Mot. to Dismiss Opp'n at 6.  Hence, while the Court agrees with defendants that "Section 5(b)(3) does not implicate any right to have a 'representative voice' on the Commission," that is irrelevant because LDF alleges other injuries. See Defs.' Mot. to Dismiss Reply at 4.  Furthermore, contrary to defendants' contention, LDF's injuries are not "unmoored from its Amended Complaint."  See id. at 6.  Of course, LDF now describes its present injuries, including monitoring injuries that have accrued since the Amended Complaint was filed.  But the Amended Complaint alleged that defendants' failure to guard against inappropriate influence would lead the Commission to "reach preordained conclusions"— reducing the efficacy of public advocacy before the Commission and limiting visibility into the Commission's decision-making.  See, e.g., Am. Compl. [ECF No. 26] ¶¶ 84–85.

Echoing their earlier motion to dismiss, defendants erroneously invoke R.J. Reynolds Tobacco Co. v. FDA, 810 F.3d 827 (D.C. Cir. 2016).  According to defendants, "the only plausible harm LDF could allege to maintain its Section 5(b)(3) claim is that the Commission's non-compliance with Section 5(b)(3) could result in Commission recommendations with which LDF disagrees, or potential future agency action based on the Commission's report"—which are "precisely the types of injuries that the D.C. Circuit held were insufficient in R.J. Reynolds."  Mot. to Dismiss at 10.  But, once again, LDF relies upon no such injuries.  See NAACP I, 2020 WL 5833866, at *7 ("LDF does not claim its injury is that the report might eventually result in executive action adverse to its interests.").  Moreover, as this Court has explained, "R.J. Reynolds was not a FACA case" and plaintiffs there "did not allege a representational injury (or

any other similar injury)"—only speculative "harms from the likely outcomes of the committee report or subsequent agency action. Id. (emphasis added).

The Court agrees with defendants that, in general, "[t]he mere expenditure of resources is not sufficient" to establish organizational standing. See Defs.' Mot. to Dismiss Reply at 9; Food & Water Watch, 808 F.3d at 905 ("[A]n organization does not suffer an injury in fact where it expends resources to educate its members and others, unless doing so subjects the organization to operational costs beyond those normally expended." (internal citations and quotation marks omitted)). But here, increased monitoring costs are only one component of LDF's injuries alongside those discussed above. Moreover, LDF's complaint is not simply that it has expended resources advocating racial justice before the Commission, but that defendants' failure to guard against inappropriate influence has forced LDF to expend extra resources just to monitor the Commission—which FACA was designed to prevent. Cf. Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 11 (D.C. Cir. 2011) (To have standing, an organization must demonstrate that it has suffered a "concrete and demonstrable injury to [its] activities—with [a] consequent drain on [its] resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests." (quoting Nat'l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). Hence, the Court finds that defendants' failure to comply with Section 5(b)(3) has injured LDF.

Having concluded that LDF has met the injury and causality prongs of the standing inquiry, the Court now turns to redressability. LDF's injuries would be redressed by a declaration and amended disclaimer to the Commission's report stating that defendants failed to enact "appropriate provisions to assure that the advice and recommendations of the advisory committee [would] not be inappropriately influenced by the appointing authority or by any special interest, but [would]

instead be the result of the advisory committee's independent judgment," 5 U.S.C. app. 2 § 5(b)(3).

Such relief would "provide LDF ammunition for any future legal attack on the Commission's

findings or any action taken in reliance on those findings."  NAACP I, 2020 WL 5833866, at *9.

Defendants argue, however, that the declaration and limited use injunction currently in place have

"already remedied LDF's 'representational injury,'" Mot. to Dismiss at 9, and given LDF "ample

'ammunition' to dispute the Commission's findings," Defs.' Mot. to Dismiss Reply at 7.  Yet the

existing declaration and disclaimer say nothing about the Commission's failure to guard against

inappropriate influence, as required by FACA.

A new declaration and disclaimer would accurately reflect the scope of defendants' FACA

violations, providing LDF (and others) another dimension on which to challenge the report.  Just

as the current declaration and disclaimer gave LDF "some input into the Commission's work by

removing the appearance of legitimacy that attaches" to recommendations by fairly-balanced

advisory committees, a new declaration and disclaimer would remove the appearance of

objectivity that attaches to recommendations by committees that protect against inappropriate

influence.  See NAACP II, 2020 WL 6392777, at *2.  Of course, this declaration and limited use

injunction cannot retroactively give LDF a chance to persuade the Commission to reach different

conclusions or reimburse past monitoring costs.  But LDF will still gain meaningful relief, and

such "gains are undoubtedly sufficient to give [LDF] standing."  See Pub. Citizen v. Dep't of

Justice, 491 U.S. 440, 451 (1989).  Defendants claim that declaratory and injunctive relief is

unnecessary because their briefs acknowledge that the Commission failed to comply with Section

5(b)(3)—"which LDF can use as it sees fit to question the Commission's report."  Mot. to Dismiss

at 10.  Yet surely, a declaratory judgment and court-ordered disclaimer affixed to the report will

provide LDF more powerful ammunition than a concession in defendants' court filings.  And

defendants could always water down their concession in the public arena.  Tellingly, defendants do not offer to amend the current disclaimer to add that the Commission violated Section 5(b)(3).

Defendants next contend that LDF's redressability arguments are foreclosed by the D.C. Circuit's decision in Natural Resources Defense Council v. Pena, 147 F.3d 1012 (D.C. Cir. 1998), because the Commission's work is done.  See Defs.' Mot. to Dismiss Reply at 6–7.  But Pena remains inapposite.  See NAACP II, 2020 WL 6392777, at *2.  There, the district court had issued an injunction wholly prohibiting the agency from using a committee's report.  See Nat. Res. Def. Council, 147 F.3d at 1014.  The D.C. Circuit remanded because the committee had been dissolved and plaintiff had not shown that the drastic injunction would redress its injuries—exclusion from past meetings and denial of access to committee records.  Id. at 1020–24.  Here, by contrast, LDF seeks only a declaratory judgment and court-ordered disclaimer, and it has shown that these remedies will partially redress its injuries even though the Commission's work is over.  See Byrd v. EPA, 174 F.3d 239, 243–44 (D.C. Cir. 1999) (rejecting argument that plaintiff's injury was not redressable where committee had disbanded, because the court's declaration that the agency violated FACA would give plaintiff "ammunition for [his] attack on the Committee's findings").

Finally, defendants argue that "there is no live controversy" because they have already acknowledged "that the Commission did not comply with the requirements of Section 5(b)(3)."  Defs.' Mot. to Dismiss Reply at 3, 7.  The Court is not persuaded.  Although defendants admit they violated Section 5(b)(3), there remains a meaningful, live dispute over the nature of that violation.  Defendants concede only that the Commission's founding documents lacked "provisions" to prevent inappropriate influence—not that the Commission was, in fact, inappropriately influenced.  See Mot. to Dismiss at 11–12.  In contrast, LDF alleges that the Commission was inappropriately influenced by Attorney General Barr and special interests and

seeks an order detailing "the nature and scope" of that influence and "by whom it was exerted." See Pl.'s Mot. to Dismiss Opp'n at 8.  As discussed below, the Court agrees with defendants that a substantive inquiry into whether the Commission was, in fact, inappropriately influenced is unnecessary here.  But the very fact that the Court must decide whose viable interpretation of Section 5(b)(3) is correct—and the prospect that the Court could side with LDF and order discovery—indicate that a live controversy remains.

Therefore, the Court will deny defendants' motion to dismiss LDF's Section 5(b)(3) claim for lack of standing and proceed to the merits of that claim.

## B.  Merits

Because LDF has standing and defendants admit they violated Section 5(b)(3), the Court will enter summary judgment in LDF's favor.  No discovery is necessary.  It is undisputed that the documents establishing the Commission contained no "provisions to assure that the advice and recommendations of the advisory committee [would] not be inappropriately influenced by the appointing authority or by any special interest."  5 U.S.C. app. 2 § 5(b)(3).  Hence, defendants have violated Section 5(b)(3) and "there is nothing left for the Court to do" but enter judgment. See Mot. to Dismiss at 12.

Unwilling to forego discovery, LDF insists that "Section 5(b)(3) also requires a substantive inquiry into whether a committee was, in fact, inappropriately influenced."  Pl.'s Mot. to Dismiss Opp'n at 9.  In this case, the Court disagrees.  The plain language of Section 5(b)(3) requires that an advisory committee's founding documents contain "provisions" to assure that the committee will not be inappropriately influenced.   See Pub. Citizen v. Nat. Advisory Comm. on Microbiological Criteria for Foods, 886 F.2d 419, 425 (D.C. Cir. 1989) (Friedman, J., concurring in the judgment) ("Section 5(b)(3) requires that provision be made to assure that the advisory

committee's 'advice and  recommendations . . . not be inappropriately influenced.'" (emphasis added)); id. at 430 (Silberman, J., concurring) ("[Section 5(b)(3)], on its face, is directed to the establishment of procedures to prevent 'inappropriate' external influences on an already constituted  advisory  committee  by outside special interests or the appointing body."). Here, because "the Commission was not structured to comply with FACA," there were no "provisions" that even purportedly would prevent inappropriate influence. See Mot. to Dismiss at 11.  Indeed, the Court anticipated this precise scenario when it held that Section 5(b)(3) was justiciable because "[a]t a minimum, courts can review 'whether [an] agency had established any provisions relating to the decisional independence of an advisory committee.'"  See NAACP I, 2020 WL 5833866, at *12 (quoting NRDC, 410 F. Supp. 3d at 607).

There may be cases in which a committee's founding documents contain some "provisions," but plaintiffs dispute whether the provisions are "appropriate" to "assure" against inappropriate influence.  In those cases, courts might conduct a "substantive inquiry into the influence actually exerted on a committee to assess" whether the provisions on the books were sufficient.  See Pl.'s Mot. to Dismiss Opp'n at 9.  But this is not such a case.  In other words, even if it is sometimes necessary to explore whether inappropriate influence occurred in order to find a Section 5(b)(3) violation, such exploration is not always required—and it is not required here. Defendants' concession of a Section 5(b)(3) violation is enough.  LDF has not provided any authority to the contrary.

To be sure, LDF cites several cases for the proposition that "courts applying Section 5(b)(3) of FACA have routinely examined the actual influence exerted on the Commission."  See id. at 9. Yet none of these opinions examined the influence actually exerted on a committee despite the complete absence of any "provisions" on the books and the presence of an unequivocal concession

of a Section 5(b)(3) violation.  Only one case LDF cites assessed the influences on the advisory committee, and it did so as evidence that the committee's provisions were, in fact, appropriate. See Cargill, Inc. v. United States, 173 F.3d 323, 338–39 (5th Cir. 1999).  A few other cases may contain language suggesting that Section 5(b)(3) is a substantive prohibition, but none of those courts were actually called upon to determine whether the committee was inappropriately influenced.  See In re Cheney, 406 F.3d 723, 727 (D.C. Cir. 2005); Cummock, 180 F.3d at 285; Nat. Res. Def. Council, Inc. v. EPA, 438 F. Supp. 3d 220, 225 (S.D.N.Y. 2020).  The remaining cases LDF relies upon were resolved on standing or justiciability grounds.  See Union of Concerned Scientists v. Wheeler, 954 F.3d 11, 19–20 (1st Cir. 2020); Metcalf v. Nat'l Petroleum Council, 553 F.2d 176, 180, 190 (D.C. Cir. 1977).

Hence, the Court will enter summary judgment for LDF on its Section 5(b)(3) claim, issue a declaratory judgment, and order defendants to amend the disclaimer to the Commission's report to reflect their failure to comply with Section 5(b)(3).[3]

## II.      Motion to Compel

The parties agree that defendants must disclose all materials subject to Section 10(b) of FACA, which requires public access to "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee."  5 U.S.C. app. 2 § 10(b).  Defendants argue that they have already satisfied this obligation by releasing "all materials that were distributed to the Commission as a whole."  Defs.' Opp'n to Pl.'s Mot. to Compel ("Defs.' Mot. to Compel Opp'n") [ECF No. 64] at 6.  That includes "the Commission's founding documents, hearing transcripts and

---

[3] Because discovery is unnecessary, the Court does not reach the issue addressed in LDF's surreply—whether any discovery should be limited to the administrative record.  See Pl.'s Sur-Reply to Section III of Defs.' Reply in Supp. of Defs.' Renewed Partial Mot. to Dismiss [ECF No. 65].

audio recordings, hearing agendas, bios and testimony of witnesses at Commission hearings, hearing summaries, draft portions of report chapters distributed to the Commission, decision matrices to resolve comments on drafts submitted by individual Commissioners, agendas for telephonic meetings to discuss report chapters, and proposed questions for Commissioners to pose to witnesses at hearings." Id. at 6–7.

LDF, however, contends that defendants' disclosures are inadequate because additional documents were "prepared for or by" the Commission "even if they were not sent to each of the 18 Commissioners." Mem. of Law in Supp. of Pl.'s Mot. to Compel ("Mot. to Compel") [ECF No. 61-1] at 1. LDF also argues that the Commission's working groups each count as an "advisory committee" covered by Section 10(b), and therefore defendants must disclose working group documents as well. Id. Accordingly, with the exception of "some materials within Defendants' asserted categories [that] may be properly withheld" on privilege grounds, LDF asks the Court to "order Defendants to disclose all documents that were 'made available to,' 'prepared for' or 'prepared . . . by' the Commission and its working groups," including any such documents found in the following eleven categories that defendants have withheld:

(1) Administrative emails sent to the full Commission;
(2) Emails and associated materials sent between Commission staff that were not sent to a Commissioner;
(3) Emails and associated materials to or from staff that included one or more Commissioners, but not to the full Commission;
(4) Emails and associated materials sent among individual Commissioners but not shared with the full Commission;
(5) Public comments not provided to the full Commission;
(6) Staff emails and work product never provided to the full Commission;
(7) Emails and associated documents sent to or from Commission staff or individual Commission members to or from third parties (e.g., reporters, public-interest groups, witnesses) and not shared with the full Commission;
(8) Materials considered or generated by Working Group members but not shared with the full Commission;

16

(9) Communications between staff and Working Group members not shared with the full Commission;

(10) Communications among Working Group members not shared with a Commissioner or the full Commission; and

(11) Communications between Working Group members and one or more Commissioners but not shared with the full Commission.

Id. at 1–3.[4]  LDF also requests "an index describing with specificity any documents [defendants] continue to withhold based on any proposed exemption or privilege."  Id. at 3.

The Court concludes that defendants must publicly release documents prepared for or by the Commission and its working groups, even if not made available to all members.

### A.  Materials "Made Available to or Prepared for or by" the Commission

The parties disagree on whether, pursuant to Section 10(b), documents were "made available to or prepared for or by" the Commission only if they were provided to the entirety of the Commission's membership.  LDF argues that "[m]aterials sent to or from a Commissioner about their work on the Commission or related to the Commission's function should be deemed within FACA's coverage"—regardless of whether the materials were ultimately "shared with all Commissioners."  See Mot. to Compel at 6.  For example, LDF avers that "public comments submitted for the Commission's consideration, or expert evidence submitted to inform the Commission's study" were "prepared for" the Commission, and that documents "prepared on behalf of the Commission by one or more Commission members, working groups, or even commission staffers . . . on the Commission's official behalf" were "prepared by" the Commission.  Id.  Defendants counter that a document was "made available to or prepared for or by the Commission only if it was "considered by the full Commission"—not merely by individual

---

[4] Although defendants originally "informed LDF that they intended to withhold administrative emails sent to the full Commission, Defendants have since released all such documents publicly."  See Defs.' Mot. to Compel Opp'n at 8 n.3.  Consequently, the Court need not address whether Section 10(b) requires disclosure of administrative materials shared with the full Commission.

Commission members or staff.  <u>See</u> Defs.' Mot. to Compel Opp'n at 7–9.  The Court declines to adopt either party's interpretation of Section 10(b) fully, but instead concludes that defendants must disclose documents submitted to any Commissioner, or through the Commission's official channels, for consideration by the full Commission—even if not distributed to all Commissioners. Moreover, defendants must disclose any document authorized by Commissioners and represented as having been prepared on behalf of the full Commission.

To start, the D.C. Circuit's decision in <u>Cummock v. Gore</u> undermines defendants' position. On defendants' reading, a document "withheld from a single committee member would cease to be covered by Section 10(b) . . . even if the document in question was prepared for the committee's review, made available to other members of the committee, and centrally relied upon in the committee's recommendations."  <u>See</u> Mot. to Compel at 7.  But <u>Cummock</u> suggests otherwise. That case arose when an advisory committee withheld relevant documents provided to committee members other than Cummock, a committee member with dissenting views.  <u>Cummock</u>, 180 F.3d at 287–88.  The D.C. Circuit agreed with Cummock that she had "an enforceable right" to those documents, noting that her claim was "rooted in § 10(b) of FACA."  <u>Id.</u> at 289, 292.  Cummock, the court explained, "clearly possesses an enforceable right to information under FACA, because any member of the public possesses such a right."  <u>Id.</u> at 292.  Yet under defendants' theory, the documents Cummock sought would not have been subject to Section 10(b) "precisely <u>because</u> they had been withheld" from her.  <u>See</u> Mot. to Compel at 8.  If defendants' reading of Section 10(b) were correct, then, the court would have rejected Cummock's claim—but instead it ruled in her favor.  <u>See</u> <u>Cummock</u>, 180 F.3d at 292.  Applying <u>Cummock</u>, another judge in this District rejected the same argument defendants make here—i.e., that Section 10(b) only requires disclosure of documents accessible to the Commission "as a whole."  <u>See</u> <u>Dunlap v. Presidential Advisory</u>

Comm. on Election Integrity, 286 F. Supp. 3d 96, 106–07 (D.D.C. 2017) ("Defendants cannot deprive Plaintiff of the requested documents simply because they have not been provided to all commissioners.").

Defendants try to distinguish Cummock and Dunlap as cases that apply only to suits brought by advisory committee members. See Defs.' Mot. to Compel Opp'n at 9–10. But the D.C. Circuit in Cummock stressed that the fact "that committee members have at least the same rights under FACA as the public goes to the heart of Cummock's document request." 180 F.3d at 292. The court's decision "turned on what the public had access to; at a minimum, the court explained, the committee member would have access to those same materials." See Reply Mem. of Law in Further Supp. of Pl.'s Mot. to Compel ("Pl.'s Mot. to Compel Reply") [ECF No. 66] at 4 (citing Cummock, 180 F.3d at 292–93); see also Judicial Watch, 219 F. Supp. 2d at 31–32 (D.D.C. 2002) (noting that the public's right to access documents under FACA was "central to the D.C. Circuit's reasoning and holding" in Cummock).

In defense of their position, defendants rely on a case that pre-dates Cummock, National Anti-Hunger Coalition v. Executive Committee of the President's Private Sector Survey on Cost Control, 557 F. Supp. 524 (D.D.C. 1983), aff'd, 711 F.2d 1071 (D.C. Cir. 1983). See Defs.' Mot. to Compel Opp'n at 8. But that case "do[es] not support categorical exclusion of documents not shared with each Commission member." See Mot. to Compel at 7. In National Anti-Hunger Coalition, the district court held that particular "task forces" which performed "staff functions" for a FACA-governed advisory committee were not themselves "advisory committees" under FACA, and thus were "not subject to FACA requirements." 557 F. Supp. at 529. The court did not analyze the statutory language of Section 10(b), nor did it consider whether some task force documents might nonetheless be subject to disclosure because they were prepared for the committee. Rather,

the court simply rejected plaintiffs' argument that the task forces were "'subcommittees' covered by [FACA] and consequently must give plaintiffs access to their documents and permit plaintiffs to participate in task force meetings and activities."  Id. at 526.

To be sure, National Anti-Hunger Coalition does counsel against an extremely broad reading of Section 10(b).  One could argue that all documents created by a committee's staff were "prepared for" the committee, since their purpose was to support the committee's work.  But if Section 10(b) swept so broadly, plaintiffs in National Anti-Hunger Coalition could have accessed all task force documents regardless of whether the task forces were themselves subject to FACA's procedural requirements.  And the National Anti-Hunger Coalition court seemingly would have rejected such an outcome, since "Congress did not contemplate that interested parties like the plaintiffs should have access to every paper through which [staff] recommendations are evolved." Id. at 529.  National Anti-Hunger Coalition thus suggests that LDF's interpretation of Section 10(b)—as encompassing all materials sent to a Commissioner about Commission work or related to the Commission's function—is overbroad, but it does not justify defendants' overly narrow view that Section 10(b) covers only documents provided to every Commissioner.

Defendants next invoke an opinion published by the Department of Justice Office of Legal Counsel ("OLC") in 1988, which primarily concerned the extent to which Exemption 5 of FOIA allows withholding of deliberative materials prepared by an advisory committee that would otherwise be subject to Section 10(b).  See Disclosure of Advisory Committee Deliberative Materials, 12 U.S. Op. Off. Legal Counsel 73 (1988) ("OLC Memo").  OLC concluded that Exemption 5 does not shield advisory committee materials from disclosure, but also briefly noted that "many documents that are part of the advisory committee process will not be subject to disclosure" because National Anti-Hunger Coalition and a previous OLC memorandum had

"construed the concept of advisory committees established or utilized by the President or an agency to preclude section 10(b)'s application to the work prepared by a staff member of an advisory committee or a staffing entity within an advisory committee . . . so long as the material was not used by the committee as a whole." Id. at 75.  Defendants emphasize this language, along with OLC's inference that "the general point can be made that FACA compels disclosure of a limited subset of information, namely the material used by the advisory committee or subgroup established or utilized by the ultimate decision-maker." Id. at 76; see also Defs.' Mot. to Compel Opp'n at 8–9.

Like National Anti-Hunger Coalition, the OLC memo ultimately lends little support to defendants' contention that advisory committee materials are not covered by Section 10(b) unless "provided to the entirety of an advisory committee's membership." See Defs.' Mot. to Compel Opp'n at 11.  True, OLC's language suggests at first glance that only materials "used" by an advisory committee "as a whole" are subject to Section 10(b). See OLC Memo at 75–76.  But that language carries little weight.  OLC did not explain why materials were "made available to or prepared for or by" an advisory committee only if the committee actually used those materials.[5] Nor did OLC explain what it meant by "as a whole."  Defendants merely assume that "committee as a whole" is equivalent to "every single member of the committee."  In fact, OLC did not offer any original reasoning about the scope of Section 10(b) but merely cited National Anti-Hunger Coalition and a previous OLC memo that said groups performing "staff functions" in aid of an advisory committee were not themselves advisory committees under FACA. See Ctr. for Biological Diversity v. Tidwell, 239 F. Supp. 3d 213, 228 n.6 (D.D.C. 2017) ("The Office of Legal

_____

[5] Indeed, if read literally, OLC's language suggests that Section 10(b) should be construed even more narrowly than defendants propose because some documents could be provided to all Commissioners but not actually used in forming the Commission's recommendations.

Counsel memorandum cited by Defendants essentially mirrors the holding in National Anti–Hunger Coalition."). Moreover, the OLC Memo is merely informal guidance. Still, the OLC Memo—like National Anti-Hunger Coalition—suggests that staff documents are not automatically subject to Section 10(b), a proposition with which this Court agrees. Neither source, however, justifies defendants' narrow view or supports the conclusion that no staff documents could qualify as materials "made available to or prepared for" the Commission.

The Court is not swayed by defendants' argument that their interpretation of Section 10(b) is consistent with the disclosure practices of other FACA committees. See Defs.' Mot. to Compel Opp'n at 13. Because committees are organized differently, each committee produces different types of documents. Some, for example, may not disclose public comments because none were solicited—not because they consider those documents outside the scope of Section 10(b). See Pl.'s Mot. to Compel Reply at 6. Further, LDF persuasively argues that defendants' Exhibit B, which identifies materials disclosed by a sample of advisory committees, is unauthenticated and rife with errors. See id. at 5–6 n.6 (explaining that almost half the spreadsheet's links are broken and that the spreadsheet fails to include materials that have, in fact, been disclosed by certain committees).

While the Court rejects defendants' interpretation of Section 10(b), LDF does not provide a compelling alternative. LDF devotes nearly all of its briefing to refuting defendants' position and does not really defend its own test for determining whether a document was "made available to or prepared for or by" the Commission. According to LDF, Section 10(b) covers "[m]aterials sent to or from a Commissioner about their work on the Commission or related to the Commission's function." See Mot. to Compel at 6. This language is ambiguous. If LDF means that every document "related to the Commission's function" must be disclosed unless protected

by FOIA exemptions or legal privileges—regardless of whether it was shared with <u>any</u> Commissioner—then its interpretation is obviously wrong.  Indeed, LDF concedes that <u>National Anti-Hunger Coalition</u> stands "for the proposition that a committee's staff documents are not covered by FACA" and "remains good law."[6]  <u>See</u> Pl.'s Mot. to Compel Reply at 5 n.5; <u>see also</u> OLC Memo at 75 (noting that "many documents that are part of the advisory committee process will not be subject to disclosure").  And LDF appears to acknowledge that not all Commission documents are subject to Section 10(b).  <u>See</u> Mot. to Compel at 6 ("Defendants must do a careful analysis of all Commission documents to determine whether they were 'prepared for or by' the Commission.").

As best the Court can tell, then, LDF's position is that Section 10(b) requires disclosure of all Commission-related documents sent to or from a Commissioner, unless shielded by FOIA exemptions or legal privileges.  Yet LDF does not explain why every document sent to or from an individual Commissioner was "made available to or prepared for or by" <u>the Commission</u>, rather than that individual Commissioner.  To be sure, a document provided only to one Commissioner may well have been prepared in order to inform the Commission's recommendations through that Commissioner's comments to her colleagues.  In that sense, the document was "prepared for" the Commission.  By this logic, any document intended to have any impact on the Commission's recommendations—however attenuated—would be subject to Section 10(b).  But as explained above, Section 10(b) does not sweep in every document related to the Commission's work.

Hence, the Court will adopt neither defendants' theory that Section 10(b) applies only to documents provided to all Commissioners, nor LDF's apparent view that Section 10(b) covers (at

---

[6] Confusingly, LDF both admits that "internal staff documents" may properly be withheld, <u>see</u> Pl.'s Mot. to Compel Reply at 5, and asserts that defendants were wrong to categorically exclude "[e]mails and associated materials sent between Commission staff that were not sent to a Commissioner," <u>see</u> Mot. to Compel at 1–2.

least) all Commission-related documents sent to or from any Commissioner.[7]  Instead, the Court concludes that defendants must disclose documents submitted to the Commission or any Commissioner, or through the Commission's official channels, for consideration by the full Commission—even if not ultimately provided to all Commissioners.  Additionally, defendants must disclose any document authorized by Commissioners and represented as having been prepared on behalf of the full Commission—even if some Commissioners did not see the document.  Such documents were clearly "prepared for or by" the Commission even if, for whatever reason, they were not "made available to" some Commissioners.

The Court does not mean to force defendants to conduct a searching inquiry into the intent of each person who sent materials to a Commissioner.  Rather, this opinion should be read to require disclosure of documents that were evidently submitted for consideration by the full Commission, but for whatever reason may not have reached all Commissioners.

In particular, the Court agrees with LDF that defendants cannot categorically withhold public comments not provided to the full Commission.  Such comments were surely prepared for the Commission and submitted for its consideration.  The Commission directed members of the public, including LDF, to submit comments to the Commission's email account.  See Dixon Decl. Ex. A [ECF No. 25-26] at 1 (stating that comments "must" be submitted to LE.Commission@usdoj.gov).  LDF, like others who submitted public comments, "had no way of ensuring that its public comment was shared with each Commissioner to consider as intended or just a handful of Commission members."  See Mot. to Compel at 9–10.  The fact that a gatekeeper withheld certain comments from some Commissioners does not immunize those comments from

---

[7] The Court is not aware of useful case law, beyond what the parties cite, that examines the contours of the phrase "made available to or prepared for or by each advisory committee."

public disclosure.  Similarly, defendants must disclose other materials sent to or from the Commission's official email account that comport with the Court's understanding of Section 10(b).

The Court also agrees with LDF that defendants must disclose documents in which the Commission solicited input from specific third parties in preparation for hearings—if authorized by at least one Commissioner and represented as being sent on behalf of the entire Commission— and any responses sent for consideration by the full Commission.  For instance, through public records requests, plaintiff identified a document in which the Hispanic American Police Command Officers Association submitted a written statement in response to a request from Commission Director Phil Keith.  See Mot. to Compel Ex. B [ECF No. 61-3] at 3.  While addressed to Director Keith, the statement was "submitted to the Presidential Commission of [sic] Law Enforcement and the Administration of Justice" and the Association's Executive Director said, "I hope that you and members of the Commission will find the [statement] supportive."  Id.  Documents like this, which were plainly "prepared for" the Commission's consideration, are subject to Section 10(b) even if they were not ultimately distributed to all Commissioners.

In the end, as described above, Section 10(b) requires disclosure of documents—even those not made available to every Commissioner—that were submitted to the Commission, any Commissioner, or through the Commission's official channels for consideration by the full Commission, or authorized by Commissioners and represented as having been prepared on behalf of the full Commission.

### B.  Working Group Documents

LDF also seeks disclosure of documents "made available to or prepared for or by" the Commission's fifteen working groups, which LDF contends are themselves "advisory

committees" subject to FACA.  See Mot. to Compel at 11.  The Court agrees and will order defendants to disclose working group records.

As an initial matter, defendants contend that LDF never previously alleged that the working groups are subject to FACA and may not raise a new claim now.  See Def.'s Mot. to Compel Opp'n at 14.  But LDF's Amended Complaint alleged that the working groups' membership violated Section 5(b)(2)'s fair balance requirements, Am. Compl. ¶ 69, and that the working groups' operations violated Section 5(b)(3)'s inappropriate influence rules, id. ¶ 117.  And LDF's prayer for relief sought an injunction against the Commission "and all of its working groups" to remedy their FACA violations.  Id. at 55.  Certainly, the Amended Complaint primarily alleges that the Commission was subject to FACA.  LDF's allegations against the working groups, however, were enough to give defendants notice.  See T.M. v. District of Columbia, 961 F. Supp. 2d 169, 174 (D.D.C. 2013) (noting that "[t]he plaintiff is not required to plead law or match facts to every element of a legal theory in the complaint" so long as it is "sufficient to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (internal quotation marks and citations omitted)).

Even absent these allegations, LDF's claim that the working groups are subject to FACA would be properly before the Court because it was raised in both parties' summary judgment briefing.  "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings"—"failure to amend does not affect the result of the trial of that issue."  Fed. R. Civ. P. 15(b)(2).  The presence of implied consent "depend[s] on whether the parties recognized that an issue not presented by the pleadings entered the case."  Kirkland v. District of Columbia, 70 F.3d 629, 633 (D.C. Cir. 1995) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1493, at 19 (1990)).

While the D.C. Circuit has not weighed in, most Circuits and at least two judges in this District have agreed that Rule 15(b)(2) applies when a case is adjudicated through summary judgment motions.[8]

During summary judgment briefing, "facts necessary to decide the issue of the working groups' FACA coverage—and their FACA violations—were raised and argued both by Plaintiff and by Defendants."  See Pl.'s Mot. to Compel Reply at 10.  For example, LDF argued that Attorney General Barr established the working groups—which, as explained below, would render them subject to FACA.  See Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. [ECF No. 25-2] at 9, 15.  Defendants, for their part, claimed that Barr merely "directed the Commission to establish working groups."  Defs.' Opp. to Pl.'s Mot. for Summ. J. & Mem. in Supp. of Defs.' Cross-Mot. to Dismiss or, in the Alt., for Summ. J. [ECF No. 32] at 6–7.  And, defendants stated, "working group members [were] not part of the Commission and serve[d] exclusively in a consultative capacity.  Id. at 6–7; see also Decl. of Dean M. Kueter, Jr. ("First Kueter Decl.") [ECF No. 33-3] at ¶ 4.  In challenging defendants' claim that the Commission was exempt from FACA as an intergovernmental committee, moreover, LDF argued that "[a]t least one working group includes a member, not listed on the Commission's website, who is not an elected official or their designee."  See Mot. to Suppl. R. [ECF No. 40] at 3.  A working group's membership would be relevant only if the working groups would themselves be subject to FACA absent the intergovernmental exemption.  And defendants appear to have anticipated that—but for the intergovernmental exemption—the working groups could be subject to FACA: they decided to fill the working groups

---

[8] See Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000); PETA v. Doughney, 263 F.3d 359, 367–68 (4th Cir. 2001); Handzlik v. United States, 93 F. App'x. 15, 17 (5th Cir. 2004); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1030 (6th Cir. 1992); Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998); Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1279–80 (10th Cir. 1998); Turner v. Shinseki, 824 F. Supp. 2d 99, 122 n.23 (D.D.C. 2011); Defs. of Wildlife v. Jackson, No. CV 09-1814 (ESH), 2011 WL 13254506, at *1–3 (D.D.C. July 1, 2011).

with only elected officials and designees, possibly to avail themselves of the exemption.  <u>See</u> First Kueter Decl. ¶ 4.

The Court now turns to whether the working groups are themselves "advisory committees." FACA defines an "advisory committee" as "any committee, board, commission, council, conference, panel, task force, or other similar group, <u>or any subcommittee or other subgroup thereof</u>" that is "established by statute," or "established or utilized" by the President or by one or more federal agencies, "in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government."  5 U.S.C. app. 2 § 3(2) (emphasis added).  The term "'established' indicates 'a Government-formed advisory committee,' while 'utilized' encompasses a group organized by a nongovernmental entity but nonetheless so 'closely tied' to an agency as to be amenable to 'strict management by agency officials.'"  <u>Food Chem. News v. Young</u>, 900 F.2d 328, 332–33 (D.C. Cir. 1990) (quoting <u>Pub. Citizen v. Dep't of Justice</u>, 491 U.S. 440, 457–58, 462–63 (1989)).  The Court concludes that the Commission's fifteen working groups satisfy FACA's definition of "advisory committee."

To start, Attorney General Barr and DOJ "established" the Commission's working groups. In his memorandum creating the Commission, Barr decreed that the Commission would feature fifteen working groups, prescribed the subjects that each working group would study, and provided specific questions that each group was directed to answer.  <u>See</u> Implementation Memorandum for Heads of Department Components ("Implementation Memo") [ECF No. 25-5] at 4–6; <u>see also</u> Final Report at 271 ("To execute the work of the Commission, leadership at the Department of Justice and Commission staff designated an implementation strategy that accounted for the number of topics (15), the scope of those topics, the prescribed timelines, and the types of activities that working groups would need to complete to ensure a thorough review.").  In short, Barr formed the

28

working groups.  True, Barr's memorandum assigned the Commission's Chair and Vice Chair to "establish" the working groups and choose members.  See Implementation Memo at 6 ("After consultation with the Commission, the Chair and Vice Chair will establish the working groups and select their members.").  But the existence of that language does not mean the Commission (or its officers) actually formed the working groups.  Even if the Chair and Vice Chair did, in fact, select all members, they were merely filling the slots in working groups the Attorney General had already created—and doing so at his direction.

However, evidence shows that DOJ itself arranged working group appointments.  For instance, LDF obtained an email to a potential working group member which noted: "DOJ has, or if they have not already, will be in contact with you in the coming days regarding serving as a Respect for Law Enforcement Working Group Member."  See Chandran Decl. Ex. G [ECF No. 40-8] at 3.  The same email provided a template letter to Attorney General Barr for elected officials to use for naming designees to serve on working groups, which states that "[t]he Attorney General of the United States has the authority to determine the composition of the board and working groups."  Id. at 4.  And the outreach emails to working group members specifically noted that such a letter was required "[d]ue to the Federal Advisory Committee Act."  Id. at 3.  Defendants themselves presented a January 24, 2020 letter from a local official to Attorney General Barr designating a Sergeant to serve as a working group member on her behalf—sent more than a month before the Commission first met to conduct business, and only three days after Barr issued the implementation memo.  See Second Decl. of Dean M. Kueter, Jr. [ECF No. 41-1] ¶ 4.

Because the Attorney General and DOJ "formed" the working groups, the Court concludes that the working groups were "established" by an agency and so are covered by FACA. See Heartwood, Inc. v. U.S. Forest Serv., 431 F. Supp. 2d 28, 34 (D.D.C. 2006) (holding that an

agency "established the committee within the meaning of FACA" because it "identified the members of the team, contracted directly with them for their services, paid them, and provided them with initial questions to answer").  Thus, even if the working groups had not been subject to agency control, they would still qualify as advisory committees under FACA.

Moreover, Attorney General Barr and DOJ "utilized" the working groups, which were "so closely tied to [DOJ] as to be amenable to strict management by [DOJ] officials."  See Food Chem., 900 F.2d at 332–33 (internal quotation marks and citation omitted).  Indeed, DOJ exercised "actual management or control" over the working groups.  See Wash. Legal Found. v. U.S. Sent'g Comm'n, 17 F.3d 1446, 1450 (D.C. Cir. 1994); see also Final Report at 271 (noting that each working group's "dedicated federal program manager" from DOJ was responsible for the working group's "overall project management").  Although the memorandum establishing the Commission stated that working groups would "serve exclusively in a consultative capacity" to "assist" the Commission in its deliberations, that did not occur.  See Implementation Memo at 4.  The working groups drafted entire chapters of the report, and DOJ reviewed those drafts directly.  Phil Keith, Chair of the Commission, told working group members they would be notified when their drafts were "ready for deliberations of the Commission, Department leadership and the Attorney General."  See Mot. to Compel Ex. D, Email from Phil Keith [ECF No. 61-5] at 2; see also Mot. to Compel Ex. C, Email from Katherine McQuay to Respect for Law Enforcement Working Group Members [ECF No. 61-4] at 2 (attaching the working group's "revised chapter" which contained "edits from the DOJ folks").

Washington Legal is instructive.  There, the D.C. Circuit considered whether an advisory group that advised the U.S. Sentencing Commission was "utilized" by DOJ.  See 17 F.3d at 1450–51.  The court noted that two members of the advisory group who were DOJ employees, along

30

with the DOJ representative on the Sentencing Commission, would likely "exercise significant influence" on the advisory group's deliberations.  Id. at 1451.  Yet still, the court held that DOJ did not "utilize" the advisory group because "[t]he Advisory Group answers to the [Sentencing] Commission, not to DOJ; ultimately, then, DOJ no more controls the Advisory Group than it does the [Sentencing] Commission itself.  And the [Sentencing] Commission, as an independent agency in the judicial branch, is outside the reach of DOJ."  Id.  Here, by contrast, the Commission is not an independent agency; it is controlled by DOJ.  As explained above, the working groups answer directly to DOJ.  But even if the working groups answered only to the Commission, the Commission itself answers to DOJ.  Therefore, the working groups are "closely tied" to DOJ and susceptible to "strict management" by DOJ officials.  See Food Chem., 900 F.2d at 332–33.

Finally, defendants' reliance on National Anti-Hunger Coalition is misplaced.  See Defs.' Mot. to Compel Opp'n at 17.  Unlike the working groups here, the task forces there were not established by an agency, but by a non-profit corporation which had agreed to provide staff support to an advisory committee.  See 557 F. Supp. at 526.  And unlike the working groups here, the task forces did not "provide advice directly" to the President or an agency, nor did the President or an agency exercise control over them.  See id. at 529.

Hence, the Court concludes that the Commission's working groups are themselves advisory committees subject to FACA.  Accordingly, the Court will order defendants to disclose documents that were "made available to or prepared for or by" the working groups.

### C.  Defendants' Request for a Stay

The Court will reject defendants' request to "stay any order to compel disclosure for at least sixty days to allow the Solicitor General an opportunity to consider whether to appeal."  See Defs.' Mot. to Compel Opp'n at 21.  Because "granting a stay pending appeal is always an

extraordinary remedy, . . . the moving party carries a heavy burden to demonstrate that the stay is warranted." McCammon v. United States, 588 F. Supp. 2d 43, 47 (D.D.C. 2008) (quoting United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 988, 990 (D.D.C. 2006)).  Specifically, the moving party must establish (1) likelihood of success on appeal; (2) likelihood of irreparable injury absent a stay; (3) absence of harm to others; and (4) public interest in staying disclosure.  Cuomo v. NRC, 772 F.2d 972, 974 (D.C. Cir. 1985).  Here, defendants have not justified a stay.

Defendants argue that they will suffer irreparable injury absent a stay because once the documents are public, the "cat is out of the bag."  See Defs.' Mot. to Compel Opp'n at 21 (quoting In re Papandreou, 139 F.3d 247, 251 (D.C. Cir. 1998)).  Irreparable injury may occur in cases where documents are arguably privileged.  See In re Papandreou, 139 F.3d at 251.  But here, defendants have withheld documents not because they are privileged or confidential, but merely because defendants believe Section 10(b) does not affirmatively require their disclosure.  In fact, LDF wants defendants to "submit an index describing with specificity any documents they continue to withhold based on any proposed exemption or privilege."  See Mot. to Compel at 3.  While the Court will order defendants to begin producing documents, they may withhold documents that are exempt under FOIA or otherwise privileged.

Moreover, LDF and the public will be harmed by a stay because while they await disclosure, the Commission's recommendations could be "adopted without challenge informed by the context of their creation."  See Pl.'s Mot. to Compel Reply at 19.  Continued delay also heightens the risk that relevant documents will be destroyed.  And defendants have not identified a public interest in staying disclosure.  Finally, the cases defendants rely upon do not support a sixty-day stay while the government considers appeal.  See Ctr. for Nat'l Sec. Stud. v. Dep't of Justice, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (granting a stay in a FOIA case where defendants

had already filed a notice of appeal and "promised to seek expedited consideration from the Court of Appeals"); People for the Am. Way Found. v. Dep't of Educ., 518 F. Supp. 2d 174, 179 (D.D.C. 2007) (ordering the government to file an appeal within 28 days or disclose the ordered documents in a FOIA case, where the government agreed to produce a Vaughn index during that period and to seek expedited consideration if they appealed).

Hence, under the circumstances here, the Court denies defendants' request for a stay while the Solicitor General decides whether to appeal.

## CONCLUSION

For these reasons, the Court will deny defendants' renewed motion to dismiss, enter summary judgment in favor of LDF on its Section 5(b)(3) claim, and order defendants to release documents that are subject to disclosure under Section 10(b).  A separate order will issue on this date.

/s/
_____
JOHN D. BATES
Senior United States District Judge

Dated: February 24, 2021